UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ANDRETTI SPORTS MARKETING LOUISIANA, LLC | * * * | CIVIL ACTION NO. _____ |
| | * | SECTION "\_\_\_\_" |
| VERSUS | * * | JUDGE _____ |
| NOLA MOTORSPORTS HOST COMMITTEE, INC., NOLA MOTOR CLUB, LLC, and LANEY CHOUEST | * * * * | MAGISTRATE _____ |
| * * * * * * * * * * * * * * * * * * | * | |

**COMPLAINT**

**NOW COMES** Complainant, Andretti Sports Marketing Louisiana, LLC, through undersigned counsel, and files this Complaint as follows:

**Nature of the Action**

1.   This action for breach of contract, unfair and deceptive trade practices, fraud, and unjust enrichment arises from Complainant's *Racing Services Agreement* dated July 6, 2014, and First Amendment thereto, dated August 27, 2014, (hereinafter, the "Racing Services Agreement") with Defendant, NOLA Motorsports Host Committee Inc.  In addition, NOLA Motor Club, LLC, with the registered trade name of NOLA Motorsports Park, and its sole member, Laney Chouest are also liable to Complainant for the relief sought herein under Louisiana's "single business enterprise", alter-ego, unjust enrichment and fraud doctrines.

801531_1

**Jurisdiction and Venue**

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and is between citizens of different states.

3.      This Court has personal jurisdiction over Defendant NOLA Motorsports Host Committee Inc., herein pursuant to the terms and conditions of the Agreement, which provides that all parties thereto consent to the jurisdiction of this Court.

4.      Venue is proper in this District pursuant because NOLA Motorsports Host Committee Inc., has consented to, and waived all objections with respect to, personal jurisdiction and venue in this District pursuant to the Agreement.

5.      Complainant shows the other proposed Defendants are likewise subject to the jurisdiction and venue of this Honorable Court since they fall under Louisiana's "single business enterprise" doctrine.

**Parties**

6.      Complainant, **Andretti Sports Marketing Louisiana, LLC**, **("ASML")** is an Indiana limited liability company incorporated under the laws of the State of Indiana, having its principal place of business at 7615 Zionsville Road, Indianapolis, Indiana, 46268.

7.      Defendant, **NOLA Motorsports Host Committee Inc.**, **("NMHC")** is a non-profit corporation incorporated June 26, 2014, under the laws of the State of Louisiana, having its principal place of business at 11075 Nicolle Boulevard, Avondale, Louisiana 70094.

8.      Defendant, **NOLA Motor Club, LLC**, with the registered trade name of **NOLA Motorsports Park ("NMC" or "NMP"),** is a Louisiana limited liability company having its principal place of business at 11075 Nicolle Boulevard, Avondale, Louisiana 70094.

9.      Defendant, **Laney Chouest**, **("Chouest")** is a person of the age of majority and sole Member of NMC, with his registered corporate address as 11075 Nicolle Boulevard, Avondale, Louisiana 70094.

10.     Each of these Defendants is an instrumentality or adjunct of each other, being merely conduits of each other under Louisiana's "single business doctrine" and at all times relevant to this action, NMHC and its officers and members, were controlled by Defendants, NMC and Chouest.

11.     Defendant Chouest also has several other corporate entities, including, but not limited to, Motor Realty, L.L.C.; Laney C. Racing, L.L.C. and Laney C. L.L.C., (hereinafter, "Chouest-related entities") each of which are registered at 11075 Nicolle Boulevard, Avondale, Louisiana 70094. These entities were included as additional insureds under the insurance policies for NMP and are believed to hold various assets and/or invest in various assets for Chouest, NMP and/or NMC.

12.     During the negotiations that led to the execution of the Agreement between Complainant and NMHC in question, and in subsequent dealings, Defendants NMC and Chouest controlled all of the named entities and handled and/or controlled the dealings with Complainant, all of which will be more fully shown hereinafter.

13.     Defendants NMC and/or Chouest formed and undercapitalized NMHC with the intention of sheltering themselves from any liability in connection with the Indy Grand Prix of Louisiana (the "Event") and the Racing Services Agreement at issue below.

