## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANDRETTI SPORTS MARKETING LOUISIANA, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2167** |
| **NOLA MOTORSPORTS HOST COMMITTEE, INC., NOLA MOTOR CLUB, LLC, and LANEY CHOUEST** | **SECTION: "G"(3)** |

## ORDER

In this litigation, Plaintiff Andretti Sports Marketing Louisiana, LLC ("Andretti") alleges that it is owed money under a contract it entered into with Defendant NOLA Motorsports Host Committee, Inc. ("NMHC").[1] Andretti alleges that Defendants NOLA Motor Club, LLC ("NOLA Motor") and Laney Chouest ("Chouest") are also liable to it under Louisiana's single-business enterprise and alter-ego doctrines.[2] Pending before the Court is NMHC's "Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim."[3] Having reviewed the motion, the memorandum in support, the memorandum in opposition, and the applicable law, the Court is inclined to grant the motion as to the following claims: (1) Andretti's fraud claim against NMHC; (2) Andretti's unjust enrichment claim against NMHC; (3) Andretti's LUPTA claim against NHMC. However, the Court will allow Andretti an opportunity to amend its complaint by December 18, 2015. If Andretti is unable to cure the deficiencies in its complaint by that time, the Court will dismiss the above referenced claims.

---

[1] Rec. Doc. 1 at p. 1.

[2] *Id.*

[3] Rec. Doc. 25.

# I. Background

## A. *Factual Background*

  In its complaint, Andretti alleges that this action arises out of a Racing Services Agreement entered into by Andretti and NMHC, a non-profit formed on June 26, 2014.[4] In 2014, Andretti entered into negotiations with Chouest to bring the Verizon IndyCar Series to NOLA Motorsports Park for the first ever Indy Grand Prix of Louisiana ("Event").[5] NOLA Motor owns and operates NOLA Motorsports Park, which is a racing and events facility located outside of New Orleans.[6] Chouest is the sole member of NOLA Motor.[7]

  Andretti alleges that Chouest represented, on numerous occasions during the negotiations, that he "personally stood behind the Event" and would make sure that its obligations were fully funded for the first year of the Event.[8] On July 6, 2014, Andretti and NMHC entered into the Racing Services Agreement.[9] Andretti alleges that it was advised that NMHC was formed because the State of Louisiana had agreed to help fund the Event and the State required grant money to be received by a non-profit.[10] According to Andretti, NMHC agreed to pay Andretti $1,322,050 annually for its management fee as well as for the event and service costs, regardless of the success of the race.[11]

---

[4] Rec. Doc. 1 at pp. 1, 10.

[5] *Id.* at p. 4.

[6] *Id.*

[7] *Id.* at p. 3.

[8] *Id.* at p. 7.

[9] *Id.* at p. 13.

[10] *Id.* at p. 7.

[11] *Id.* at p. 14.

Under the Agreement, Andretti was to provide management services for races to take place in the years 2015, 2016 and 2017.[12]

On August 19, 2014, NMHC entered into a Cooperative Endeavor Agreement with the State of Louisiana to allocate $4.5 million of state funds for the Event.[13] Andretti alleges that approximately $3.4 million of the money provided by the State of Louisiana went to capital improvements in NOLA Motorsports Park and that this "deprived NMHC of needed capital to fulfill its financial obligations."[14] The Event took place on April 10-12, 2015.[15] It is alleged that there are no funds to pay the balance of Andretti's management fees or the event and service costs.[16]

**B.    *Procedural Background***

On June 16, 2015, Andretti filed a complaint against NMHC, NOLA Motor, and Chouest (collectively "Defendants"), alleging claims of breach of contract, unfair and deceptive trade practices, unjust enrichment, and fraud.[17] Andretti alleges that NOLA Motor and its sole member, Chouest, are liable under Louisiana's single business enterprise, alter-ego, unjust enrichment, and fraud doctrines.[18] On June 24, 2015, Andretti filed its "First Amended Complaint" to allege the citizenship of parties identified in its original complaint.[19]

---

[12] *Id.* at p. 8.

[13] *Id.* at pp. 5–6.

[14] *Id.* at p. 6.

[15] *Id.* at p. 9.

[16] *Id.*

[17] *Id.* at p. 1.

