

**ANDRETTI**

## RACING SERVICES AGREEMENT

THIS RACING SERVICES AGREEMENT (the "**Agreement**") is entered into as of July 6, 2014 (the "**Effective Date**") by and between Andretti Sports Marketing Louisiana, LLC, an Indiana limited liability company ("**ASM**") with its principal place of business located at 7615 Zionsville Road, Indianapolis, Indiana 46268, and NOLA Motorsports Host Committee, a Louisiana non-profit corporation ("**NMHC**" or "**Promoter**"), with its principal place of business located at 11075 Nicolle Boulevard, Avondale, Louisiana 70094.  NMHC and ASM shall also be referred to hereinafter as a "Party" or collectively as the "Parties".

WHEREAS, ASM is engaged in the business of providing motorsports operations, management and marketing services;

WHEREAS, NMHC is a non-profit corporation formed for the purpose of promoting motorsports racing in the greater New Orleans area (the "**City**") and is the owner of the Event more fully described herein;

WHEREAS, NMHC desires to retain ASM to provide certain motorsports operations, management and marketing services for the Event owned and promoted by NMHC at NOLA Motorsports Park more fully described herein; and

WHEREAS, NHMC shall lease the facility known as NOLA Motorsports Park from Nola Motor Club, LLC for the purpose of producing the Event more fully described herein.

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants, and agreements set forth herein, and intending to be legally bound, the Parties agree as follows:

1.  **Definitions**

    (a)  "**Affiliate(s)**" shall mean (1) all business units and divisions of a party or its parent entities, and (2) any entity controlled by, controlling, or under common control with such party. Such entity shall be deemed to be an "Affiliate" only so long



EXHIBIT

2



as such control exists. Upon request, the parties agree to confirm the Affiliate status of a particular entity. In the interest of clarity, NMHC is not affiliate of Nola Motor Club, LLC or any entity associated with the Nola Motorsports Park.   NHMC is an independent non-profit corporation.   The board members, officers, and agents of NHMC may, from time to time, serve in another capacity for Nola Motor Club, LLC but such service shall not create any affiliate relationship between NHMC and Nola Motor Club, LLC or Nola Motorsports Park.  Further in the interest of clarity, ASM is not an affiliate of Andretti Autosport Holding Company or Andretti Autosport.  ASM is an independent for-profit corporation.  The board members, officers, members and agent of ASM may, from time to time, serve in another capacity for Andretti Autosport Holding Company or Andretti Autosport but such service shall not create any affiliate relationship between ASM and Andretti Autosport Holding Company or Andretti Autosport.

(b)     **"Effective Date"** shall mean the effective date set forth in the opening paragraph of this Agreement.

(c)     **"INDYCAR New Orleans Event"** or **"Event"** shall mean the annual automotive race (**"Race"** or **"Event"**), presently scheduled to begin in 2015, sanctioned by the Indy Racing League, LLC, d/b/a INDYCAR, an Indiana limited liability company, with its principal place of business located at 4551 West 16th Street, Indianapolis, Indiana, 46222, (**"Indy Racing League"** or **"INDYCAR"**) or a successor or an equivalent professional motorsports sanctioning body should INDYCAR cease to exist, to be held on the grounds of the NOLA Motorsports Park (**"NOLA"**), and all events and promotions related thereto.

(d)     **"Event Budget"** shall mean the budget for undertaking the Event held at NOLA commencing with an inaugural Event in 2015, to be approved by NMHC subsequent to the execution of this Agreement and amended from time to time by the Parties.

(e)     **"Services"** shall mean all services, materials, licenses, or products provided by ASM to, or for the benefit of, NMHC under this Agreement, as such items are specified in the SOW.

(f)     **"SOW"** shall mean the Statement of Work identifying the Services to be provided by ASM under this Agreement, as is set forth in Schedule A to this Agreement; and shall include any additional Schedules executed by the Parties in respect to any additional Term (as defined herein). All work product created hereunder, including as a result of the SOW, is work-for-hire and is the property of NMHC.

(h)     **"INDYCAR NOLA Agreement"** shall mean that INDYCAR Event Sanction Agreement between INDYCAR and NMHC to be executed.

2



2.     **Engagement of ASM; ASM's and NMHC's Duties and Obligations**

NMHC hereby engages ASM, and ASM hereby agrees to be engaged by NMHC, to provide the Services, that are set forth in the SOW, which is incorporated as part of this Agreement as Schedule A. ASM covenants with NMHC to employ its best skill, judgment and efforts, and to cooperate with NMHC and any other contractors engaged by NMHC in the provision of the Services that are set forth in the SOW. ASM further covenants to use its best efforts to perform its duties and obligations under this Agreement in an efficient, expeditious, and economical manner. Likewise, NMHC agrees to fulfill its obligations as set forth in this Agreement as well as honor its responsibilities set forth in the SOW, including but not limited to its sole responsibility to financially support the INDYCAR New Orleans Event for the Term. NMHC shall contract directly with INDYCAR with respect to NMHC's obligations to finance and promote the INDYCAR New Orleans Event (s).

ASM shall seek approval from NMHC before executing any agreement in excess of $5,000 in support of the Event. Such approval may be in the form on an e-mail with the words, "APPROVED."

3.     <u>**Term and Termination**</u>

(a)     <u>Term</u>. This Agreement shall commence on the Effective Date and continue for a term up until and ending on December 31, 2017 (the "**Term**"), unless earlier terminated as provided for herein. The Parties may agree to extend this Agreement upon the mutual, written consent of the Parties.

(b)     <u>Termination for Cause</u>. A Party may terminate this Agreement immediately upon written notice to the other Party in the event that such other Party: (i) becomes insolvent or makes assignment for the benefit of creditors; (ii) files or has filed against it any petition under any Title of the United States Bankruptcy Code or under any applicable state bankruptcy, insolvency, reorganization or similar debtor relief law, which filing is not discharged within thirty (30) days of said filing, or (iii) requests or suffers the appointment of a trustee or receiver, or the entry of an attachment or execution as to a substantial part of its business or assets. A non-breaching Party may terminate this Agreement in the event the other Party materially breaches any of its other obligations under any provision of this Agreement, including its Schedules, which breach is not cured within thirty (30) days after written notice thereof by the other Party.

(c)     <u>Effect of Termination</u>. Termination of this Agreement shall not limit either Party from pursuing other remedies available to it, including injunctive relief, nor shall such termination relieve either Party of its obligation to pay all fees that have accrued or are otherwise owed by such Party under this Agreement, or refund such fees if not earned.



(d)     Termination for Performance.  NMHC reserves the right to terminate ASM for performance if any of the following occurs:

> i. The race fails to generate the budgeted revenues *and* runs a deficit in any given year following the running of the second annual race event.