## General Factual Allegations

14.     NOLA Motorsports Park is a racing and events facility that required an estimated $75 million to build, located about 14 miles southwest of downtown New Orleans. It opened during 2012 and is owned, operated, and funded by Defendants NMC and Chouest and Chouest's related entities.

15.     The park is regularly used for national corporate, local business and convention team-building activities, other private and corporate events such as weddings and business meetings as well as race car testing, vehicle demonstrations, tire testing, automotive club events, engine testing and many other forms of automotive performance events conducted by various car and tire manufacturers along with sports car, motorcycle and go-kart competitors, professionals and motoring enthusiasts. The Event was the first major top-tier racing event to take place at NOLA Motorsports Park as well as an event broadcast live for a national and international television audience, which heavily promoted NOLA Motorsports Park as an events destination.

16.     In the first half of 2014, Chouest undertook negotiations with ASML to bring the Verizon IndyCar Series, its teams, its drivers and its famous personalities to the Event and to the State of Louisiana to promote NOLA Motorsports Park. Chouest asked for and negotiated for ASML to manage that Event for Chouest. The purpose of and the byproduct of promoting the Event utilizing the forenamed entities was to promote NOLA Motorsports Park as a world-class racing and events destination to automotive insiders, corporate sponsors who would return for events purposes in the future, race teams and manufacturers who would test at the facility in the future

as well as to the many individual and corporate entities who watch the Event's television broadcast and the promotional media leading-up to the Event weekend. The negotiations regarding the Event involved Laney Chouest, his companies, NMC, and his agents, including, but not limited to Michael Sherman, who acted as Chouest's representative and then later as a member of NMHC. Michael Sherman and Kristen Engeron, the President of NOLA Motorsports Park, were described by Chouest to ASML as "equity partners" in the Event.

17. In connection with these negotiations, Chouest, NMC, and/or other Chouest affiliated individuals and entities actively lobbied for the involvement of and financial contribution from the State of Louisiana to help fund the INDYCAR event. In particular, Michael Sherman, acting on behalf of Chouest, was instrumental in lobbying the State of Louisiana for financial contribution for the event. The Event, Chouest and NOLA Motorsports Park were openly praised and supported by politicians, such as Governor Bobby Jindal, John A. Alario, Jr., State Senator, and John F. Young, Jr., Jefferson Parish President, among others, as part of influencing the State of Louisiana's support.

18. On or about May 6, 2014, Governor Bobby Jindal, INDYCAR, Chouest, NOLA Motorsports Park's owner, and other Louisiana state and local politicians announced that INDYCAR was developing plans for a Verizon IndyCar Series race to be held at NOLA Motorsports Park in Jefferson Parish. The race was to be known as the Indy Grand Prix of Louisiana and would be organized by Andretti Sports Marketing Louisiana, LLC.

19. Thereafter, the State of Louisiana committed a one-time NGO grant amount of $4.5 million for NOLA Motorsports Park to be used for facility and track improvements. The stated public purpose of the grant was to "provide supplemental funding to the Contracting Party

[NMHC] to host the inaugural Indv Grand Prix of Louisiana ("Event") which will support the expansion and promotion of tourism by producing an event that is projected to stimulate substantial growth in the Louisiana tourism industry, resulting in job creation and other increased economic activity, including the generation of tax revenue for state and local governments" Pursuant to its Cooperative Endeavor Agreement with the State, executed August 19, 2014, by NMHC, NMHC expressly agreed and contracted to "use appropriated funds to support planning, operations, and production of the Indy Prix of Louisiana and to build the required track improvements and safety upgrades to the NOLA Motorsports Park required by INDYCAR in order to host the Event." The Cooperative Endeavor Agreement provided $2.6 to NMHC for such track improvements and upgrades.

20. However, and contrary to representations made to ASML, NMC and Chouest appropriated and allocated approximately $3.4 million of the money provided by the State of Louisiana, or otherwise obtained, for capital improvements to Chouest's/NMC's NOLA Motorsports Park that was measurably in excess of the amounts disclosed to ASML. Such use of these funds deprived NMHC of needed capital to fulfill its financial obligations to various vendors and contractors who make their living supporting events such as this Event, including ASML.

21. Chouest personally acknowledged and thanked Governor Jindal "for his leadership in developing this public-private partnership that will leverage the significant private investment we made into this facility." On information and belief, Chouest has invested $75,000,000 dollars into his NOLA Motorsports Park.