[18] *Id.*

[19] Rec. Doc. 12.

On July 30, 2015, Defendants NOLA Motor and Chouest together filed a "Rule 12(b)(6) Motion to Dismiss, and Alternative 12(e) Motion for More Definite Statement."[20] The same day, Defendant NMHC filed a "Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim."[21] On August 25, 2015, Andretti filed oppositions to both motions.[22] The Court heard oral argument on both motions on September 2, 2015. Here, the Court considers only NMHC's motion to dismiss.

## II. Parties' Arguments

### A.    NMHC's Arguments in Support of its Motion to Dismiss

NMHC moves to dismiss Andretti's claims of fraud, unfair trade practices, and unjust enrichment pursuant to Federal Rules of Civil Procedure 8(a)-(b), 9(b), and 12(b)(6).[23]

#### 1.    Fraud

NMHC first contends that Andretti's fraud claim should be dismissed because Andretti fails to sufficiently plead fraud as required by Federal Rule of Civil Procedure 9(b).[24] NMHC asserts that Rule 9(b) requires Andretti to plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation."[25] NMHC avers that Andretti's allegations of misrepresentations, that "(1) NMHC misrepresented that it was adequately capitalized; (2) NMHC misrepresented that 'Chouest himself stood behind the venture and intended to invest his own money' to pay [Andretti], if necessary; and (3) NMHC failed to inform [Andretti] that it

---

[20]  Rec. Doc. 23.

[21]  Rec. Doc. 25.

[22]  Rec. Doc. 29; Rec. Doc. 30.

[23]  Rec. Doc. 25 at p. 1.

[24]  Rec. Doc. 25-5 at p. 5

[25]  *Id.* at p. 6 (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

would operate as an instrumentality of Chouest," do not contain allegations of time, place, and identity of the speaker of the alleged misrepresentations.[26]

Furthermore, NMHC contends that the factual allegations "fail before even the most rudimentary scrutiny."[27] First, NMHC contends that Andretti does not dispute that NMHC provided more than the capitalization requirement of $1 million specified in the Racing Services Agreement.[28] Furthermore, even taking as true Andretti's statement that NMHC spent $3.4 million of the $4.5 million state grant on track safety modifications, NMHC contends that it met the $1 million capitalization requirement.[29] Second, NMHC disputes the claim that Chouest intended to invest his own money to pay event debts.[30] NMHC directs the Court's attention toward the Event budget, which it asserts was created by Andretti, and which does not list an investment from Chouest.[31] Third, NMHC contends that the allegation that Andretti "reasonably relied" upon the misrepresentation by Chouest that he would fund the event is belied by the written agreements.[32] Fourth, NMHC asserts that the final allegation regarding the failure to inform Andretti that NMHC would operate as an instrumentality of Chouest "makes very little sense in light of Andretti's other allegations—specifically that it relied upon some representation that 'Chouest himself stood behind

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at p. 7.

[31] *Id.*

[32] *Id.*

the venture'" and is so "non-specific as to preclude any reasonable investigation into the claim."[33] In addition, NMHC asserts that the terms of the Racing Services Agreement make clear that NMHC is not an affiliate of NOLA Motor.[34]

### 2.    Unjust Enrichment

NMHC moves to dismiss Andretti's claims for unjust enrichment on the grounds that Andretti cannot allege that it has no other remedy at law because it is pursuing a claim of breach of contract against NMHC.[35] NMHC contends that "Louisiana courts will allow unjust enrichment claims arising out of contractual relationships to survive motions to dismiss only where it has been determined that no contractual remedies exist."[36]

NMHC additionally asserts that Andretti has failed to allege an enrichment without cause, as required under Louisiana law.[37] Citing *Gulfstream Services, Inc. v. Hot Energy Services, Inc.*,[38] a Louisiana First Circuit Court of Appeal case, NMHC contends that Louisiana courts will find enrichment where an entity's "assets increase, without adequate compensation, or his liabilities diminish."[39] NMHC argues that there is clearly no "asset increase" attributable to Andretti's services and the only cognizable "diminished liabilities" are funds used to pay liabilities other than Andretti's

---

[33] *Id.* at p. 8.

[34] *Id.*

[35] *Id.* at p. 9.