> ii. ASM breaches this Agreement by not providing the services it has agreed to perform in this Agreement, which may include expending more than the budgeted amount of expenditures without prior approval of NMHC.

Termination under (i) shall take place within 60 days after the completion of a race, or within 30 days of ASM providing an accounting of revenues and expenses of the race.

**4.     Fees**

(a)     Fees.  In consideration of ASM's provision of management, operations and promotions services set forth in the SOW for the 2015-2017 Races, attached as Schedule A, and as outlined on the Event Budget, NMHC shall pay to ASM an annual management fee of Four Hundred Fifty Thousand ($450,000) dollars.   This management fee is in addition to the ASM event and service costs outlined below and incorporated into the Event Budget at Eight Hundred Seventy Two Thousand Fifty ($872,050.00) dollars annually.  NMHC agrees to pay ASM the combined total for its management fee and event and service costs of ($1,322,050) annually, in installments as outlined pursuant to the schedule shown below.

The Parties agree to modify the payment dates for payment of the annual management fee and ASM event and service costs set forth below in the Fee Schedules if the Event is scheduled on a date sooner than June.  If the Event is scheduled by NMHC and INDYCAR for a date earlier than June, then the Parties agree to accelerate the payment schedule below in a manner whereby all payments will be made in full by the month of the scheduled Event date and pursuant to mutual agreement of the Parties:

4



**Fee Schedule for 2015 Event**

| Due on or before: | Event & Service Cost | Management Fee | Total Due |
|---|---|---|---|
| 15-Aug-14 | $43,603 | $34,615 | $78,218 |
| 15-Sep-14 | $43,603 | $34,615 | $78,218 |
| 15-Oct-14 | $43,603 | $34,615 | $78,218 |
| 15-Nov-14 | $43,603 | $34,615 | $78,218 |
| 15-Dec-14 | $43,603 | $34,615 | $78,218 |
| 15-Jan-15 | $43,603 | $34,615 | $78,218 |
| 15-Feb-15 | $43,603 | $34,615 | $78,218 |
| 15-Mar-15 | $43,603 | $34,615 | $78,218 |
| 15-Apr-15 | $43,603 | $34,615 | $78,218 |
| 15-May-15 | $218,010 | $34,615 | $252,625 |
| 15-Jun-15 | $218,010 | $34,615 | $252,625 |
| 15-Jul-15 | $43,603 | $69,235 | $112,838 |
| | $872,050 | $450,000 | $1,322,050 |

**Fee Schedule for 2016 Event**

| Due on or before: | Event & Service Cost | Management Fee | Total Due |
|---|---|---|---|
| 1-Jul-15 | $43,603 | $34,615 | $78,218 |
| 1-Aug-15 | $43,603 | $34,615 | $78,218 |
| 1-Sep-15 | $43,603 | $34,615 | $78,218 |
| 1-Oct-15 | $43,603 | $34,615 | $78,218 |
| 1-Nov-15 | $43,603 | $34,615 | $78,218 |
| 1-Dec-15 | $43,603 | $34,615 | $78,218 |
| 1-Jan-16 | $43,603 | $34,615 | $78,218 |
| 1-Feb-16 | $43,603 | $34,615 | $78,218 |
| 1-Mar-16 | $43,603 | $34,615 | $78,218 |
| 1-Apr-16 | $43,603 | $34,615 | $78,218 |
| 1-May-16 | $218,010 | $34,615 | $252,625 |
| 1-Jun-16 | $218,010 | $34,615 | $252,625 |
| 1-Jul-16 | | $34,620 | $34,620 |
| | $872,050 | $450,000 | $1,322,050 |

5



**Fee Schedule for 2017 Event**

| Due on or before: | Event & Service Cost | Management Fee | Total Due |
|---|---|---|---|
| 1-Jul-16 | $43,603 | $34,615 | $78,218 |
| 1-Aug-16 | $43,603 | $34,615 | $78,218 |
| 1-Sep-16 | $43,603 | $34,615 | $78,218 |
| 1-Oct-16 | $43,603 | $34,615 | $78,218 |
| 1-Nov-16 | $43,603 | $34,615 | $78,218 |
| 1-Dec-16 | $43,603 | $34,615 | $78,218 |
| 1-Jan-17 | $43,603 | $34,615 | $78,218 |
| 1-Feb-17 | $43,603 | $34,615 | $78,218 |
| 1-Mar-17 | $43,603 | $34,615 | $78,218 |
| 1-Apr-17 | $43,603 | $34,615 | $78,218 |
| 1-May-17 | $218,010 | $34,615 | $252,625 |
| 1-Jun-17 | $218,010 | $34,615 | $252,625 |
| 1-Jul-17 | | $34,620 | $34,620 |
| | $872,050 | $450,000 | $1,322,050 |

(b)   Review of Records. ASM and its Affiliates will maintain accurate and complete books and records associated with the Services performed for, or on-behalf of, NMHC, including, without limitation, work specifications for race track and facility construction, hospitality customer lists, ticketing databases (if available from the contracted ticketing company), sponsor contact information as well as invoices and receipts due and payable by NMHC to third-parties for the Race. Such records will be maintained for a period of three (3) years following the termination of this Agreement. During the Term and no later than on the fifteenth (15th) day of each July that this Agreement is in effect, ASM and will provide NMHC with a detailed review of its Services provided under the SOW and an after action report (a full debriefing of the operations) for Race (or any subsequent running of the INDYCAR New Orleans Event during an additional Term) having been completed earlier that year.

5.   **Insurance.**

(a)   ASM will advise NMHC on various insurance providers that can assist NMHC in obtaining (with payment to be made by NMHC) general commercial liability insurance, as needed, covering any damage to property or personal injuries to, or death of, spectators, guests or any other person, arising from or incurred in connection with the running of any INDYCAR New Orleans Event and all other activities covered by this Agreement, in the greater of the following amounts: (i) the amount required by the sanctioning bodies participating in and contracting with NMHC for each Event.; or (ii) (A) twenty-five million dollars (U.S. $25,000,000.00) for each occurrence involving one or more person, including coverage for participants'