22.     Negotiations between Chouest and ASML spanned several months. During this time, Chouest personally was actively involved in negotiating the terms of the Racing Services Agreement in connection with the contemplated IndyCar event.

23.     In the days prior to July 6, 2014, as signing of the final Racing Services Agreement between ASML and NOLA Motorsports Park approached, ASML representatives were presented with a revised Racing Services Agreement and were advised by Michael Sherman, Laney Chouest and Kristen Engeron that NMHC was being formed specifically to execute the Agreement with ASML because the State of Louisiana had required that NOLA Motorsports Park and Chouest form a non-profit to accept the NGO grant money, not NMC.

24.     NMHC was a Louisiana non-profit corporation set up by Chouest as "promoter" and owner of the race Event.  ASML was further advised by Michael Sherman that the State of Louisiana would only fund a non-profit entity and therefore, NMHC was set up specifically for the purpose of receiving state funds.

25.     Chouest and Sherman informed ASML that the State grant of $4.5 million to NMHC, along with other revenues anticipated from the Event as well as Chouest's personal commitment ensuring the Event's viability, that adequate funds were available to pay ASML.  ASML relied upon these representations when entering the Racing Services Agreement with NMHC.

26.     In the Racing Services Agreement, NMHC represented that NMHC had an additional "$1 million in funds available to fund the Event."  Chouest also verbally represented to ASML and others that he personally stood behind the Event and would insure that its obligations were fully funded for the first year of the Event.

27. During the period prior to the execution of the Agreement between ASML and NMHC, ASML was advised by Chouest on multiple occasions that payment for its services would be guaranteed through the State of Louisiana's appropriation and through Chouest's own private investment.

28. The Agreement was executed on July 6, 2014 between ASML and NMHC.

29. NMHC made no payment to ASML for its services under the Racing Services Agreement after April 8, 2015. As of the date of this filing, approximately $645,000 is due and owing to ASML (which amount does not include future amounts due under the contract). In addition, NMHC has not reimbursed ASML for the approximately $206,000 of approved expenses ASML incurred on behalf of NMHC, NMC, and/or Chouest.

30. ASML subsequently learned that the funds received through the State's appropriation were instead set-aside by Chouest to pay vendors who performed capital improvements to his track in order to prevent these vendors from placing a lien on his track.

31. The Racing Services Agreement provides that ASML will provide management services for three IndyCar races to take place at NMP in the years 2015, 2016 and 2017. By breaching and repudiating the Racing Services Agreement, in bad faith, Defendants have deprived ASML of the profits to which it is entitled for 2015, 2016 and 2017 as well as for expenses paid by ASML in both 2014 and 2015 that were approved by NMHC, for which ASML has not been reimbursed.

32. ASML is an industry leading company comprised of some of the most respected and talented people in its industry. ASML brought its strong reputation and lent its credibility to the

NMHC, NMC, and Chouest in order for them to secure a relationship with the Verizon IndyCar Series.

33. NMHC, NMC, and Chouest also leveraged the strong reputation of ASML in providing assurances to the State of Louisiana that they had retained industry-savvy operators to properly manage the operations of their proposed Grand Prix as well as providing a reason for the State of Louisiana to back a new and untested facility (in terms of hosting a large top-tier spectator event) and track management lacking major event experience.

34. NMHC contracted with, retained and/or approved of, all the necessary suppliers, vendors, services, logistics and third-party providers to operate the Event. ASML assigned numerous of its employees and independent contractor relationships to manage and guide the suppliers, vendors and independent contractors retained by NMHC, NMC and Chouest.

35. The first Indy Grand Prix of Louisiana took place on April 10-12, 2015. Despite continued interference and harassment by Defendants, including specific directions from Chouest contrary to the best interests of managing a large spectator event both properly and within budget, plus horrific weather, ASML successfully operated the Event and satisfied all of its contractual obligations pursuant to its Scope of Work in the Agreement.