[36] *Id.* (citing *"We The People" Paralegal Servs., L.L.C. v. Watley*, 33,480 (La. App. 2 Cir. 8/25/00); 766 So. 2d 744, 749).

[37] *Id.* at pp. 8–9.

[38] 2004 CA 1223 (La. App. 1 Cir. 3/24/05); 907 So. 2d 96, 101.

[39] Rec. Doc. 25-5 at p. 10.

fees.[40] Furthermore, it contends that Andretti's allegations that the track "benefitted from the advertisement, global recognition and awareness" that came with the Event cannot support a finding of enrichment.[41] NMHC contends that Louisiana courts will not find unjust enrichment, where, as here, the justification or cause for the enrichment was the contractual agreement between the parties.[42]

### 3.    LUTPA

NMHC also moves for dismissal of the LUTPA claims against it on the grounds that the allegations do not support a claim of unfair methods of competition or unfair or deceptive acts or practices.[43] NMHC asserts that the only allegations in the complaint regarding actions by NMHC are that "(1) it refused to pay [Andretti] additional funds after April 29, 2015, (2) that NMHC was unable to and/or refused to pay its contractors, and (3) a blanket conclusion that NMHC's actions (among other actors) constitute 'deception, misrepresentation and/or fraud' in violation of LUTPA."[44] NMHC contends that fundamentally, Andretti's LUTPA claim is a reiteration of its breach of contract claim and there are no facts pled which can support a claim that NMHC engaged in conduct that "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious."[45] NMHC avers that "[a]t its core, the sole allegation by

---

[40] *Id.*

[41] *Id.*

[42] *Id.* (citing *Edwards v. Conforto*, 636 So. 2d 901, 907 (La. 1993)).

[43] *Id.* at p. 11.

[44] *Id.* at p. 12 (citations omitted).

[45] *Id.* at p. 13.

[Andretti] of conduct by NMHC is that it has not paid amounts allegedly due under a contract."[46] In addition, NMHC contends that a factor relevant to LUTPA analysis is whether a "special relationship" exists between the parties.[47] NMHC asserts that no such relationship existed between Andretti and NMHC.[48]

In addition, NMHC avers that Andretti's claim that NMHC was undercapitalized is unsupportable as Andretti failed to allege that NMHC did not have $1 million available to fund the Event, as required under the Racing Services Agreement.[49]

Finally, NMHC contends that Andretti makes no allegations that NMHC knowingly used unfair trade practices after being put on notice by the Attorney General, and therefore Andretti cannot assert a claim for treble damages.[50]

## B.   *Andretti's Arguments in Opposition*

### 1.   **Fraud**

In opposition, Andretti asserts that it has identified the timing of the misrepresentations in its complaint as "days prior to July 6, 2014" and identified the people who made the representations as Michael Sherman, Laney Chouest, and Kristin Engeron.[51] Andretti asserts that all three of these individuals also made these representations after the Racing Services Agreement was executed.[52]

---

[46] *Id.*

[47] *Id.* (citing *Turner v. Purina Mills, Inc.*, 980 F.2d 1419 (5th Cir. 1993).

[48] *Id.*

[49] *Id.* at pp. 12–13.

[50] *Id.* at p. 12 (citing La. Rev. Stat. § 51:1409).

[51] Rec. Doc. 29 at p. 8.

[52] *Id.*

In response to NMHC's argument that there could be no misrepresentation about adequate capitalization due to the provisions in the Racing Services Agreement, Andretti asserts that the money was earmarked for the Event, not for payment to Andretti, and that Andretti was misled to believe payment for its services would come from the $4.5 million grant from the State.[53] Andretti asserts that although NMHC contends that the allegation that the money instead went to capital improvements to the race track is false, a motion to dismiss for failure to state a claim upon which relief can be granted is not the appropriate vehicle for that argument.[54] Andretti additionally asserts that NMHC's claim that Andretti drafted the "Event Budget," which listed only $1 million of funds to be procured by NMHC, is false and is not supported by the budget itself.[55]

Andretti also asserts that the allegation that "an unknown person at an unknown time failed to inform it that NMHC would operate as an instrumentality of Chouest" is one of fraud by omission which "can and must be pled without an identification of the exact time and place said omission occurred."[56]

Finally, Andretti avers that the contractual provision which provides that NMHC is not an affiliate of NOLA Motor does not serve as a basis to dismiss the fraud claims because Andretti's claim is not that they were affiliates but rather that they acted as a single business entity and/or alter-ego.[57]

---

[53] *Id.*

[54] *Id.* at p. 9.