legal liability, TRIA (Terrorism Risk Insurance Act), spectator coverage, and liquor liability protection, and fire legal liability protection in the amount of not less than $50,000 per occurrence and medical payments coverage of not less than $10,000 per person, (C) five hundred thousand dollars (U.S. $500,000.00) per occurrence for property damage, (D) advertiser's liability and contractual coverage in the amount of one million dollars (U.S. $1,000,000.00) per occurrence, and (E) workers compensation insurance in the amount(s) required under and in accordance with the State of Louisiana statutory requirements and employer's liability insurance with limits of not less than One Million Dollars (U.S. $1,000,000) per accident.  NMHC shall ensure that such insurance policy shall include coverage for the vehicles used to transport the INDYCAR New Orleans Event show car and related equipment, if applicable, and shall be in effect as of the Effective Date of this Agreement and shall remain in effect until the termination of this Agreement.  Such insurance policy(ies) obtained by NMHC shall name ASM as an additional coinsured and contain endorsements identifying the City's elected and appointed officials and employees, authorized volunteers, and INDYCAR New Orleans Event spectators and participants as additional insureds all without cost to ASM, shall be primary and non-contributory with respect to insurance provided and shall provide that the insurer will not cancel or modify such coverage except after at least thirty (30) days written notice to ASM and NMHC. A copy of such policy or a certificate of insurance evidencing such coverage shall be furnished to ASM by NMHC.  Failure to provide the aforesaid certificate or other evidence in the manner and time required or to maintain the insurance coverage specified herein shall be deemed a material breach of this Agreement.  All insurance policies procured pursuant to this Section 4 shall be obtained from nationally-recognized insurance carriers that are qualified and licensed to write insurance in New Orleans and have a current rating of or equivalent to "A-, VIII" by A.M. Best & Company.

(b)     During the Term, ASM will maintain one or more liability insurance policies providing coverage relative to ASM's obligations under this Agreement. Such insurance shall provide coverage of no less than (A) $1,000,000.00 of Commercial General Liability (CGL) insurance which shall include advertiser's liability and contractual liability coverage to cover ASM's obligations under the terms of this Agreement, and (B) auto liability insurance covering ASM's liability to pay claims because of damage to property and for injuries or death of any persons arising out of the ownership, maintenance or use of any motor vehicle, in an amount of not less than $1,000,000.00 combined single limit for each accident.  NMHC shall be named an additional insured's under the said insurance policy or policies.  A certificate of insurance evidencing each such policy in a form satisfactory to ASM shall be furnished to them upon request. Failure to provide the aforesaid certificate or other evidence in the manner and time required or to maintain the insurance coverage specified herein shall be deemed a material breach of this Agreement.

6.     **ASM Personnel**. All personnel supplied or used by ASM shall be deemed employees or subcontractors of ASM and will not be considered employees, agents or subcontractors of NMHC for any purpose whatsoever. ASM assumes full



responsibility for the actions of all such personnel while performing services under this Agreement and for the payment of their compensation (including, if applicable, withholding of income taxes, and the payment and withholding of social security and other payroll taxes), workers' compensation, disability benefits and the like to the extent applicable to the personnel involved. Notwithstanding and without in any way limiting any terms and conditions set forth in this Agreement, all subcontractors of ASM shall be deemed to have made all of the representations and warranties of ASM set forth herein and shall be subject to any obligations of ASM hereunder.

7.     **Indemnifications.**  Each Party agrees to indemnify, protect, defend and hold harmless the other Party, its Affiliates, if any, and their respective shareholders, members, directors, officers, employees and agents from and against any and all claims, costs, liabilities, losses, judgments, expenses, damages, injuries, demands, actions, causes of action, suits and proceedings including reasonable attorneys' fees, court costs and other expenses including, without limitation, those costs incurred at trial and appellate levels and in any bankruptcy, reorganization, insolvency or other similar proceedings (collectively, **"Claims"**), arising from or connected with: (a) any breach by a Party of its obligations under any provision of this Agreement or any material inaccuracy of any representation or warranty made by either of them herein; (b) any negligent act or omission or willful misconduct by a Party, including its employees, servants and agents, related to its obligations and/or performance under this Agreement; (c) copyright or trademark infringement actions asserted by any third parties arising out of publication, use or depiction of the third party's name and/or trademarks as authorized by a Party. A Party shall give the other Party prompt notice of any Claim brought against it coming within the purview of these indemnities. Within five (5) business days after receipt of such notice, the party having the indemnification obligation hereunder (the **"Indemnitor"**) shall undertake the defense of such Claim with counsel reasonably satisfactory to and approved by the Party entitled to indemnification hereunder (the **"Indemnitee"**).  If the Indemnitor fails to undertake and sustain the defense of any Claim in the manner required by this Section 7, the Indemnitee may engage separate counsel, pay, settle or otherwise finally resolve such Claim for the account and at the risk and expense of the Indemnitor.  Any payment, settlement or final resolution otherwise by the Indemnitee shall release the Indemnitor from liability for such Claim (subject to the Indemnitor's reimbursement of any such settlement paid made by Indemnitee).  If the Indemnitor undertakes the defense of a Claim in the manner required by this Section 7, the Indemnitee may, at its own expense, engage separate counsel and participate in the defense of any Claim brought against it.

8.     **Trademarks.** ASM grants to NMHC the right to display logos, trademarks, trade names, service marks and copyrights (**"Marks"**) of ASM (the **"ASM Marks"**) solely for the purposes of promoting, marketing and operating (or any related action thereto) the INDYCAR New Orleans Event during the Term and any additional Term, in such manner as approved by ASM, such approval not to be unreasonably withheld or delayed.  NMHC agrees that it is not acquiring any rights, title, or interest in or to ASM's Marks, or ASM's Affiliate's Marks. NMHC covenants and agrees that it will

8



only use ASM's Marks as approved by ASM, in accordance with the terms of this Agreement and that all such use shall be in conformity with ASM's graphic standards for ASM's Marks. All forms of advertising and promotions using ASM's Marks are subject to the prior approval of ASM, which shall not be unreasonably withheld or delayed. NMHC acknowledges that the right to use ASM's Marks is non-exclusive, non-assignable and non-transferable and terminable.

9.      **Representations and Warranties.** Each of the Parties hereby represents and warrants to the other Party that: (a) it is a limited liability company or non-profit corporation to be formed shortly or duly organized and in good standing in its state of organization (and in the case of ASM, that it is qualified to do business in the State of Louisiana), and has adequate power to enter into and perform this Agreement; (b) this Agreement has been duly authorized, executed and delivered on behalf of such Party, and constitutes the legal, valid and binding agreement of such Party, enforceable in accordance with its terms; (c) the individual executing this Agreement has the right, authority and power to enter into this Agreement on behalf of such Party; and (d) such Party has obtained and, through the Term, will maintain the requisite permissions, authorizations and consents to fully perform hereunder.

10.     **Assignment.** Neither this Agreement nor any rights granted hereunder may be sold, leased, assigned, or otherwise transferred, in whole or in part, by either Party, and any such attempted assignment shall be void and of no effect without the advance written consent of the other Party.

11.     **Confidential Information.** Each Party may have access to information that is confidential to the other Party ("**Confidential Information**"). Confidential Information shall include any information that is clearly identified in writing at the time of disclosure as confidential as well as any information that, based on the circumstances under which it was disclosed, a reasonable person would believe to be confidential. Confidential Information shall include, but not be limited to, formulas, methods, know how, processes, designs, new products, developmental work, marketing requirements, marketing plans, customer names, prospective customer names, and the terms and pricing under this Agreement, regardless of whether such information is identified as confidential. Confidential Information includes all information received from third parties that either Party is obligated to treat as confidential and oral information that is identified by either Party as confidential.