36. On April 29, 2015, at Defendants' request, ASML met with Michael Sherman, Chouest's representative, to discuss NMHC's failure to pay ASML. At that meeting, Sherman informed ASML that ASML would not be paid any fees, any reimbursements or other contractual payments. Sherman stated NMHC was nearly insolvent, and that any remaining capital would be used to pay vendors who could potentially place a lien on NMC's and Chouest's track, and that,

contrary to previous representations, neither Chouest nor NMC would make any payment to or assist ASML in recovering the money it was due for its services, in any way.

37. The NOLA Motorsports Park, into which Chouest has poured $75 million in capital, was the principal beneficiary of the race Event. NMC, its NOLA Motorsports Park and Chouest continue to benefit from the enhanced international profile and awareness among corporate event business prospects and professional motorsports entities as well as amateur enthusiast clients of the track, that they gained from hosting a successful IndyCar race and the promotions in support of that race.

### Louisiana's Single Business Enterprise/Alter Ego

38. NMHC is a "non-profit" corporation formed on June 26, 2014, for the purpose of promoting the 2015 New Orleans IndyCar race on behalf of Chouest and NMC.

39. Chouest appointed as officers of NMHC **Kristen Engeron**, President of NMHC; **Michael Sherman**, Secretary of NMHC; and **Delisha Boyd**, Treasurer of NMHC. Upon information and belief, **Richard S. Vander Heide** and **Burt Benrud** also hold positions within NMHC.

40. Upon information and belief, Frank Csaki, holds the position of accountant within NMHC. Csaki is also the accountant for NMC, Chouest and Chouest related entities.

41. Engeron is also the President of NMC. During 2013, Chouest recruited and hired Engeron as President of NMC to run the day-to-day operations of NOLA Motorsports Park.

42. Engeron reports to Chouest as her NMC supervisor. She is married to the general counsel of Edison Chouest Offshore, the Chouest family business.

43. Sherman represents Chouest as a lobbyist and advisor and facilitated the real estate purchase for the track.

44. Boyd is Chouest's real estate listing agent for NMC who lists the available home sites at NOLA Motorsports Park.

45. NMHC and NMC share the same corporate address of 11075 Nicolle Boulevard, Avondale, Louisiana 70094. This is the same registered address of Chouest's related entities, including, Motor Realty, L.L.C., Laney C. Racing, L.L.C. and Laney C, L.L.C.

46. Sherman, Boyd, Engeron and Csaki are beholden to and economically dependent upon Chouest. At all times they functioned as his agents in operating NMHC for the benefit of Chouest and NMC, and NMC and Chouest actively controlled and directed NMHC such that NMHC was indistinguishable from Chouest and/or NMC.

47. Chouest maintains his office at NOLA Motorsports Park located at 11075 Nicolle Boulevard, Avondale, Louisiana 70094.

48. NMC, Chouest and Chouest-related entities, although not signatories to the Agreement, benefited from the IndyCar race and the business generated for each both prior to and after the Event specifically because of the Event, such as team, manufacturer and IndyCar testing as well as other future business benefiting them due to the publicity and goodwill derived by having hosted an IndyCar race. These Defendants and entities obtained monetary gain from the rental of the racing facility prior to, during and after the Event, and continue to benefit from the enhanced reputation the track has gained from hosting a successful world-class race at a previously little-known facility.

49. NMC and Chouest directly benefited from the $4.5 million in State appropriations to Defendant NMHC by diverting and/or withholding funds from ASML and using most of that grant money for permanent improvements to their track, which continue to provide benefit to Chouest and NMC.

50. Chouest created NMHC specifically to obtain funding for the race and he spearheaded the efforts to obtain the funding for the race. Indeed, Chouest personally assured ASML and others that he personally stood behind the funding of the race. Chouest was the face of the Event. He acted at all times as the person behind the race Event, in order to draw publicity, sponsors, and public attention to his track.

51. Despite Chouest's assurances, Chouest undercapitalized NMHC, resulting in NMHC's inability and refusal to pay its contractors. At all relevant times, NMHC was undercapitalized, inadequately capitalized, and thinly incorporated such that it was insufficiently funded, and had insufficient capital to support its operations.

52. Chouest falsely assured ASML its fees would be fully paid through the State appropriations or through his personal investment, when he actually intended to only fully pay those contractors who made improvements to his race track or who had ongoing relationships with Chouest or who had the ability to place a lien on NOLA Motorsports Park. Chouest provided such false assurances to ASML throughout its performance until they were ultimately informed they would not be paid.