[55] *Id.*

[56] *Id.*

[57] *Id.* at p. 10.

### 2.    Unjust Enrichment

Andretti contends that its unjust enrichment claim is properly pled in the alternative under Federal Rule of Civil Procedure 8, as the Court may find that no privity of contract exists between Andretti, NOLA Motor, and Chouest under the Racing Services Agreement or because the contract may be declared null and void.[58] Andretti asserts that dismissal of its unjust enrichment claim is not warranted at this time.[59]

### 3.    LUTPA

Andretti contends that NMHC's motion to dismiss its LUTPA claim is more akin to a motion for summary judgment.[60] First, Andretti avers that although LUTPA does not provide an alternative remedy for simple breaches of contract, Andretti's LUTPA claim against NOLA Motor and Chouest "is not simply an *alternative* to its breach of contract claim."[61] Andretti asserts that NOLA Motor and Chouest were not signatories to the Racing Services Agreement and the allegations are not limited to the contractual provisions of the Agreement.[62] Andretti avers that prior to the execution of the Racing Services Agreement, Chouest represented that Andretti would be compensated in full from the $4.5 million appropriated to NMHC by the State of Louisiana and from Chouest's personal investment.[63] It contends that after execution of the Agreement, Andretti learned that NMHC did not

---

[58]  Rec. Doc. 29 at pp. 10–11.

[59]  *Id.* at p. 11 (citing *Prop. One, Inc. v. USAgencies, L.L.C.*, 830 F. Supp. 2d 170 (M.D. La. 2011); *McCullum v. McAlister's Corp. of Miss.*, No. 08-5050, 2010 WL 1489907 (E.D. La. Apr. 13, 2010) (Lemmon, J.); *ORX Res., Inc. v. Autra*, No. 09-4451, 2009 WL 3447256 (E.D. La. Oct. 20, 2009) (Africk, J.); *Mayer v. Lamarque Ford, Inc.*, No. 00-1325, 2001 WL 175232 (E.D. La. Feb. 16, 2001) (Clement, J.)).

[60]  *Id.* at p. 12.

[61]  *Id.* at p. 13 (emphasis in original).

[62]  *Id.*

[63]  *Id.*

have the funds to pay Andretti under the Agreement and Chouest had no intention to personally cover the amounts owed to Andretti as he had previously represented.[64] In addition, Andretti contends that the allegations that the State of Louisiana required funds to be distributed only to a non-profit corporation were inaccurate and Chouest used the state funds to benefit his race track.[65]

Second, Andretti contends that the LUTPA claim is not solely against Chouest.[66] Andretti asserts that, because all defendants operated as a single business enterprise, the actions of each defendant are attributed to one another.[67]

Third, Andretti avers that NMHC's assertion that a "special relationship" between Andretti and NMHC is required under LUTPA is misplaced.[68] Andretti contends that the Louisiana Supreme Court in *Cheramie Services, Inc. v. Shell Deepwater Production* expanded standing under LUTPA to all persons.[69] Andretti contends that, as a result, a two-prong test was created that did not require the presence of a special relationship between the parties.[70] Andretti asserts that this test requires that "1) the person must suffer an ascertainable loss; and 2) the loss must result from another's use of unfair methods of competition and unfair or deceptive acts or practices."[71] Andretti maintains that even if a special relationship is required, such a relationship existed because Andretti lacked equal

---

[64] *Id.* at pp. 13–14.

[65] *Id.* at p. 14.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at pp. 14–15 (citing *Cheramie Services, Inc. v. Shell Deepwater Prod.* 09-1633, p. 6 (La. 4/23/10); 35 So.3d 1053, 1057).

[70] *Id.* at p. 15.