A Party's Confidential Information shall not include information that (a) is or becomes a part of the public domain through no act or omission of the receiving Party; (ii) was in the receiving Party's lawful possession prior to its disclosure by the other Party and had not been obtained by the receiving Party either directly or indirectly from the disclosing Party; (iii) is lawfully disclosed to the receiving Party by a third party without restriction on disclosure; or (iv) is independently developed by a Party without use of or reference to a disclosing Party's Confidential Information. In addition, this Section will not be construed to prohibit disclosure of Confidential Information to the extent that such disclosure is required by law or valid order of a

9



court or other governmental authority; *provided, however,* that the disclosing responding Party shall first have given notice to the other Party and a reasonable opportunity to obtain a protective order, or the disclosing Party shall have made a reasonable effort to obtain a protective order requiring that the Confidential Information so disclosed be used only for the purposes for which the order was issued.

Each of the Parties agrees, unless required by law, not to make the other's Confidential Information available in any form to any third party (except to a Party's directors, officers, employees, agents, or representatives, including, without limitation, its attorneys, accountants, consultants and financial advisors) or to use each other's Confidential Information for any purpose other than in the performance of this Agreement. Each Party agrees to take all reasonable steps to ensure that Confidential Information is not disclosed or distributed by its employees or agents in breach of this Agreement. The parties agree to hold each other's Confidential Information in confidence during the Term of this Agreement and for a period of eighteen (18) months thereafter. Each Party acknowledges and agrees that, due to the unique nature of Confidential Information, there can be no adequate remedy at law for breach of this Section and that such breach would cause irreparable harm to the non-breaching Party; therefore, the non-breaching Party shall be entitled to seek immediate injunctive relief, in addition to whatever remedies it might have at law or under this Agreement.

### 12.   Non-Solicitation/NMHC Personnel.

(a)    During the Term (or any additional Term) and for a period of twenty-four (24) months after its termination, neither NMHC nor ASM shall, without the other Party's prior written approval, solicit for employment, directly or indirectly (either as an employee, contractor, independent agent, or representative of another vendor), any of the other Party's employees or independent contractor staff members.

(b)    Any personnel furnished by NMHC in respect to the operation of the INDYCAR New Orleans Event, notwithstanding any of the provisions herein, continue to be NMHC's employees and shall not for any purpose be considered ASM's employees. NMHC shall be solely responsible for the payment of the salaries and/or fee of such NMHC personnel and matters relating thereto, including the withholding and/or payment of all federal, state and local income and other payroll taxes, workmen's compensation, disability benefits, and all such additional legal requirements of like nature applicable to such personnel.

### 13.   Governing Law/Jurisdiction. This Agreement is made in the State of Louisiana and shall be governed by the substantive provisions of Louisiana law without regard to its conflicts of laws rules. The Parties agree that any legal action or proceeding with respect to this Agreement shall be brought exclusively in the State Courts or United States District Court located in New Orleans, Louisiana or Jefferson Parish, Louisiana. Each of the Parties irrevocably consents to the personal jurisdiction of such courts, and all courts to which appeals may be taken from such courts, agrees to accept service of process by certified or



registered mail and hereby waives any jurisdictional or venue defenses otherwise available to it. Should any Party commence legal action to interpret or enforce or obtain any remedy for breach of the terms of this Agreement, the prevailing Party in such action shall be entitled to recover reasonable attorney's fees, court costs and other legal expenses, including without limitation, attorney's fees, court costs and other legal expenses incurred at the trial and appellate levels and in any bankruptcy, reorganization, insolvency or other similar proceedings.

Any claim arising out of or relating to a dispute, interpretation or enforcement of any provision in this Agreement, or any breach thereof, except for any disputes relating to the confidential information or the marks or the enforcement of any of the covenants in this Agreement, shall be decided via private arbitration and by a single arbitrator (not administered by the American Arbitration Association) in New Orleans, Louisiana, but in accordance with the commercial rules of the American Arbitration Association then in effect and judgment upon the award may be entered in any court having jurisdiction thereof and shall be final, binding, and unappealable. The arbitrator is explicitly authorized to award attorneys' fees as part of the award. Nothing contained herein shall, however, be construed to limit or to preclude either Party from bringing any action in any court of competent jurisdiction for injunctive or other provisional relief to comply with its obligations and covenants hereunder or to protect its marks, copyrights, trade secrets, or confidential information. This arbitration provision shall be deemed to be self-executing and in the event that either Party fails to appear at any properly noticed arbitration proceeding, an award and corresponding judgment may be entered against either Party in accordance with the terms of this paragraph, notwithstanding a Party's failure to appear.

**14.     Notices.** All notices required or permitted hereunder shall be in writing and shall be either personally delivered, delivered by a national courier service (e.g., Federal Express, U.P.S. if domestic, DHL if international), sent by registered or certified U.S. mail, return receipt requested or sent by facsimile or electronic mail during the addressee's regular business hours and if by facsimile, confirmed by facsimile answerback and in each case addressed as follows:

> If to NMHC, LLC:

>> Nola Motorsports Host Committee
>> 11075 Nicolle Boulevard
>> Avondale, LA 70094
>> Attn:

>> With a copy to (such copy not constituting notice):
>> TBD

11



<u>If to Andretti Sports Marketing, LLC:</u>

>Andretti Sports Marketing, LLC
>7615 Zionsville Road
>Indianapolis, IN 46268
>Attn:  John J. Lopes, President

<u>With a copy to (such copy not constituting notice):</u>

>Andretti Sports Marketing, LLC
>7615 Zionsville Road
>Indianapolis, IN 46268
>Attn:  Eunice Spells

**15.** **<u>Equitable Rights; Remedies and Remedies Cumulative</u>**.  In addition to all other rights and remedies available under applicable law or as set forth in this Agreement, each Party shall be entitled to injunctive relief restraining the breach or threatened breach of each Party's obligation under Sections 8,11, 12 and other of the various terms of this Agreement or the unauthorized use of the intellectual property of either Party, and to specific performance thereof.  The Parties agree that monetary damages would not be adequate compensation for any loss incurred by reason of a breach of Sections 8, 11 or 12 or unauthorized use of intellectual property and agree to waive the defense in any action for injunctive relief or specific performance thereof that a remedy at law would be adequate.  Neither of the Parties shall be required to furnish a bond in order to obtain equitable relief and if a bond cannot be waived, security thereon shall not be required.  The rights and remedies set forth herein are intended to be cumulative, and the exercise of any right or remedy by either Party shall not preclude or waive its exercise of any other rights or remedies hereunder or pursuant to law or equity.