## FIRST CLAIM FOR RELIEF
### (Breach of Written Contract)

53.     ASML repeats and re-alleges each and every allegation previously set forth as if plead herein in extenso.

54.     Chouest completely controlled Engeron, Sherman, Boyd, Csaki and NMHC, and used them to benefit himself and his/NMC's track, at the expense of NMHC's creditors, such as ASML.

55.     Chouest, NMHC and NMC also committed fraud by misrepresenting to ASML, up until approximately 45 days prior to the Event, that the State of Louisiana's $4.5 million appropriation and Chouest's investment would cover the expenses incurred by the Event, including ASML's fees.

56.     ASML and NMHC entered into the Racing Services Agreement on July 6, 2014.

57.     Pursuant to the Agreement, ASML was retained to provide certain motorsports operations, management and marketing services for the Event owned and promoted by NMHC at NOLA Motorsports Park, which NMHC would lease from NMC.

58.     According to the Agreement's Statement of Work, NMHC is the owner and promoter of the Race (a/k/a the INDYCAR New Orleans Event). NMHC contracted with ASML for the development, coordination, management, operation and execution of a private label solution for conducting the Event commencing in 2014 and scheduled for 2015, 2016 and 2017, which are to be sanctioned as part of the Verizon INDYCAR Series.

59.     ASML successfully performed its services in accordance with the Statement of Work under the Racing Services Agreement, and the race was successfully held on April 10-12, 2015.

60. In consideration of ASML's provision of management, operations and promotions services set forth in the Statement of Work for the 2015-2017 Races, NMHC agreed to pay to ASML an annual management fee of Four Hundred Fifty Thousand ($450,000) dollars. This management fee was in addition to the ASML event and service costs outlined in the Agreement and incorporated into the Event Budget at Eight Hundred Seventy Two Thousand Fifty ($872,050) dollars annually.

61. NMHC agreed to pay ASML the combined total for its management fee and event and service costs of ($1,322,050) annually, in installments as outlined pursuant to the schedule described herein plus any and all expenses incurred by ASML in performing its services.

62. The Term of the Agreement covers three years of Events and is for a term up until and ending on December 31, 2017.

63. Following the race, and pursuant to the Agreement, an amount of $643,790 was owed to ASML for the 2015 Event. Including the $206,593.78 due and owing to ASML for reimbursable expenses, ASML is owed a total of $850,838.78 for the 2015 Event alone.

64. After the Event on April 29, 2015, ASML met with Michael Sherman, who advised categorically that no further payments under the Agreement would be paid to ASML by NMHC, and that NMHC would instead use its limited funds to pay vendors who had direct interests and influence with NOLA Motorsports Park.

65. NMHC breached the Agreement by failing to pay ASML those sums that are owed under the terms thereof, and has repudiated its obligations to pay ASML.

66. All named Defendants owe damages to ASML under Louisiana's "single business doctrine" and/or alter ego doctrine for payments due for the 2015 Event and for profits lost from the Events to be managed by ASML in 2016 and 2017.

67. As a result of the conduct described herein, Complainant has been damaged in an amount to be proven at trial.

68. The Racing Services Agreement provides for attorneys' fees and costs to be paid to ASML in connection with this suit.

**SECOND CLAIM FOR RELIEF**
**(Louisiana's Unfair Trade Practices Act**
**La.Rev.Stat. §51:1401, et seq.)**

69. ASML repeats and re-alleges each and every allegation previously set forth as if plead herein in extenso.

70. ASML was led to believe by Chouest that it would be paid all sums owed and due for the 2015 race under the Agreement from the balance remaining from the $4.5 million appropriated to NMHC by the State of Louisiana and from Chouest's personal investment which has been reduced by the amount Chouest directed toward track improvements and toward payment of vendors who had the ability to place a lien on NOLA Motorsports Park, to the detriment of ASML.

71. However, after entering the Racing Services Agreement and after expending its own resources without reimbursement by NMHC, ASML learned NMHC was undercapitalized from the beginning of its incorporation. In reality, to date, Chouest has used or allocated most of the State grant to benefit Chouest, NMC and their creditors.