[71] *Id.*

bargaining power with Chouest and his entities.[72] Andretti asserts that Andretti "was at the behest of Chouest who meddled and unduly interfered at nearly every turn with [Andretti's] rendering of services and who deceptively <u>guaranteed</u> he would personally fund the race during its first year to ensure [Andretti] would be paid."[73]

Finally, Andretti asserts that a challenge to its entitlement to treble damages is premature.[74] Andretti avers that it provided notice to the Louisiana Attorney General of its LUTPA claim against Defendants on July 1, 2015, which it asserts is the same date it filed its complaint.[75] Andretti contends that whether Defendants have continued to engage in unfair trade practices since that date will be further developed in discovery and is not an appropriate issue for a 12(b)(6) motion.[76]

## **IV. Law and Analysis**

### A.   *Legal Standard on a Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[77] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[78] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is

---

[72] *Id.*

[73] *Id.* (emphasis in original).

[74] *Id.*

[75] *Id.* In fact, Andretti filed its complaint on June 16, 2015. Rec. Doc. 1.

[76] *Id.*

[77] Fed. R. Civ. P. 12(b)(6).

[78] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

plausible on its face.'"[79] "Factual allegations must be enough to raise a right to relief above the speculative level."[80] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[81]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[82] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[83] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[84] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[85] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[86] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[87] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted

---

[79] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[80] *Twombly*, 550 U.S. at 556.

[81] *Id.* at 570.

[82] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[83] *Iqbal*, 556 U.S. at 677–78.

[84] *Id.* at 679.

[85] *Id.* at 678.

[86] *Id.*

[87] *Id.*

claims.[88] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[89]

**B.      Applying Louisiana Law**

When a federal court interprets a state law, it must do so according to the principles of interpretation followed by that state's highest court.[90] In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."[91] These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom."[92] To make a so-called "*Erie* guess" on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.[93] Although federal courts should not disregard the decisions of Louisiana's intermediate courts unless they are "convinced that the Louisiana Supreme Court would decide otherwise," they are not strictly bound by them.[94]

---

[88] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[89] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[90] *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010); *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).

[91] *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 547 (5th Cir. 2004).

[92] *Id.* (quoting La. Civ. Code. art. 1 rev. cmt. b).

[93] *Id.* (citation omitted).

[94] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

### C.    *Fraud Claim*

NMHC moves to dismiss Andretti's fraud claim on the grounds that Andretti's allegations of misrepresentations do not contain allegations of time, place, and identity of the speaker of the alleged misrepresentations, as required by Federal Rule of Civil Procedure 9(b).[95]

"The elements of a Louisiana delictual fraud or intentional misrepresentation cause of action are: (a) misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury."[96] Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "What constitutes 'particularity' will necessarily differ with the facts of each case . . . ."[97] The Fifth Circuit has held, however, that "[a]t a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."[98] In cases involving an omission of facts, Rule 9(b) "typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."[99] In addition, "[a]lthough scienter may be 'averred generally,' . . .

---

[95] *Id.*

[96] *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999).

[97] *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).

[98] *Tel-Phonic Servs., Inc. v. TBS Int'l*, 975 F.2d 1134, 1139 (5th Cir. 1992) (internal quotations and citation omitted).

[99] *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004) (internal quotations and citation omitted).

[t]o plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud."[100]

NMHC contends that Andretti's allegations of fraud are as follows: "(1) NMHC misrepresented that it was adequately capitalized; (2) NMHC misrepresented that 'Chouest himself stood behind the venture and intended to invest his own money' to pay [Andretti], if necessary; and (3) NMHC failed to inform [Andretti] that it would operate as an instrumentality of Chouest."[101] In opposition, Andretti cites to several paragraphs of its complaint and contends that it has identified the timing of the misrepresentations as the "days prior to July 6, 2014," and identified the people who made the misrepresentations as Michael Sherman, Laney Chouest, and Kristen Engeron.[102]

Andretti appears to assert that it has stated the time the misrepresentations took place because it stated in one paragraph that representations were made "[i]n the days prior to July 6, 2014." However, Andretti asserted that those dates were when Andretti was advised that NMHC was being formed to execute the Agreement, not the dates that anyone represented that Chouest would personally ensure the Event's viability or that Andretti would be paid from the state funds. The paragraphs pertaining to allegations that Andretti was informed that it would be paid by funds from the State of Louisiana or by Chouest's personal investment do not contain any dates.[103] Andretti does not specifically allege when or where these representations were made, or specifically to whom the representations were made.