**16.** **<u>Severability</u>**. In the event any provision of this Agreement is held to be invalid or unenforceable, the remaining provisions of this Agreement will remain in full force.

**17.** **<u>Waivers/Amendments</u>**.  No alteration, change, modification or waiver of or to this Agreement shall be valid or binding unless in writing and signed by both Parties hereto. No additional Schedules (excepting the original SOW set forth in <u>Schedule A</u>) to the Agreement shall be valid or binding unless in writing and signed by both Parties hereto. No evidence of any alteration, change, modification or waiver of or to this Agreement orally or by a unilateral inconsistent course of conduct or by any other means except in compliance with the preceding sentence shall be admissible in any court, arbitration or mediation proceeding concerning the enforcement or construction of this Agreement.  The failure of either Party to object to or to take affirmative action with respect to any conduct of the other Party which is in violation of the terms hereof shall not be construed as a waiver thereof, nor of any subsequent breach or wrongful conduct.



**18.**     **Force Majeure.** Each Party will be excused from performance for any period during which, and to the extent that, it or its subcontractor(s) is prevented from performing any obligation or service, in whole or in part, as a result of causes beyond its reasonable control, and without its fault or negligence including without limitation, acts of God, strikes, lockouts, riots, acts of war, epidemics, communication line failures, and power failures, etc. ("**Force Majeure**"). During the Term or any additional Term, if there is an unexpected cancellation and with out postponement and rescheduling of the INDYCAR New Orleans Event due to an event of Force Majeure, ASM may retain Fees it has received from INDYCAR and will negotiate any fee issues directly with INDYCAR.

**19.**     **Relationship between the Parties.** The Parties are independent contractors; nothing in this Agreement shall be construed to create a partnership, joint venture or agency relationship between the parties.

**20.**     **Public Announcement.** Neither Party will, without the express written consent of the other Party (such consent not to be unreasonable withheld or delayed), publish any press release or make any public announcement relating to this Agreement and/or the business relationship created herein, except as may be required by law, regulation or governmental authority. Once INDYCAR publishes its 2015 race schedule, the Parties agree to mutually work together to issue a press release to publically announce this Agreement and the INDYCAR New Orleans Event.

**21.**     **No Construction against Drafting Party.** Each Party to this Agreement expressly recognizes that this Agreement results from a negotiation process in which each Party participated and contributed to the drafting of this Agreement. Accordingly, no legal or other presumptions in favor of, or adverse to, either Party concerning the construction or interpretation of this Agreement shall apply and each Party expressly waives the right to assert such a presumption in any proceedings or disputes connected with, arising out of, or involving this Agreement.    The language, terms, conditions, and provisions of this Agreement are the result of negotiations between the parties and this Agreement will not be construed in favor of or against any Party by reason of the extent to which any Party or its professional advisors participated in the preparation of this Agreement or based on a Party's undertaking of an obligation under this Agreement.

**22.**     **Entire Agreement.** This Agreement, together with the attached schedules, which are incorporated by reference, constitutes the complete agreement between the parties and supersedes all prior or contemporaneous agreements or representations, written or oral, concerning the subject matter of this Agreement and such Schedules. This Agreement may not be modified or amended except in writing signed by a duly authorized representative of each Party; No other act, document, usage or custom shall be deemed to amend or modify this Agreement.

**23.**     **Survival.** Each Party hereto agrees that the obligations and duties and any other provision herein which must similarly survive in order to affect the purpose and/or intent of this Agreement, are continuing obligations and duties and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation.

13



24.     **Counterparts.**  This Agreement may be executed in two (2) counterparts, each of which shall be considered one and the same Agreement.  The Parties agree that for purposes of negotiating and finalizing this Agreement, any signed documentation, including this Agreement and any subsequent amendments, transmitted electronically or by facsimile machine shall be treated in all manners and in all respects as an original document and shall have the same binding legal effect as an original contract.  An electronic, photocopied or facsimile signature of any Party shall be considered for these purposes as an original signature. At the request of either Party, any facsimile, photocopied or electronic executed document shall be re-executed by both Parties in an original form.

25.     **Voiding of Agreement.**   This Agreement shall be considered null and void if (a) IndyCar and NMHC fail to execute a binding sanction agreement or (b) the $4.5 million in funds allocated by the State of Louisiana are not distributed to the NMHC or, (c) the Event is cancelled. It the Event is cancelled, ASM shall be entitled to all sums earned up until the written notification of Event cancellation.

26.     **Funding of NMHC.**       The NMHC warrants that it has $1 million in funds available to it to fund the Event.  All revenues shall flow into an account established to fund the event.  It shall be the responsibility of ASM to manage the cash flow to ensure that the $1 million referenced herein in addition to the revenues generated by the Event are sufficient to timely pay for all costs necessary to fund the Event.  ASM shall be entitled to alter when payments are made for expenditures, within the budgeted amount, to ensure sufficient cash flow to timely make all payments. Nothing in this Race Services Agreement, including but not limited to this Paragraph 26, shall make the debts of the NMHC the debts of ASM. NMHC shall be solely liable for the debts incurred by it and those duly authorized debts incurred on its behalf.

        WHEREOF, the Parties, through their respective duly authorized and acting representatives, have executed this Agreement to be effective in accordance with the terms as set forth herein.

ANDRETTI SPORTS MARKETING LLC

BY: _____

Austin Starke Taylor,
Member and EVP

NOLA MOTORSPORTS HOST COMMITTEE

BY: _____

Kristen Engeron,
President, Nola Motorsports Host Committee

14

CONFIDENTIAL

## SCHEDULE A

### Racing Services Agreement
### Statement of Work
### INDYCAR New Orleans Event

This Statement of Work (the "SOW") is an attachment to, and a necessary component of, the Racing Services Agreement dated as of July 6, 2014 (the "Agreement") by and between NOLA Motor Company, a Louisiana limited liability company ("NMHC") and Andretti Sports Marketing Louisiana, LLC ("ASM") Capitalized terms used in this SOW but not defined herein have the meanings given in the Agreement.

### Scope of Project

NMHC is the owner and promoter of the Race (a/k/a the INDYCAR New Orleans Event). NMHC has contracted with ASM for the development, coordination, management, operation and execution of a private label solution for conducting the Event commencing in 2014 and scheduled for 2015, 2016 and 2017, which are to be sanctioned as part of the Verizon INDYCAR Series. ASM shall perform duties as the manager of the Race. In such capacity, ASM shall develop, coordinate, manage and execute promotional processes including both the operational and commercial disciplines required with respect to the Event. The Parties agree that each is responsible for the provision of their own legal and accounting services in support of the INDYCAR New Orleans Event.