72. The negotiations that led to the execution of the Racing Services Agreement were led by Chouest, or those acting on his behalf, as evidenced by the fact that most of the State funds were spent or are allocated by NMHC for the benefit of Chouest, NMC and their creditors.

73. NMHC was formed by Chouest solely to capitalize on the race and to accept the state grant for his benefit, while avoiding any financial liability for the Racing Event and sheltering other Chouest-related entities and Chouest, individually, from financial liability therefor.

74. The actions of NMHC, NMC and Chouest constitute deception, misrepresentation and/or fraud in violation of Louisiana's Unfair Trade Practices Act, La.Rev.Stat. §51:1401, et seq.

75. NMHC, NMC and Chouest are liable to Complainant under LUTPA and Complainant is entitled to three times the actual damages sustained and its attorneys' fees and costs in bringing this claim.

## **UNJUST ENRICHMENT**

76. ASML repeats and re-alleges each and every allegation previously set forth as if plead herein in extenso.

77. NMHC, NMC, Chouest and Chouest-related entities were enriched through ASML providing services under the Racing Services Agreement, and its successful management of the Race. Specifically, the track benefited from the advertisement, global recognition and awareness that come therewith.

78. ASML has not been paid in full for its services under the Agreement.

79. NMC and Chouest received benefits form ASML's performance as a result of which NMC and Chouest have been enriched without corresponding compensation or benefit to ASML.

80. No legal cause exists to justify the enrichment of NMHC, NMC and Chouest at ASML's expense.

81. In the event it is determined that no privity exists between ASML and Defendants, NMC and Chouest, and no other legal remedy against these defendants is available to ASML, ASML hereby seeks recovery from Defendants, NMC and Chouest, under the theory of unjust enrichment.

## **FRAUD**

82. ASML repeats and re-alleges each and every allegation previously set forth as if plead herein in extenso.

83. Chouest and NMC have improperly used and operated NMHC as an instrumentality, and have engaged in improper conduct.

84. Chouest, NMC, and NMHC made false and misleading statements to ASML, including:

   a. Intentionally misrepresenting to ASML that NMHC was adequately capitalized such that ASML would receive full payment regardless of the event's profitability;

   b. Intentionally misrepresenting that Chouest himself stood behind the venture and intended to invest his own money, if necessary, to ensure the venture would not fail financially and remain viable for the future for NMHC to fulfill the terms of

the Racing Services Agreement and that ASML would be fully compensated under the Racing Services Agreement; and

c. Failing to inform ASML that NMHC would operate as an instrumentality of Chouest and NMC for the benefit of Chouest and NMC and to the detriment of ASML.

85. NMHC, Chouest, and NMC made and/or were knowingly responsible for making these misrepresentations to ASML and knew or should have known they were false at the time they were made.

86. NMHC, Chouest, and NMC made such misrepresentations and/or omissions with the intent that ASML would rely upon them to its detriment.

87. In reasonable reliance on the misrepresentations and/or omissions by NMHC, Chouest, and NMC, ASML entered into the Racing Services Agreement and, as a result, suffered harm.

88. As a proximate cause of the foregoing, ASML has been injured in an actual amount to be proven at trial, and should be awarded damages in accordance with the evidence.

## JURY TRIAL DEMAND

89. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ASML demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore Complainant, Andretti Sports Marketing Louisiana, LLC, prays that Judgment be entered in its favor and against Defendants, for past, present and future damages and losses pursuant to the terms of the Racing Services Agreement for 2015, 2016 and 2017, as well as any additional damages, including, but not limited to, damage to reputation, loss of good will, treble

damages, attorneys' fees, costs, expenses, interest, and such other and further relief as the Court deems just and proper.

                                          Respectfully submitted,

                                          /s/ Allen J. Krouse, III
                                          **ALLEN J. KROUSE, III (#14426)**
                                          **SUZANNE RISEY (#25488)**
                                          **HEATHER MCARTHUR (#32897)**
                                          **FRILOT L.L.C.**
                                          1100 Poydras Street, Suite 3700
                                          New Orleans, LA  70163
                                          Telephone:     (504) 599-8000
                                          Facsimile:     (504) 599-8100
                                          E-mail:  akrouse@frilot.com
                                                     srisey@frilot.com
                                                     hmcarthur@frilot.com