---

[100] *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 106, 1068 (5th Cir. 1994).

[101] Rec. Doc. 25-5 at p. 6.

[102] Rec. Doc. 30 at p. 24.

[103] Rec. Doc. 1 at pp. 7–10.

Nor does Andretti specifically allege when, where, or to whom a misrepresentation was made that NMHC was adequately capitalized. In Andretti's complaint, Andretti alleges only that "[d]espite Chouest's assurances, Chouest undercapitalized NMHC, resulting in NMHC's inability and refusal to pay its contractors."[104] Therefore, Andretti has also failed to adequately plead this alleged misrepresentation.

Furthermore, Andretti alleges that NMHC failed to inform [Andretti] that it would operate as an instrumentality of Chouest.[105] As noted above, in cases involving an omission of facts, Rule 9(b) "typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."[106] Andretti has not alleged the facts NMHC allegedly omitted, the place where the omissions should have appeared, or the way in which the omitted facts made the representations misleading.

Although NMHC did not request a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) in the alternative to its motion to dismiss, at oral argument Andretti requested an opportunity to amend its complaint if the Court was inclined to dismiss any of its claims. The Court finds that Andretti has failed to plead its fraud claims with the particularity required by Federal Rule of Civil Procedure 9(b). However, the Court grants Andretti's request for leave to amend its complaint to address these deficiencies.

---

[104] *Id.* at p. 12.

[105] *Id.* at p. 18.

[106] *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004) (internal quotations and citation omitted).

**D.      *Unjust Enrichment Claim***

NMHC moves to dismiss Andretti's claim for unjust enrichment on the grounds that: (1) Andretti cannot allege that it has no other remedy at law because it is pursuing a claim of breach of contract and (2) no enrichment without cause exists in this case.[107]

Louisiana Civil Code Article 2298 provides that

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The requisite elements of a claim for unjust enrichment are: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) no other remedy at law.[108]

The existence of another remedy at law will preclude an unjust enrichment claim. In *Walters v. MedSouth Record Management, LLC*, the Louisiana Supreme Court held that a plaintiff was precluded from seeking to recover pursuant to a claim for unjust enrichment because in his original petition he alleged that he had suffered harm as a "direct result of the negligent and tortious conduct" of the defendant.[109] The court found that it was of no consequence that the plaintiff's tort claims had prescribed and held that "[b]ecause the law provided plaintiff with another remedy," the plaintiff had failed to state a cause of action for unjust enrichment.[110] Here, Andretti alleges that it has not been paid in full for its services under the Racing Service Agreement and that NMHC was

---

[107]   Rec. Doc. 25-5 at pp. 9–10.

[108]   *Baker v. Maclay Props. Co.*, 94-1529, p. 18 (La. 1/17/95); 648 So.2d 888.

[109]   2010-0352, p. 2 (La. 6/4/10); 38 So. 3d 241.

[110]   *Id.*

unjustly enriched through Andretti's provision of services under the Agreement.[111] However, Andretti has also brought a breach of contract claim against NMHC.

In opposition, Andretti cites several cases from the Eastern District of Louisiana and the Middle District of Louisiana holding that an unjust enrichment claim could be pled alongside other claims because Federal Rule of Civil Procedure 8 allows for alternative pleading.[112] However, in *Ferrara Fire Apparatus, Inc. v. JLG Industries, Inc.*, the Fifth Circuit held that the availability of a claim for breach of contract precludes a claim of unjust enrichment.[113] The court found that "because [the plaintiff] could have brought a claim for breach of contract for any damages it incurred during the time the contract was still in effect, [the plaintiff] [could not] maintain a cause of action for unjust enrichment during that time."[114] The Fifth Circuit found that "[t]he important question is whether another remedy is available, not whether the party seeking a remedy will be successful."[115] Furthermore, as discussed above, the Louisiana Supreme Court and Louisiana Circuit Courts of Appeal have held that the existence of another remedy at law will preclude an unjust enrichment claim, even if the other claim is prescribed.

In this case, Andretti has pled a breach of contract claim against NMHC. Although Andretti asserts that the Court "could find the Racing Services Agreement to be null and void,"[116] and in

---

[111] Rec. Doc. 1 at pp. 16–17.