### General

ASM will provide Services sufficient to satisfy NMHC's obligations to promote and put on the 2015 Event and in subsequent years during the Term. ASM shall provide the Services in accordance with this SOW and shall act at NMHC's contractor responsible for coordinating matters related to the Event Budget and for consulting with NMHC with respect to matters of the Event Budget (including a time line setting forth funding needs). ASM shall have no authority to obligate NMHC with respect to any expenditure, other than those set forth in the Event Budget, which may be reviewed and amended by NMHC at any time in consultation with ASM. ASM shall obtain consent from NMHC for any expenditure not listed in the Event Budget or for those expenses in excess of the amount allocated with respect thereto in the Event Budget. NMHC shall be fully and solely responsible for all of the expenses in the Event Budget and all of the expenses associated with the Event, including any and all commercial and operational services expenses associated with the Event as outlined in this Agreement and this Schedule A. ASM shall be responsible for the payment of items in the Event Budget only if noted in this Agreement as being specifically paid by ASM. NMHC acknowledges that the Event Budget is a living document in that it will grow and contract in various categories of expense as the Event project progresses and that the 2015 Event is a first year event with no historical data to reference and, as such, the 2015 Event will serve as a benchmark for the development of future Event budgets.



Without otherwise limiting the scope of the Services provided by ASM, ASM shall provide the following Services in respect to the Race:

**Commercial Management Services**

- ASM will provide oversight and management of all commercial activities of the Race.
- ASM staff will execute the Race both operationally and commercially.
- ASM will provide a General Manager for the Race who will oversee on a full-time basis, and have primary responsibility for, operations of the Race.
- ASM will provide executive staff, as required, to assist in municipal discussions, negotiation and press events related to the Race.
- ASM will manage the sales process, the production of all sales materials and provide staff required for all national sponsorships, local sponsorships, hospitality, vendors and sales.
- ASM will provide, via its third-party law firm or in-house counsel, legal services required for sponsor, vendor, on-site sales (suites, coach parking, etc.) and hospitality contracts.
- ASM will oversee, manage, negotiate and consult with all parties for the INDYCAR sanction agreements through their finalization and implementation.
- ASM will provide and execute the marketing and media plan for the Race. Expenses related to the marketing and media plans' implementation shall be paid by NMHC.
- ASM will provide media strategy consultation and advertising/media purchase planning and execution for the Race as well as retain manage the media buying agency on NMHC's behalf. NMHC shall pay and all media purchase expenses.
- ASM will manage the selection of market/DMA specific advertising strategies in conjunction with media agency. NMHC shall pay for such media agency's fees, if applicable.
- ASM will manage trophy design and production. NMHC will pay for such design and production.
- ASM will manage Race entertainment (celebrity wrangling, air show, clowns, face painters, family programing, concert production, staging, talent acquisition, backline management, ancillary music, street entertainment, any carnival aspects of the Race as applicable). NMHC will pay for such Race entertainment.
- ASM will provide media center management.
- ASM will provide sponsor contract negotiation.
- ASM will provide public relations management, including management of local and national agencies and staffing. NMHC shall pay for any New Orleans or Louisiana specific public relations agencies it retains for its own behalf.
- ASM will provide corporate relations management both locally and nationally.
- ASM will provide credentials and accreditation services.
- ASM will provide client services and sponsor fulfillment.
- ASM will provide creative services, both digital and traditional.
- ASM will manage, design and update the Event website at ASM's expense.



- ASM will select and manage a third party ticket system provider, who will provide online ticket sales and ticket fulfillment.
- ASM will manage the relationship with the ticketing company, seat manifest and customer problem resolution.
- ASM will provide operation of event box office. The expenses of such box office operation shall be paid by NMHC.
- ASM will provide public address services and ASM shall pay for the public address announcer. NMHC shall pay for any public address system infrastructure.
- ASM will provide volunteer acquisition, training and management.
- ASM will provide or arrange for its own insurance as required under this Agreement. NMHC shall pay for its insurance obligations.
- ASM will arrange for, production, design and management of the souvenir program. NMHC shall pay for such production.
- ASM shall secure and pay for a master of ceremonies for the Race.
- ASM will manage local business interruption issues, together with NMHC, if applicable.
- ASM will undertake and manage the sales efforts for the Event, including management of any third party contract sales agents. ASM shall pay the salary or retainer of third party sales agents it retains to fulfill its obligations pursuant to this Agreement. The revenue of all sales for the Event shall be the sole property of NMHC. In the Event that a third party sales agent works on a commission basis, as agreed by NMHC and ASM collectively, then such commission shall be paid by NMHC from the NMHC sponsorship sales revenue. For purposes of clarity, ASM shall not be paid commissions for its sales related services pursuant to this Agreement and ASM makes no guarantees that its sales efforts shall be successful or meet any defined criteria. However, ASM shall exercise its good faith efforts to work with NMHC in achieving its sales goals for the Event. In that regard, it is understood that NMHC shall contribute its good faith effort to the sales process for the Event in terms of networking ASM representatives within the Louisiana corporate community and making its officers and principals available for important sales meetings. Each of the Parties hereto shall work cooperatively to enhance the ability of each other's efforts during the sales and sponsor prospecting process in support of the Event. Such sales efforts shall focus upon but not be limited to the following:

    - To sell title sponsor
    - To sell presenting sponsor
    - To sell support race title sponsor
    - To sell corner sponsors
    - To sell category sponsors
    - To sell infield signage packages

17



- To sell bridge or false-bridge sponsorship, if applicable
- To sell media center sponsorship
- To sell paddock sponsorship
- To sell credential center sponsorship
- To sell beverage sponsorships (alcoholic and non-alcoholic)
- To sell official vehicle sponsorships
- To sell in-kind advertising and promotional partner relationships, and
- To package in-kind relationships that may offset NMHC's cost of operations

- ASM will manage and liaise with retailors on the development, execution and evaluation of local market POS programs, in-store marketing initiatives and co-promotional relationships.
- ASM will manage all on-site and exit sampling programs. ASM is authorized to collect a fee for its sampling services from a sponsor if required by that sponsor to manage exit sampling.
- ASM will manage the program or fan guide (if applicable), media/news insert development, press releases, and race-team information packets.   Costs for the program or fan guide shall be the responsibility of NMHC.
- ASM will organize and coordinate all promotional events such as charity gala, local on-premise bar/nightclub pre-promotions and special events in-support of the Race.   The Parties contemplate that these support and promotional events shall be paid for in large part by third parties such as NMHC's sponsors.
- ASM will adequately store all program elements including product samples, program uniforms, collateral, staging elements and materials at NMHC's facilities.
- ASM will be responsible for recruiting, training and managing all activation staff and supervisors for each event and the duration of the various events in support of the Race.
- ASM will liaise with primary point of contacts with the sales and marketing of the various sponsors of NMHC's sponsors for on-premise, retail and media promotions, if applicable.
- ASM will manage all creative approvals for POS, signage, marketing and media regarding sponsors usage of municipal or tourism marks in the promotion of the Race.
- ASM will ensure meticulous client service and reporting throughout duration of the Event's planning and build-up including planning and activation time frames, weekly status meetings, program tracking documents, client meetings, municipal authority updates as needed including but not limited to (presentations, reports, emails, etc.).
- ASM will provide a comprehensive wrap-up report, compiling activation data, key learning, future recommendations, measured-media reporting and return-on-investment analysis, each within sixty (60) days from the conclusion of the Race annually.