[112] Rec. Doc. 30 at pp. 21–22 (citing *Prop. One, Inc. v. USAgencies, L.L.C.*, 830 F. Supp. 2d 170 (M.D. La. 2011); *McCullum v. McAlister's Corp. of Miss.*, No. 08-5050, 2010 WL 1489907 (E.D. La. Apr. 13, 2010) (Lemmon, J.); *ORX Res., Inc. v. Autra*, No. 09-4451, 2009 WL 3447256 (E.D. La. Oct. 20, 2009) (Africk, J.); *Mayer v. Lamarque Ford, Inc.*, No. 00-1325, 2001 WL 175232 (E.D. La. Feb. 16, 2001) (Clement, J.)).

[113] 581 F. App'x 440, 444 (5th Cir. 2014).

[114] *Id.*

[115] *Id.* at 443–44.

[116] Rec. Doc. 29 at p. 11.

19

cases in which the contract is an absolute nullity a plaintiff may have a remedy in unjust enrichment,[117] there has been no assertion made by any party that the contract is a nullity. Considering that Andretti has pled a breach of contract claim against NMHC, it has another remedy at law and as such is precluded from seeking recovery against NMHC on a claim of unjust enrichment. Accordingly, the Court is inclined to dismiss Andretti's claim for unjust enrichment. However, the Court will allow Andretti an opportunity to amend its claim for unjust enrichment against NMHC before dismissal.[118]

**D.    LUTPA**

NMHC moves to dismiss Andretti's LUTPA claim on the grounds that Andretti's LUTPA claim is fundamentally a reiteration of its breach of contract claim in that "[a]t its core, the sole allegation by [Andretti] of conduct by NMHC is that it has not paid amounts allegedly due under a contract."[119] In addition, NMHC asserts that a factor relevant to LUTPA analysis is whether a "special relationship" exists between the parties,[120] but that no such relationship exists between Andretti and NMHC.[121]

LUTPA, Louisiana Revised Statute § 51:1401, declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." LUTPA affords a cause of action to any natural or juridical person "who suffers any ascertainable

---

[117] *See Baker v. Maclay Props.*, 94-1529 (La. 1/17/95); 648 So. 2d 888.

[118] In light of the Court's holding that Andretti is precluded from bringing an unjust enrichment claim, the Court need not address NMHC's second argument that the unjust enrichment claim must be dismissed because Andretti has not alleged that NMHC was enriched without cause.

[119] Rec. Doc. 25-5 at p. 13.

[120] *Id.* (citing *Turner v. Purina Mills, Inc.*, 980 F.2d 1419 (5th Cir. 1993)).

[121] *Id.*

loss of money or moveable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by [Louisiana Revised Statute] 51:1405."[122] The Louisiana Supreme Court has stated that the goals of LUTPA include "halting unfair business practices and sanctioning the businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry."[123] What constitutes an unfair trade practice is to be determined by the courts on a case-by-case basis.[124] Under LUTPA, a business action is deemed "unfair" when it offends established public policy and when it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."[125] A business action is "deceptive" when it amounts to fraud, deceit, or misrepresentation.[126] Ultimately, however, "the range of prohibited practices under LUTPA is extremely narrow."[127] The Fifth Circuit has instructed that LUTPA does not provide an alternate remedy for simple breaches of contract and held that "[t]here is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes."[128]

---

[122] *Cheramie Serv., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633, p. 6 (La. 4/23/10); 35 So. 3d 1053 (quoting La. Rev. Stat. 51:1409).

[123] *Quality Envtl. Processes, Inc. v. I.P. Petrol. Co., Inc.*, 2013-1582 (La. 5/7/14); 144 So. 3d 1011, 1025.

[124] *Cheramie Serv., Inc.*, 2009-1633 at p. 10.

[125] *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994).

[126] *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 553 (5th Cir. 2015).

[127] *Quality Envtl. Processes, Inc.*, 144 So. 3d at 1025.

[128] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).

Andretti claims that each of the defendants are liable under LUTPA because the actions of each defendant are attributed to one another.[129] However, because the Court has determined that as the current complaint now reads Andretti failed to allege sufficient facts to demonstrate that NOLA Motor and NMHC constituted a single business enterprise, or that NMHC was the alter ego of either NOLA Motor or Chouest,[130] Andretti may not rely upon these theories as the basis for assigning liability under LUTPA to NMHC for the actions of Chouest. Amendment would be necessary if Antretti could, in fact, cure such deficiencies. Therefore, for the purpose of this motion, the Court will look only to allegations of misconduct committed by NMHC.