- ASM will manage and provide post-Event economic impact study and return on investment reporting for public officials as needed.
- ASM will conduct on-site consumer survey for NMHC as well as Race sponsors and the City. Such survey is intended to capture data relevant to the successful conduct of future Events and for use in providing a compelling message to community leaders about the attendees of the Race.
- ASM will develop, manage and execute a Race entertainment plan, paid for by NMHC and incorporated into the NMHC approved Event budget, which may or may not include:
  - Coordination of all ceremonies and event production
  - Pre & post-race Ceremony coordination with INDYCAR, Indy Lights and any other support series
  - VIP/participant coordination
  - Grand Marshal, starter & anthem talent research and coordination
  - Sponsor VIP management and coordination
  - Pre and post-race scripting and organization
  - VIP and driver parades (includes oversight of graphics installation if required)
  - PA/video board coordination
  - Sponsor inventory coordination/collection
  - Trafficking and reports
  - Talent management and scheduling
  - Equipment oversight
  - On-site concert production as required
  - Scripting
  - Riders, backline, green room
  - Military coordination/activation—fly by acquisition and paperwork, all ancillary military programming (color guards etc.), if possible
  - Development of fan midway/interactive logistics and programming (driver autograph sessions and fan programming)
  - On-site driver appearance needs and support programming

- ASM will manage media strategy, including:
  - Local and national media outreach,
  - Social media plan
  - Social media influencers
  - Conduct press announcement
  - Coordinate for race car drivers to travel into the market to promote the Race (so long as the travel expenses of each is pre-approved and paid for by NMHC)
  - Coordinate INDYCAR executive presence at announcements when possible
  - Coordinate with local CVB and Tourism authorities, together with NMHC
  - Rally local business presence and support, together with NMHC
  - Developing and execute ticket launch strategy, in conjunction with NMHC



- o  Develop and launch website and ticketing online requirements, in conjunction NMHC
- o  Provide a day to day contact for Event sponsors, business partners and municipal authorities
- o  Develop local charity of choice in conjunction with NMHC pursuant to NMHC's direction
- o  Planning and execution of all PR programming
- o  Media relations and management
- o  Manage local PR agency, if necessary and required by NMHC
- o  Ongoing and frequent contact with sanctioning organizations
- o  Provide staff members to ensure activation and integration of stakeholder benefits
- o  PR stunt planning and production, if applicable
- o  Crisis planning, activation and management
- o  Coordination of media days and tours, if applicable
- o  Conduct teleconferences, interview opportunities and integration of the Event into community
- o  Manage cause marketing initiatives
- o  Oversee all media accreditation programs and access planning
- o  Ensure services are in alignment with social media messaging, and
- o  Provide guidance in the production collateral and messaging content for the press

- Manage contract labor
- Responsible for special promotions or activities that occur off-site (e.g., bar promotions, street parties, etc.)

**<u>Operations Management Services Provided</u>**

- ASM will provide oversight and management of all operational activities in support of the Race.
- ASM will manage all equipment hire including but not limited to scaffolding, stages, video boards, generators, radios, cable TV, sound, PA, cart rentals, grandstands, and suites.  The expense of such equipment hire shall be paid by NMHC.
- ASM will provide track operations and track build consultation and management as needed (spectator fencing, safety system install, barrier fence rental, traffic control systems, bridge rental and installation and rail modifications, trucking and transportation, fence maintenance, stand-by crews, install and remove of signage, scrim, barriers, tire barriers, false bridges, paving, oil dry, curbing, painting of logos).  The expense of track systems referenced above shall be paid for by NMHC.
- Management of portable buildings (timing and scoring, race control, spectator medical trailer), if portable buildings are applicable.



- Management of signage vendor and Race specific signage needs (suites, grandstand seating, way-finding, entries, local promotional, City, State, directional, miscellaneous).
- Provision of an operations team for the Race including a Director of Operations .
- ASM will manage and oversee the FIA relationship for track inspection and sanction.
- ASM will acquire block, fence, and bridges as needed for the Race and at NMHC's expense pursuant to the Event budget.
- ASM will provide logistics manager and staff.
- ASM will provide emergency vehicle dispatch.
- ASM will provide emergency operations plan and coordination.
- ASM will provide race control staffing.
- ASM will provide Race control operations and staffing.
- ASM will provide pit lane and fuel management.
- ASM will provide circuit and paddock engineering.
- ASM will provide coordination with all City services.
- ASM will provide coordination with EMS, police, fire, and FEMA.
- ASM will provide coordination with FAA, Homeland Security and U.S. military assets as needed.
- ASM will manage midway, merchandise space and vendors.
- ASM will manage motorhome parking for team and driver hospitality.
- ASM will manage re-bills to teams and vendors for electric, scaffolding, portable toilet, golf cart and other rentals.
- ASM will manage circuit configuration and planning, integrating local business needs.
- ASM will manage circuit build start to finish to storage full service.
- ASM will manage overall site planning and build of Event specific assets.
- ASM will manage grandstand quantities, locations and construction.
- ASM will manage suite locations and construction.
- ASM will manage bridge locations, dimensions and construction (if applicable).
- ASM will manage safety planning.
- ASM will collaborate with City, State and Parish services.
- ASM will manage podium placement ceremony specific assets.
- ASM will recommend big screen quantities and locations and arrangements.
- ASM will provide drawings - CAD & PDF including FIA certification requirements.
- ASM will manage fire suppression system - pit lane.
- ASM will manage vendor locations.
- ASM will manage concert area location design and implementation.
- ASM will coordinate and organize flag marshals.
- ASM will manage spectator access and flow.
- ASM will manage sanctioning body communication.