In its opposition, Andretti contends solely that "NMHC represented that it had an addition [sic] '$1 million in funds available to fund the Event'" and that NMHC agreed that $2.6 million of the $4.5 million it received from the state would be used to support planning, operations, and production of the Event and to build the required track improvements and safety upgrades to the NOLA Motorsports Park.[131] Furthermore, Andretti contends that NMHC has not made payments to Andretti since April 8, 2015, for its services under the Racing Services Agreement.[132] However, the allegations listed by Andretti of unethical, unscrupulous and deceptive acts are focused upon alleged conduct of Chouest.[133]

---

[129] Rec. Doc. 29 at p. 14.

[130] Rec. Doc. 40.

[131] Rec. Doc. 29 at p. 17.

[132] *Id.* at p. 18.

[133] *Id.* at p. 13 ("<u>Before</u> executing the Racing Services Agreement, Defendant Chouest <u>personally</u> led [Andretti] to believe that it would be compensated in full from the monies remaining from the $4.5 million appropriated to NMHC (via the lobbying efforts of Chouest and/or his entities) by the State of Louisiana <u>and</u> from Chouest's personal investment. Relying on these representations and personal guarantees by Chouest during contract negotiations, [Andretti] believed funding for the services it would provide would be covered in full and proceeded with executing the Contract. However, <u>after</u> executing the Racing Services Agreement, [Andretti] discovered that NMHC, the non-profit corporation

The law is clear that LUTPA does not provide an alternate remedy for simple breaches of contract.[134] Andretti contends that the "LUTPA claim against the Defendants is not simply an *alternative* to its breach of contract claim against NMHC. Notwithstanding, allegations of deceptive and unethical overtones involving a contract do not preclude a claim under LUTPA."[135] However, Andretti has put forth no allegations of deception, unethical conduct, or egregious behavior committed by NMHC that would constitute a claim pursuant to LUTPA. Accordingly, the Court finds that Andretti has failed to state a claim against NMHC pursuant to LUTPA. However, the Court will allow Andretti an opportunity to amend its complaint before dismissing it as it now reads.

---

set up by Chouest at the eleventh hour to receive the State funds, did not have the funds to pay [Andretti] under the Racing Services Agreement, and further, that Chouest had no intention to personally cover the amounts owed to [Andretti] as he had previously represented and committed. [Andretti] also learned that the alleged State "requirement" [that] funds be distributed only to a non-profit corporation were inaccurate. Further, [Andretti] learned that Chouest used or allocated the State funds to benefit his race track. Thus, it became clear that NMHC was, from the outset, formed by Chouest to <u>solely</u> to capitalize on the race, accept the State grant for his benefit, avoid financial liability for the Event and shelter other Chouest-related entities and Chouest, individually, from financial liability. Clearly, this is the type of deceptive, unethical, oppressive, and unscrupulous conduct LUTPA is intended to address.").

[134] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).

[135] Rec. Doc. 29 at p. 13 (citing *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp, Inc.*, 292 F.3d 471, 482 (5th Cir. 2002)).

## IV. Conclusion

For the foregoing reasons, the Court concludes that Andretti has failed to state a claim against NMHC under LUTPA or for unjust enrichment. The Court also finds that Andretti has failed to state its fraud claim against NMHC with the particularity required pursuant to Federal Rule of Civil Procedure 9(b). Therefore, the Court is inclined to grant the motion to dismiss. However, the Court will allow Andretti until December 18, 2015, to amend its complaint to cure the deficiencies noted if possible.

Accordingly;

**IT IS HEREBY ORDERED** that Andretti is granted leave to amend its complaint against NMHC by December 18, 2015. If Andretti is unable to cure the deficiencies in the complaint by that time, the Court will dismiss the following claims: (1) Andretti's fraud claim against NMHC; (2) Andretti's unjust enrichment claim against NMHC; (3) Andretti's LUPTA claim against NHMC.

**NEW ORLEANS, LOUISIANA,** this __2nd__ day of December, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**