21



- ASM will build on-track schedule incorporating support series in coordination with sanctioning bodies.
- ASM will manage security planning with municipal authorities.
- ASM will operate Race control.
- ASM will construct emergency plan.
- ASM will organize paddock areas.
- ASM will manage all support services, via various entities and vendors contracted by NMHC, as necessary, including:
  - Security
  - Electrical
  - Cleaning and janitorial
  - Standby crew services
  - Police
  - EMS
  - FEMA
  - Fire
  - Spectator medical
  - Course medical
  - Pit lane fire system management
  - Fuel
  - Welding
  - Towing
  - Distribution of television cables
  - Distribution of electric and generator needs
  - Shuttle bus management
  - Red carpet management
  - Course workers and SCCA coordination
  - Photography credentials, placement
  - Portable toilets
  - Trash
  - Black waste removal
  - Landscaping
  - Parking
  - Storage
  - Facility coordination and programing if applicable to the site, or in the alternative all public and private facilities provided
  - Exhibition space management, if applicable

**Personnel Provided by ASM**
    **Executive Management**
  - Executive staff support
  - Administrative staff support
  - Legal staff support (NMHC provides its own legal services)
  - Accounting staff support (NMHC provides its own Event accounting)
  - General Manager (overall conduct of Event operations)

**Operations Staffing**
- Operations Director
- Operations Manager
- Operations Assistant
- Parking/Traffic Manager
- Track Operations Manager (if applicable)
- Track Dispatcher (if applicable)
- Emergency Operations Coordinator
- Engineering firm (expense paid by NMHC)
- Signage Coordinator
- Car Corral Manager

**Commercial Staffing**
- Marketing & Advertising Director
- Marketing Coordinator
- Advertising Agency Support to develop media plan and to coordinate media purchase, as part of NMHC media purchase expense
- Client Services Manager
- Client Services -1
- Client Services -2
- Creative Designer
- Public Relations and Corporate Communications Director
- Public Relations Agency (local agency paid for by NMHC if required)
- Media Center Manager
- Photographer & Videographer
- Ticketing and Credential Manager
- Box Office Manager
- Sales Director (for both National and Local Sales)
- Sales Persons (Local, may be commissioned 3rd party sales)
- Ceremonies Manager
- P.A. Announcer
- Volunteer Supervisor
- Consumer Survey and ROI Team Members
- Website Developer



**First Amendment to the**
**Racing Services Agreement**
**by and between**
**Nola Motorsports Host Committee, Inc.**
**And**
**Andretti Sports Marketing Louisiana, LLC.**

**Whereas,** Nola Motorsports Host Committee, Inc. and Andretti Sports Marketing Louisiana, LLC entered into a contract titled Racing Services Agreement with an effective date of July 6, 2014;

**Whereas,** the parties wish to amend said agreement in consideration of a race date being negotiated with Indycar, LLC; and

**Whereas,** the parties seek to correct a typographical error on the signature page of said Agreement by making clear that Andretti Sports Marketing Louisiana, LLC is the party to the Agreement, and not Andretti Sports Marketing, LLC;

Now therefore, the parties agree to the following:

1. The original agreement shall remain in full force and effect except as modified herein.
2. The parties agree that a typographical error shall be corrected to make clear that Andretti Sports Marketing Louisiana, LLC and not Andretti Sports Marketing, LLC is the party to said Agreement.
3. The Fee Schedule in Section 4 shall be deleted in its entirety and replaced with the following Fee Schedule:

**Fee Schedule for 2015 Event**

| Due On or Before | Race Services Fee | Management Fee | Total |
|---|---|---|---|
| 8/15/14 | $96,895 | | $96,895 |
| 9/15/14 | $96,895 | | $96,895 |
| 10/15/14 | $96,895 | | $96,895 |
| 11/15/14 | $96,895 | | $96,895 |
| 12/15/14 | $96,895 | | $96,895 |
| 1/15/15 | $96,895 | | $96,895 |
| 2/15/15 | $96,895 | | $96,895 |
| 3/15/15 | $96,895 | $50,000 | $146,895 |
| 4/1/15 | $96,895 | $200,000 | $296,895 |
| 5/15/15 | | $200,000 | $200,000 |

| Year 1 Total | $872,055 | $450,000 | $1,322,055 |

**Fee Schedule for 2016 Event**

| Due On or Before | Race Services Fee | Management Fee | Total |
| --- | --- | --- | --- |
| 6/15/15 | $43,603.00 | $34,615.00 | $78,218.00 |
| 7/15/15 | $43,603.00 | $34,615.00 | $78,218.00 |
| 8/15/15 | $43,603.00 | $34,615.00 | $78,218.00 |
| 9/15/15 | $43,603.00 | $34,615.00 | $78,218.00 |
| 10/15/15 | $43,603.00 | $34,615.00 | $78,218.00 |
| 11/15/15 | $43,603.00 | $34,615.00 | $78,218.00 |
| 12/15/15 | $43,603.00 | $34,615.00 | $78,218.00 |
| 1/15/16 | $43,603.00 | $34,615.00 | $78,218.00 |
| 2/15/16 | $43,603.00 | $34,615.00 | $78,218.00 |
| 3/1/16 | $218,010.00 | $34,615.00 | $252,625.00 |
| 4/1/16 | $218,010.00 | $34,615.00 | $252,625.00 |
| 5/15/16 | $43,603.00 | $69,235.00 | $112,838.00 |
| **Year 2 Total** | $872,050.00 | $450,000.00 | $1,322,050.00 |

**Fee Schedule for 2017 Event**

| Due On or Before | Race Services Fee | Management Fee | Total |
| --- | --- | --- | --- |
| 6/15/16 | $43,603.00 | $34,615.00 | $78,218.00 |
| 7/15/16 | $43,603.00 | $34,615.00 | $78,218.00 |
| 8/15/16 | $43,603.00 | $34,615.00 | $78,218.00 |
| 9/15/16 | $43,603.00 | $34,615.00 | $78,218.00 |
| 10/15/16 | $43,603.00 | $34,615.00 | $78,218.00 |
| 11/15/16 | $43,603.00 | $34,615.00 | $78,218.00 |
| 12/15/16 | $43,603.00 | $34,615.00 | $78,218.00 |
| 1/15/17 | $43,603.00 | $34,615.00 | $78,218.00 |
| 2/15/17 | $43,603.00 | $34,615.00 | $78,218.00 |
| 3/15/17 | $218,010.00 | $34,615.00 | $252,625.00 |
| 4/1/17 | $261,613.00 | $69,230.00 | $330,843.00 |
| 5/1/17 | | $34,620.00 | $34,620.00 |
| **Year 3 Total** | $872,050.00 | $450,000.00 | $1,322,050.00 |

WHEREOF, the Parties, through their respective duly authorized and acting representatives, have executed this First Amendment to the Racing Services Agreement to be effective on this 27th day of August, 2014 accordance with the terms as set forth herein.

**ANDRETTI SPORTS MARKETING LOUISIANA LLC**

BY: _____

Austin Starke Taylor, Partner

NOLA Motorsports Host Committee, Inc.

BY: _____

Kristen Engeron, President
Nola Motorsports Host Committee