## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **NUSSLI US, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2167**<br>**c/w NO. 15-2372** |
| **NOLA MOTORSPORTS HOST COMMITTEE,**<br>**INC., et al.** | **SECTION "G"(3)** |

## <u>ORDER</u>

In this litigation, Plaintiff NUSSLI US, LLC ("NUSSLI") alleges that it is owed money under a contract it entered into with NOLA Motorsports Host Committee, Inc. ("NMHC"), NOLA Motor Club, LLC ("NOLA Motor"), and Motor Realty, L.L.C. ("Motor Realty").[1] NUSSLI also alleges that Defendants NOLA Motor, Motor Realty, Laney C Racing, L.L.C. ("Laney C Racing"), Laney C, L.L.C. ("Laney C"), and Laney Chouest ("Chouest") are liable to it under Louisiana's single business enterprise, alter-ego, unjust enrichment, conversion, and fraud doctrines.[2] Pending before the Court is NMHC's "Motion to Dismiss Under Rule 12(b)(6) For Failure to State a Claim."[3] Having considered the motion, the memorandum in support, the memorandum in opposition, the record, and the applicable law, the Court will grant the motion.

## I. Background

### A. *Factual Background*

In its first amended complaint, NUSSLI alleges that it entered into a Lease Agreement on

---

[1] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at p. 1.

[2] *Id.* at pp. 1–2.

[3] Rec. Doc. 67.

or about November 4, 2014 with NMHC, NOLA Motor, and Motor Realty.[4] NUSSLI alleges that, pursuant to the Lease Agreement, the Lessee Parties agreed to lease grandstands from NUSSLI and NUSSLI agreed to supply, install, and thereafter remove the grandstands that were to be used in connection with the 2015 Indy Grand Prix of Louisiana.[5] NUSSLI alleges that the Lessee Parties initially agreed to pay NUSSLI $871,763.97, but later requested that NUSSLI make additions and deductions to its services, bringing the total contract price for 2015 to $652,008.54.[6] NUSSLI also alleges that, pursuant to the Lease Agreement, the Lessee Parties also agreed to pay NUSSLI $884,840.43 for an Event to take place in 2016 and $898,113.04 for an Event to take place in 2017.[7] NUSSLI alleges that, to date, it has only received $293,404.04 for the 2015 Event, which, it asserts, is less than the $374,000 in funds that were designated by the State of Louisiana for the "Grandstand Build."[8]

NUSSLI further alleges that the Chouest Defendants committed fraud by misrepresenting to Andretti and, by extension, NUSSLI, that the State of Louisiana's $4.5 million appropriation, along with Laney Chouest's investment, would cover expenses incurred by the Racing Event, including NUSSLI's fees.[9]

---

[4] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at p. 24.

[5] *Id.*

[6] *Id.* at p. 25.

[7] *Id.*

[8] *Id.*

[9] *Id.* at p. 26.

2

### B.      Procedural Background

NUSSLI filed a complaint on June 29, 2015.[10] On December 22, 2015, NMHC filed the instant motion.[11] On January 8, 2016, NUSSLI filed an amended complaint, alleging claims of breach of contract, unfair and deceptive trade practices pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), Louisiana Revised Statute § 51:1401 *et seq.*, fraud, conversion, unjust enrichment, failure to pay an open account, and claims pursuant to the Louisiana Private Works Act ("PWA"), Louisiana Revised Statute § 9:4801 *et seq.*[12] On January 12, 2016, NUSSLI filed an opposition to NMHC's motion to dismiss.[13]

On January 27, 2016, this case was consolidated with *Andretti Sports Marketing Louisiana v. NOLA Motorsports Host Committee* for discovery purposes only.[14]

## II. Parties' Arguments

### A.      NMHC's Arguments in Support of Dismissal

NMHC moves to dismiss NUSSLI's fraud, LUTPA, unjust enrichment, conversion, and PWA claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[15]

#### 1.      Fraud

NMHC first asserts that NUSSLI has failed to plead sufficient facts to support a fraud

---

[10] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 1.

[11] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 42.

[12] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47.

[13] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 51.

[14] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 57.

[15] Rec. Doc. 67 at p. 1.

claim.[16] NMHC contends that in order to state a claim for fraud, NUSSLI must plead facts showing "a material misrepresentation or omission of past or existing fact, made with the intent to defraud, on which the Plaintiff justifiably relied, and which proximately caused the Plaintiffs' damages."[17] NMHC contends that NUSSLI has failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."[18] NMHC asserts that NUSSLI fails to allege the time, place, and identity of the speaker of the alleged misrepresentations and fails to allege that any of the misrepresentations were made to NUSSLI or its agents.[19] NMHC avers that Andretti communicated with NUSSLI on behalf of NMHC.[20]

NMHC asserts that although NUSSLI alleges that NMHC misrepresented that it was adequately capitalized, NMHC and Andretti specified the necessary capitalization of NMHC in the Racing Services Agreement, a contract between Andretti and NMHC in which Andretti agreed to manage the Event, as $1 million.[21] NMHC contends that it provided $1 million and that neither NUSSLI nor Andretti disputes this fact.[22] Next, NMHC contends that NUSSLI alleges that although an unnamed person represented that Chouest himself stood behind the venture, a "secret oral

---

[16] *Id.* at p. 5.

[17] *Id.* (citing La. Civ. Code art. 1953).

[18] *Id.* at p. 6 (citing *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

contract cannot abrogate the clear and unambiguous terms of the Grandstands contract, which clearly set forth terms of payment."[23] Furthermore, NMHC asserts that any reliance that NUSSLI may claim in connection with an alleged misrepresentation to Andretti is undermined by Andretti's own event budget, which does not list an investment from Chouest.[24] In addition, NMHC argues that the fact that the President of Andretti, John Lopes, is an attorney adds further doubt that there was any such personal guarantee.[25]

Furthermore, NMHC asserts that although NUSSLI alleges that an unknown person at an unknown time failed to inform Andretti that NMHC would operate as an instrumentality of Chouest, this allegation makes little sense in light of NUSSLI's allegation that it relied upon a representation that Chouest personally stood behind the venture.[26] Finally, NMHC contends that the allegation is so non-specific as to preclude any reasonable investigation into the claim and fails to meet the heightened pleading requirement of Rule 9(b).[27] As such, NMHC asserts that NUSSLI's fraud claim against NMHC should be dismissed.[28]

### 2. Unjust Enrichment

Next, NMHC moves to dismiss NUSSLI's unjust enrichment claim on the grounds that NUSSLI has another adequate remedy at law and any alleged enrichment was justified by contract.[29]

---

[23] *Id.* at p. 7.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.* at p. 8.

NMHC contends that, under Louisiana law, in order to state a claim for unjust enrichment, NUSSLI must allege: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) the absence of 'justification' or 'cause' for the enrichment and impoverishment, and (5) that no other remedy at law is available to plaintiff."[30] NMHC asserts that Louisiana courts will allow unjust enrichment claims arising out of contractual relationships to survive motions to dismiss only where it has been determined that no contractual remedies exist.[31] NMHC asserts that NUSSLI entered into a contract with either Andretti or NMHC and NUSSLI is pursuing recovery in this case under breach of contract and therefore has another remedy at law.[32]

In addition, NMHC contends that no enrichment of NMHC without cause exists.[33] NMHC asserts that Louisiana courts will only find "enrichment" where an entity's "assets increase, without adequate compensation, or his liabilities diminish" and here, there is no cognizable "asset increase" to NMHC that is attributable to NUSSLI's services.[34] NMHC asserts that its assets and liabilities were nearly totally dictated by the Event budget created and maintained by Andretti.[35] Furthermore, NMHC contends that the only cognizable "diminished liabilities" of NMHC would be that funds in the Event budget were used to pay liabilities other than those allegedly due to NUSSLI under the

---

[30] *Id.* (citing *Baker v. Maclay Props. Co.*, No. 94-CA-1529 (La. 1/17/95); 648 So. 2d 888, 897).

[31] *Id.* at pp. 8–9 (citing *"We the People" Paralegal Servs., L.L.C. v. Watley*, No. 33,480-CW (La. App. 2 Cir. 8/25/00); 766 So. 2d 744, 749).

[32] *Id.* at p. 9.

[33] *Id.*

[34] *Id.* (citing *Gulfstream Servs., Inc. v. Hot Energy Servs., Inc.,* No. 2004-1223 (La. App. 1 Cir. 3/24/05); 907 So. 2d 96, 101).

[35] *Id.*

grandstand contract.[36] NMHC asserts that any alleged enrichment of NMHC arises solely out of the grandstands contract and, where the justification or cause for the enrichment is the contractual agreement between the parties, Louisiana courts will not find unjust enrichment.[37] NMHC avers that payments made to creditors other than NUSSLI were made by NMHC pursuant to the Agreement and under individual contracts with other creditors.[38] NMHC asserts that because NUSSLI fails to allege that it has no other remedy against NMHC and because any alleged enrichment is justified by contract, NUSSLI's unjust enrichment claim should be dismissed.[39]

### 3.    LUTPA

NMHC also moves to dismiss NUSSLI's LUTPA claim on the grounds that NUSSLI has failed to allege that NMHC participated in conduct that "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious."[40] NMHC contends that the range of prohibited practices under LUTPA is extremely narrow and LUTPA does not provide an alternate remedy for simple breaches of contract.[41] NMHC asserts that alleged LUTPA violations committed for "economic reasons" are not a violation of the statute and asserts that courts will look for special relationships with power imbalances like that of an employer-employee relationship.[42]

---

[36] *Id.*

[37] *Id.* (citing *Edwards v. Conforto*, 636 So. 2d 901, 907 (La. 1993)).

[38] *Id.* at pp. 9–10.

[39] *Id.* at p. 10.

[40] *Id.* (citing *Moore v. Goodyear Tire & Rubber Co.*, 364 So. 2d 630, 633 (La. App. 2 Cir. 1978)).

[41] *Id.* (citing *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, No. 2009-C-1633  (La. 4/23/10); 35 So. 3d 1053, 1060).

[42] *Id.* at p. 11 (citing *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *Lilawanti Enters., Inc. v. Walden Book Co.*, No. 95-CA-2048 (La. App. 4 Cir. 2/29/96); 670 So. 2d 558, 561).

NMHC asserts that the only allegations in NUSSLI's complaint regarding actions taken by NMHC are: "(1) [NMHC] refused to pay [NUSSLI] additional funds after May 4, 2015, and (2) a blanket conclusion that NMHC's actions (among other actors) constitute 'deception, misrepresentation and/or fraud' in violation of LUTPA."[43] NMHC contends that NUSSLI's LUTPA claim against NMHC is fundamentally a reiteration of its breach of contract claim and as the Louisiana Supreme Court in *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.* held, LUTPA does not provide a remedy for simple breach of contract claims.[44] NUSSLI asserts that the sole allegation of misconduct by NMHC is that NMHC has not paid NUSSLI amounts allegedly due under the grandstands contract.[45]

In addition, NMHC argues that the "special relationship" that the Fifth Circuit found to be relevant in *Turner v. Purina Mills, Inc.* does not exist between NUSSLI and NMHC.[46] NMHC asserts that it cannot be construed to have a level of power over NUSSLI similar to that in an employer-employee relationship.[47]

### 4.    Conversion

NMHC asserts that NUSSLI has failed to state a claim for conversion because the only alleged "chattel" converted by NMHC is NMHC's own money.[48] NMHC argues that NUSSLI's conversion claim is based upon the allegation that NMHC has continued to retain money owed to

---

[43] *Id.*

[44] *Id.*

[45] *Id.* at p. 12.

[46] *Id.*

[47] *Id.*

[48] *Id.*

NUSSLI under the grandstands contract.[49] NMHC contends that a claim for conversion requires that: "(1) possession is acquired in an unauthorized manner; (2) chattel is removed from one place to another without intent to control it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel."[50] NMHC asserts that any money in the possession of NMHC is NMHC's money and NUSSLI does not argue otherwise.[51] Therefore, NMHC asserts that NUSSLI has failed to state a claim for conversion and this claim should be dismissed.[52]

### 5.    Private Works Act

NMHC also moves to dismiss NUSSLI's Louisiana Private Works Act claim on the grounds that this case does not feature a "construction project," it did not arise out of a "work," nor is NMHC a "contractor" as defined by the PWA.[53] NMHC also adopts the Chouest Defendants' arguments in their motion to dismiss NUSSLI's PWA claim.[54] In the Chouest Defendants' motion to dismiss, they assert that because the PWA is in derogation of common rights, the statute must be strictly construed.[55] They contend that this rule of strict construction specifically applies to interpretation

---

[49] *Id.*

[50] *Id.* at pp. 12–13 (citing *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, Nos. 98-C-0343, 98-C-0356 (La. 12/1/98); 721 So. 2d 853, 857).

[51] *Id.* at p. 13.

[52] *Id.*

[53] *Id.*

[54] *Id.* (citing Rec. Doc. 40-1 at pp. 21–25).

[55] Rec. Doc. 65-1 at p. 21 (citing *Shreveport Armature & Elec. Works, Inc. v. Harwell*, 172 So. 463, 467 (La. App. 2 Cir. 1937)).

of key terms such as "owner" and "contractor."[56] Furthermore, they assert that the PWA, like all statutes that create civil penalties or privileges, "shall not be extended by implication or by considerations of equity."[57]

The Chouest Defendants assert in their motion to dismiss that the purpose of the PWA is to provide rights and remedies for "improvements of immovables."[58] NMHC contends that pursuant to Louisiana Revised Statute § 9:4808(A), work is defined as "a single continuous project for the improvement, construction, erection, reconstruction, modification, repair, demolition or other physical change of an immovable or its component parts."[59]  NMHC contends that there is no "work" at issue in this case because the renting of the grandstands was not a continuous project for the improvement of the immovable or its component parts and was not even a part of any such project.[60] The Chouest Defendants aver that the rental of the grandstands was not a physical change to the immovable or its component parts.[61]

The Chouest Defendants also assert that NMHC is not a contractor and NUSSLI is not a subcontractor.[62] They contend that contractor is defined in § 4807(A) as "one who contracts with an owner to perform all or a part of a work" and § 4807(C) defines subcontractor as "one who, by contract made directly with a contractor, or by a contract that is one of a series of contracts

---

[56] *Id.* (citing *Shreveport Armature & Elec. Works, Inc.*, 172 So. at 467–68)).

[57] *Id.* at p. 22 (citing *Fruge v. Muffoletto*, 137 So. 2d 336, 582–83 (La. 1962)).

[58] *Id.* (citing §§ 4801, 4802)).

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.* at p. 23.

emanating from a contractor, is bound to perform all or part of a work contracted for by the contractor."[63] NMHC asserts that it simply had a lease for the facility to use the racetrack, but NMHC was not performing any construction on the land and did not cause any physical change to the land.[64] The Chouest Defendants contend that "[a] lessor of land who contracts for work will not be construed to be a contractor in order for a would-be claimant under the PWA to reach the landowner and to gain a privilege against the land itself."[65]

The Chouest Defendants assert that while the PWA addresses movables in a limited way, that provision is inapplicable to the temporary renting of grandstands for the race event.[66] They contend that § 4801(3) addresses "[s]ellers, for the price of movables sold to the owner that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in the machinery or equipment used at the site of the immovable."[67] The Chouest Defendants assert that NUSSLI was not a seller, only a renter of the grandstands, and the grandstands were not made component part of the lands or consumed.[68] They contend that Section 4801(4) applies to "[l]essors, for the rent of movables used at the site of the immovable and leased to the owner by written contract," but that this section anticipates movables such as equipment used during a construction project.[69] Additionally, the Chouest Defendants contend that for a lessor of movables to gain rights

---

[63] *Id.* at p. 22.

[64] *Id.* at p. 23.

[65] *Id.* (*Shreveport Armature & Elec. Works, Inc.*, 172 So. X at 468-70)).

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.*

11

under the PWA, the lessor must either rent the movable to the owner under § 4801(4) or to a contractor or subcontractor under § 4801(A)(4); however, NUSSLI did not lease the grandstands to the landowner, but rather to NMHC, who was not a contractor or subcontractor.[70]

The Chouest Defendants also assert that NUSSLI's claim under the PWA for movables fails because § 4802(G)(1) requires that for any right to arise under § 4801 or § 4802, the lessor of the movables must deliver a specific notice to the owner and to the contractor not more than 10 days after the movables are first placed at the site of the immovable for use in a work.[71] The Chouest Defendants contend that lack of notice nullifies the claim by the equipment lessor.[72] They aver that NUSSLI provided no such notice within 10 days after the grandstands were first placed at the site and NUSSLI does not allege that it did.[73]

The Chouest Defendants also assert that even where there is a "work," and where the project owner is a mere lessor of the immovable property and not the owner of the immovable property, a claimant under the PWA has rights only against whatever right the lessor has to the immovable.[74] Therefore, they contend, at most, the privilege would apply to NMHC's lease rights, not to the land itself.[75]

---

[70] *Id.* at p. 24.

[71] *Id.*

[72] *Id.* (citing *Hawk Field Servs., LLC v. Mid America Underground, LLC*, No. 47,078-CA (La. App. 2 Cir. 5/16/12); 94 So. 3d 136, 141).

[73] *Id.*

[74] *Id.*

[75] *Id.* (citing *Sinclair v. Justice*, 414 So. 2d 826, 828 (La. App. 4 Cir. 1982)).

**B.**     *NUSSLI's Arguments in Opposition to Dismissal*

    **1.**     **Fraud**

In opposition to NMHC's motion to dismiss, NUSSLI contends that it has pled sufficient facts to give rise to a claim of fraud.[76] NUSSLI contends that Federal Rule of Civil Procedure 9(b) does not require that a plaintiff plead that a misrepresentation occurred at specific time, and courts have accepted a month period as an adequate time frame.[77] NUSSLI also asserts that it has alleged several material misrepresentations of fact that Chouest and his business associates made in relation to Chouest's assurances that he took personal financial responsibility for the Event.[78] Furthermore, NUSSLI avers that, beginning on May 12, 2014, Chouest and his business associates misrepresented the reason why NMHC was established as the party to contract with vendors for the Event.[79] NUSSLI contends that the specific misrepresentations, as well as the particular facts regarding the time, place, and intent behind the misrepresentations, are clearly stated.[80]

NUSSLI contends that NMHC's other arguments "merely raise factual disputes as to NUSSLI's fraud claims which should be reserved for trial."[81] Addressing NMHC's contention that NMHC and Andretti specified the necessary capitalization of NMHC, NUSSLI contends that this is irrelevant to the separate misrepresentations of fact that Chouest and his business associates

---

[76] Rec. Doc. 69 at p. 7.

[77] *Id.* (citing *Juergens v. Urban Title Servs., Inc.*, 533 F. Supp. 2d 64, 77 (D.D.C. 2008)).

[78] *Id.*

[79] *Id.* at pp. 7–8 (citing Rec. Doc. 47 at pp. 9–10).

[80] *Id.* at p. 8.

[81] *Id.*

made.[82] Next, NUSSLI asserts that NMHC mischaracterizes its position by arguing that NUSSLI's allegations suggest a secret oral contract, because the existence of an oral contract is not a prerequisite to any claim pleaded by NUSSLI and because the misrepresentations occurred prior to NUSSLI entering into the Lease Agreement.[83] NUSSLI contends that Andretti, as agent of the Chouest Defendants, repeated the misrepresentations to NUSSLI.[84]

### 2.    Private Works Act

NUSSLI also contends that it has stated the requisite elements of a Private Works Act claim.[85] NUSSLI asserts that under the PWA, persons who perform work on an immovable, including lessors, for the rent of movables, are granted a claim against the owner and the contractor, as well as a privilege against the immovable.[86] NUSSLI asserts that "the owner of immovable property has personal liability under the PWA to those who perform work on the property, even as to those with whom the owner does not have a contractual relationship, unless the owner timely files a notice of contract and had the general contractor timely file a proper bond."[87] NUSSLI contends that as a lessor seeking payment for the rent of a movable (the grandstands) placed on an immovable, NUSSLI "falls squarely within the express terms of the PWA."[88]

NUSSLI also incorporates by reference the arguments made in its opposition to the Chouest

---

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.* (citing La. R.S. § 9:4802(A)(4) and (B)).

[87] *Id.* (citing La. R.S. 9:4802, 4811).

[88] *Id.*

Defendants' motion to dismiss.[89] There, NUSSLI asserts that the PWA is not limited to construction projects and is defined broadly as "a single continuous project for the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts."[90] NUSSLI contends that under the statute, the provision "or other physical change of an immovable or its component parts" encompasses a broad spectrum of activities and there can be little dispute that the various constructions and modifications required with respect to the NOLA Motorsports Park consisted of improvement, modifications, repairs, and other physical changes.[91] According to NUSSLI, the Cooperative Endeavor Agreement describes numerous physical changes to the land that would be required, including track improvements, safety upgrades, and the installation of grandstands.[92] Furthermore, NUSSLI asserts that any argument that the temporary nature of the grandstands removes them from the scope of the PWA is "completely belied" by the text of the PWA which specifically includes movables for rent, which are temporary by their very nature.[93]

NUSSLI also argues that the notice required pursuant to Louisiana Revised Statute § 9:4802(G)(1) was provided.[94] Pointing to its amended complaint, NUSSLI asserts that Defendants received notice before the scheduled date of delivery of the grandstands and during the erection of

---

[89] *Id.* at p. 10.

[90] Rec. Doc. 68 at p. 21.

[91] *Id.* (citing *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at p. 27).

[92] *Id.*

[93] *Id.*

[94] *Id.* at p. 25.

the grandstands.[95] NUSSLI asserts that Motor Realty was designated a Lessee Party pursuant to the Lease Agreement and it received the notice.[96] Furthermore, NUSSLI argues that in *Hawk Field Services, L.L.C. v. Mid America Underground, L.L.C.*, a Louisiana Second Circuit Court of Appeal case, the court held that the failure of delivery of the notice to the owner only defeats the in rem privilege and not the in personam claim.[97] NUSSLI asserts that it properly filed a statement of claim and lien within the time period required by the PWA and any alleged failure regarding the notice requirement under § 4802(G)(1) would be relevant only to the existence of the privilege, and not to the claim against the owner.[98]

### 3.    Unjust Enrichment

NUSSLI contends that it has not alleged a claim of unjust enrichment against NMHC.[99]

### 4.    LUTPA

In opposition to NMHC's motion to dismiss its LUTPA claim, NUSSLI asserts that while it is true that LUTPA does not provide an alternative remedy for simple breaches of contract, NUSSLI's LUTPA claim against NMHC is not a simple breach of contract.[100] NUSSLI asserts that NMHC and each of the Chouest Defendants engaged in unfair or deceptive conduct in making false and misleading statements to Andretti.[101] NUSSLI contends that its factual allegations demonstrate

---

[95] *Id.* (citing Rec. Doc. 47 at p. 33).

[96] *Id.* at p. 26.

[97] *Id.* (citing No. 47,078-CA (La. App. 2 Cir. 45/16/12); 94 So. 3d 136, 141).

[98] *Id.*

[99] Rec. Doc. 69 at p. 10.

[100] *Id.* at p. 11.

[101] *Id.*

that the Chouest Defendants misrepresented the financial backing behind the Event and that NMHC and the Chouest Defendants improperly distributed the $4.5 million appropriated under the Cooperative Endeavor Agreement and failed to distribute the full $374,000 that had been appropriated for the installation of the grandstands under the Cooperative Endeavor Agreement.[102] NUSSLI contends that the "orchestration of this Event as a purported 'nonprofit' enterprise, along with the Chouest Defendants' dishonest representations, constituted an unfair trade practice."[103] NUSSLI contends that the Chouest Defendants' actions, in utilizing NMHC as their instrumentality, were aimed at misleading trade vendors as to the prospects for repayment.[104]

### 5. Conversion

In opposition to NMHC's motion to dismiss its conversion claim, NUSSLI, citing a Louisiana Third Circuit Court of Appeals case, *Broussard, Bolton, Halcomb & Vizzier v. Williams*, asserts that the tort of conversion applies to the wrongful exercise of dominion over money.[105] In *Broussard*, NUSSLI contends that the court held that the plaintiff had stated a claim for conversion where a lawyer withdrew funds from his trust account despite the existence of an agreement that he would do so only upon certain terms.[106]

In opposition to NMHC's argument that NUSSLI's claim for conversion is simply a reiteration of its breach of contract claim, NUSSLI asserts that NMHC consented under the Cooperative Endeavor Agreement, which NMHC entered into with the State of Louisiana for the

---

[102] *Id.* at p. 12.

[103] *Id.*

[104] *Id.*

[105] *Id.* at p. 13 (citing 01-0219 (La. App. 3 Cir. 10/03/91); 796 So. 2d 791, 796).

[106] *Id.*

allocation of a state grant, to devote $374,000 to the grandstand build, but, in spite of that agreement, NMHC diverted those funds to other recipients.[107] NUSSLI asserts that like the lawyer in *Broussard*, NMHC and the Chouest Defendants wrongfully exercised dominion over the funds contrary to the terms of the Cooperative Endeavor Agreement, and instead disbursed the funds for their own benefit.[108] Therefore, NUSSLI contends that it has stated a claim for conversion against NMHC.[109]

## **IV. Law and Analysis**

A.    ***Legal Standard on a Motion to Dismiss***

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[110] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[111] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[112] "Factual allegations must be enough to raise a right to relief above the speculative level."[113] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[114]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and

---

[107] *Id.*

[108] *Id.* at p. 14.

[109] *Id.* at p. 13.

[110] Fed. R. Civ. P. 12(b)(6).

[111] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[112] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[113] *Twombly*, 550 U.S. at 556.

[114] *Id.* at 570.

all facts pleaded are taken as true.[115] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[116] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[117] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[118] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[119] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[120] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[121] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[122]

It is well-established that, in deciding whether to grant a motion to dismiss pursuant to Rule

---

[115] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[116] *Iqbal*, 556 U.S. at 677–78.

[117] *Id.* at 679.

[118] *Id.* at 678.

[119] *Id.*

[120] *Id.*

[121] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[122] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

12(b)(6), a district court may not "go outside the complaint."[123] There is one recognized exception to that rule: a district court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the claim.[124] "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[125] If, however, a district court considers other information outside the complaint, it must treat the motion to dismiss as a motion for summary judgment.[126]

## B.    *Applying Louisiana Law*

When a federal court interprets a state law, it must do so according to the principles of interpretation followed by that state's highest court.[127] In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."[128] These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom."[129] To make a so-called "*Erie* guess" on an issue of Louisiana law, the Court must "employ

---

[123] *Rodriguez v. Rutter*, 310 F. App'x. 623, 626 (5th Cir. 2009); *Carter v. Target Corp.*, 541 F. App'x. 413, 416–17 (5th Cir. 2013).

[124] *Id.; see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[125] *Carter*, 541 F. App'x at 416.

[126] Fed. R. Civ. P. 12(d); *Rodriguez*, 310 F. App'x at 626.

[127] *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010); *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).

[128] *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 547 (5th Cir. 2004).

[129] *Id.* (quoting La. Civ. Code. art. 1 rev. cmt. b).

20

the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.[130] Although federal courts should not disregard the decisions of Louisiana's intermediate courts unless they are "convinced that the Louisiana Supreme Court would decide otherwise," they are not strictly bound by them.[131]

## C.   *Analysis*

### 1.   **Fraud**

NMHC moves to dismiss the fraud claim against it on the grounds that: (1) NUSSLI fails to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b); (2) NUSSLI fails to allege that any supposed misrepresentations were actually made to NUSSLI by NMHC or its agents; and (3) NUSSLI's allegations of fraud "fail before even the most rudimentary scrutiny."[132]

"The elements of a Louisiana delictual fraud or intentional misrepresentation cause of action are: (a) misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury."[133] Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "What constitutes 'particularity' will necessarily differ with the facts of each case . . . ."[134] The Fifth Circuit has held, however, that "[a]t a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the

---

[130] *Id.* (citation omitted).

[131] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

[132] Rec. Doc. 67-1 at pp. 5–7.

[133] *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999).

[134] *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).

person making the misrepresentation and what he obtained thereby."[135] In addition, "[a]lthough scienter may be 'averred generally,'. . . [t]o plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud."[136]

NUSSLI asserts that it relied upon several misrepresentations made by Chouest or his business associates stating that Chouest took personal financial responsibility for the Event and misrepresentations regarding why NMHC was formed.[137] NUSSLI points to four occasions on which Chouest allegedly made statements that he personally stood behind the Event.[138] However, all of these specific allegations regard statements made by Chouest, not by someone acting on behalf of NMHC. NUSSLI does allege in its first amended complaint that "Chouest and Sherman informed [Andretti] that the State grant of $4.5 million to [NMHC], along with other revenues anticipated from the Event as well as Chouest's personal commitment ensuring the Event's financial viability, that adequate funds were available to pay [Andretti]."[139] Sherman is alleged to be an officer of NMHC.[140] However, NUSSLI does not allege when or where these representations were made, nor does NUSSLI allege to whom these representations were made or how they were communicated to

---

[135] *Tel-Phonic Servs., Inc. v. TBS Int'l*, 975 F.2d 1134, 1139 (5th Cir. 1992) (internal quotations and citation omitted).

[136] *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).

[137] Rec. Doc. 69 at pp. 7–8.

[138] *Id.* at p. 7 (citing Rec. Doc. 47 at pp. 15–16). NUSSLI alleges that: (1) Chouest represented to John Lopes ("Lopes"), President of Andretti, on August 24-25, 2015 that he would stand behind the Event financially; (2) Chouest represented to IndyCar officials on May 31, 2014 that he would personally ensure the Event's financial success; (3) Chouest emailed Starke Taylor ("Taylor"), Chief Marketing Officer of Andretti, that he had no doubt of the event's operational success despite the fact that there were no "presenting sponsors"; and (4) Chouest stated in a phone conference with Lopes and Taylor in early April 2015 that he would spend up to $2 million to ensure the Event's success. Rec. Doc. 47 at p. 16.

[139] *Id.* at p. 4 (citing Rec. Doc. 47 at p. 13).

[140] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at p. 12.

NUSSLI such that NUSSLI justifiably relied upon these statements. Therefore, this allegation cannot form the basis for a claim for fraud.

NUSSLI also alleges that it was deceptively led to believe by NMHC and its member, Michael Sherman, that the State of Louisiana required the formation of NMHC, a non-profit, to receive State funds even though there is no such requirement.[141] Although the amended complaint does contain specific allegations of Sherman making such statements, these statements were made prior to the formation of NMHC. Therefore, the statements cannot be attributed to NMHC and this allegation cannot form the basis of a fraud claim against NMHC either. Accordingly, NUSSLI has failed to plead sufficient facts to state a claim against NMHC for fraud and the Court grants NMHC's motion to dismiss NUSSLI's fraud claim against it.

### 2.      Unjust Enrichment

NMHC also moves to dismiss NUSSLI's unjust enrichment claim;[142] however, in response, NUSSLI contends that it has not pled an unjust enrichment claim against NMHC.[143] In NUSSLI's first amended complaint, in discussing its claim for unjust enrichment, NUSSLI only lists NOLA Motor, Motor Realty, Chouest, Laney C. Racing, and Laney C.[144] Therefore, the Court need not address this claim.

### 3.      LUTPA

NMHC also moves to dismiss NUSSLI's LUTPA claim against it on the grounds that the

---

[141] *Id.* at pp. 9–10.

[142] Rec. Doc. 67-1 at p. 8.

[143] Rec. Doc. 69 at p. 10.

[144] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372 Rec. Doc. 47 at p. 35.

only allegations are that it refused to pay NUSSLI any funds after May 4, 2015, and a "blanket conclusion that NMHC's actions (among other actors) constitute 'deception, misrepresentation and/or fraud' in violation of LUTPA."[145] In opposition, NUSSLI contends that "[NMHC] and each of the Chouest Defendants engaged in unfair or deceptive conduct in making false and misleading statements to Andretti, and sending Andretti out to contract on their behalf based upon those misstatements."[146]

LUTPA, Louisiana Revised Statute § 51:1401, declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." LUTPA affords a cause of action to any natural or juridical person "who suffers any ascertainable loss of money or moveable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by [Louisiana Revised Statute] 51:1405."[147] The Louisiana Supreme Court has stated that the goals of LUTPA include "halting unfair business practices and sanctioning the businesses which commit them, preserving and promoting effective and fair competition, and curbing business practices that lead to a monopoly and unfair restraint of trade within a certain industry."[148] What constitutes an unfair trade practice is to be determined by the courts on a case-by-case basis.[149] Under LUTPA, a business action is deemed "unfair" when it offends established public policy and when it is "immoral,

---

[145] Rec. Doc. 67-1 at pp. 10–11.

[146] Rec. Doc. 69 at p. 11.

[147] *Cheramie Serv., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633,  p. 6 (La. 4/23/10); 35 So. 3d 1053 (quoting La. Rev. Stat. 51:1409).

[148] *Quality Envtl. Processes, Inc. v. I.P. Petrol. Co., Inc.*, 2013-1582 (La. 5/7/14); 144 So. 3d 1011, 1025.

[149] *Cheramie Serv., Inc.,* 2009-1633 at p. 10.

unethical, oppressive, unscrupulous, or substantially injurious to consumers."[150] A business action is "deceptive" when it amounts to fraud, deceit, or misrepresentation.[151] Ultimately, however, "the range of prohibited practices under LUTPA is extremely narrow."[152]

As discussed above, NUSSLI has not pled any false or misleading statements allegedly made by NMHC. At the core of NUSSLI's allegations is a claim that NMHC failed to pay it the amount it was due under its contract and the amount that was allocated for the grandstand build under the Cooperative Endeavor Agreement with the State of Louisiana.[153] However, the law is clear that LUTPA does not provide an alternate remedy for simple breaches of contract.[154] NUSSLI's bare assertions of deceptive conduct on the part of NMHC are insufficient to constitute deception, unethical conduct, or egregious behavior that would constitute a claim pursuant to LUTPA. Accordingly, the Court grants NMHC's motion to dismiss NUSSLI's LUTPA claim against it.

### 4.    Conversion

NMHC moves to dismiss NUSSLI's conversion claim on the grounds that the only alleged "chattel" converted by NMHC is NMHC's own money.[155] In opposition, NUSSLI contends that the tort of conversion applies to the wrongful exercise of dominion over money.[156] In order to state a claim for conversion under Louisiana law, a plaintiff must show one of the following: "(1)

---

[150] *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994).

[151] *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 553 (5th Cir. 2015).

[152] *Quality Envtl. Processes, Inc.*, 144 So. 3d at 1025.

[153] Rec. Doc. 47 at p. 25.

[154] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993).

[155] Rec. Doc. 67-1 at p. 12.

[156] Rec. Doc. 69 at p. 13.

possession is acquired in an unauthorized manner; (2) the chattel is removed from one place to another with the intent to exercise control over it; (3) possession of the chattel is transferred without authority; (4) possession is withheld from the owner or possessor; (5) the chattel is altered or destroyed; (6) the chattel is used improperly; or (7) ownership is asserted over the chattel."[157]

In support of its argument that it has pled sufficient facts to state a claim for conversion, NUSSLI cites a Louisiana Third Circuit Court of Appeal case, *Broussard, Bolton, Halcomb & Vizzier v. Williams*, stating that, in that case, the court held that a lawyer's withdrawal of funds from his trust account, despite the existence of an agreement that he would do so only on certain terms, constituted a conversion.[158] In that case, two attorneys, who had each represented the same client, signed an agreement whereby one attorney agreed to place the full amount of the attorneys' fees in his trust account until the parties resolved a dispute about the amount to which each attorney was entitled.[159] Contrary to the agreement, one of the attorneys withdrew the entire amount from the trust account for himself.[160] The court held that the other attorney, who did not receive any of the funds, had a claim for both breach of contract and conversion.[161]

NUSSLI asserts that, here, NMHC consented under the Cooperative Endeavor Agreement to devote $374,000 of the grant funds from the State of Louisiana to the grandstand build, but, contrary to that agreement, diverted those funds to other recipients without paying the amounts

---

[157] *Dual Drilling Co. v. Mills Equip. Invs.*, Nos. 98-C-0343, 98-C-0356 (La. 12/1/98); 721 So. 2d 853, 857.

[158] Rec. Doc. 69 at p. 13 (citing 2001-0219 (La. App. 3 Cir. 10/3/01); 796 So. 2d 791, 796).

[159] *Broussard*, 796 So. 2d at 793–94.

[160] *Id.* at p. 794.

[161] *Id.* at 796.

allocated to the grandstand build.[162] However, unlike in *Broussard*, in this case, although money was allocated in the Cooperative Endeavor Agreement to the grandstand build, it was not allocated specifically to NUSSLI. At the time the Cooperative Endeavor Agreement was signed on August 19, 2014, NUSSLI had not yet entered into a contract with NMHC.[163] Therefore, NUSSLI's conversion claim is unlike that in *Broussard* because NUSSLI had no right under the Cooperative Endeavor Agreement to those funds.

Therefore, this claim is indistinguishable from NUSSLI's breach of contract claim. A claim that money is owed to a plaintiff pursuant to contract is insufficient for a plaintiff to state a claim for conversion.[164] Accordingly, the Court grants NMHC's motion to dismiss NUSSLI's conversion claim.

### 5.    Private Works Act

NMHC also moves to dismiss the Private Works Act claim on several grounds: (1) the PWA does not apply because the Event was not a construction project within the meaning of the PWA; (2) the PWA does not apply because NMHC is not a contractor nor is NUSSLI a subcontractor within the meaning of the PWA; (3) NUSSLI has failed to plead that it delivered the notice required by the PWA; and (4) at most, the privilege would apply to NMHC's lease rights, not the land

---

[162] Rec. Doc. 69 at p. 13.

[163] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at p. 14; Rec. Doc. 47-2 at p. 9.

[164] *See New Orleans Jazz and Heritage Found., Inc. v. Kirksey*, 2009-1433 (La. App. 4 Cir. 5/26/10); 40 So. 3d 394, 406) ("Under the Agreement in effect between KEI and the Foundation, KEI simply owes the Foundation more money than it has paid. KEI failed to perform satisfactorily under its contract with the Foundation. Accordingly, the Foundation may recover the money for rebates owed to it under the contract, but it has not alleged facts sufficient to support a finding that either KEI or Mr. Kirksey 'wrongfully converted' the rebates.").

itself.[165] In opposition, NUSSLI contends that: (1) the modifications and physical changes to the land in connection with the Indy Race were clearly within the scope of the PWA; (2) NUSSLI's claim and privilege are valid against all of the Chouest Defendants; and (3) the notice required under Louisiana Revised Statute § 9:4802(G)(1) was provided.[166]

Pursuant to Louisiana Revised Statute § 9:4802, "[t]he following persons have a claim against the owner and a claim against the contractor to secure payment of the following obligations arising out of the performance of work under the contract: (1) Subcontractors, for the price of their work. . . . (4) Lessors, for the rent of movables used at the site of the immovable and leased to the contractor or a subcontractor by written contract." Pursuant to Louisiana Revised Statute § 9:4801, "[t]he following persons have a privilege on an immovable to secure the following obligations arising out of a work on the immovable: (1) Contractors, for the price of their work . . . (4) Lessors, for the rent of movables used at the site of the immovable and leased to the owner by written contract." NUSSLI asserts that as a lessor seeking payment for the rent of a movable (the grandstands) placed on an immovable, its claim falls squarely within the terms of the PWA and it is entitled to payment from the owner and the contractor, and a privilege against the immovable, the NOLA Motorsports Park.[167]

NUSSLI and NMHC disagree over whether the lease of the grandstands was part of the "performance of work" as defined in the PWA. Louisiana Revised Statute § 9:4808 defines work as "a single continuous project for the improvement, construction, erection, reconstruction,

---

[165] Rec. Doc. 67-1 at p. 13.

[166] Rec. Doc. 69 at pp. 9–10.

[167] *Id.* at p. 20.

modification, repair, demolition, or other physical change of an immovable or its component parts." NMHC asserts that there is no "work" at issue in this case as the grandstand rental was part of a finite, three-day event.[168] In opposition, NUSSLI contends that there can be little doubt that the various constructions and modifications required with respect to the NOLA Motorsports Park "consisted of improvement, modifications, repairs, and other physical changes to the Property."[169] In NUSSLI's complaint, it alleges that NMHC agreed in the Cooperative Endeavor Agreement with the State of Louisiana to "use appropriated funds to support planning, operations, and production of the Indy Prix of Louisiana and to build the required track improvements and safety upgrades to the NOLA Motorsports Park required by IndyCar in order to host the Event."[170] NUSSLI has therefore alleged that there were track improvements and safety upgrades constituting "work" within the meaning of the PWA.

However, to state a claim under the PWA, NUSSLI must have alleged that its provision of the grandstands was part of the performance of that work. In the Lease Agreement, under "NUS'S OBLIGATIONS," NUSSLI agreed to the following activities: "(a) lease, supply, install and thereafter remove the Equipment at the Event, in accordance with the time frames specified on Schedule A hereto, (b) install the Equipment during or before the Installation Period, and (c) remove the Equipment before or during the Removal Period."[171] NUSSLI alleges that the Equipment

---

[168] Rec. Doc. 65-1 at p. 22.

[169] Rec. Doc. 68 at p. 21 (citing *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at p. 27).

[170] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at p. 27.

[171] Rec. Doc. 65-2 at p. 1.

discussed in the Lease Agreement were grandstands.[172] NUSSLI does not allege anywhere in its first amended complaint that the lease of the grandstands was part of the track improvements or safety upgrades, or otherwise associated with physical change to the immovable or its component parts. Therefore, NUSSLI does not have a claim or privilege under the PWA. Accordingly, the Court grants NMHC's motion to dismiss NUSSLI's claim under the PWA.

### 6.      Request for Leave to Amend

Finally, NUSSLI requests that, in the event that the Court grants NMHC's motion to dismiss as to one or more of its causes of action, it request that it be granted leave to amend its first amended complaint in accordance with the Court's ruling.[173] Other than making such a general request, NUSSLI fails to explain exactly what amendments could be made to address the deficiencies in the complaint. Pursuant to the Court's Scheduling Order, "[a]mendments to pleadings, third-party actions, cross claims, and counterclaims shall be filed no later than January 8, 2016, in accordance with the Federal Rules of Civil Procedure and Local Rule 7.6."[174] Federal district courts have the inherent power to enforce their scheduling orders,[175] and Federal Rule of Civil Procedure 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent."[176]

NUSSLI has already amended its complaint once, following the motions to dismiss filed by

---

[172] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at p. 19.

[173] Rec. Doc. 69 at p. 14.

[174] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 39 at p. 2.

[175] *See Flaska v. Little River Marine Const. Co.*, 389 F.2d 885, 887 n.3 (5th Cir. 1968) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962)); *see also Finisar v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 899 (E.D. Tex. 2006).

[176] Fed. R. Civ. P. 16(b)(4).

the Chouest Defendants and NMHC.[177] At the time it amended its complaint, the Court had already

issued orders on the motions to dismiss filed by Defendants NOLA Motor, Chouest, and NMHC in

*Andretti*, with which this case is consolidated for the purposes of discovery.[178] The claims in the

*Andretti* action overlap with many of the claims at issue in this case and the parties here repeatedly

reference the Court's orders on the motions to dismiss in *Andretti*. Therefore, NUSSLI was on notice

regarding the Court's likely rulings on certain legal arguments and claims. Furthermore, NUSSLI

has not alleged, nor does the Court perceive, what amendments could be made to address the

deficiencies in NUSSLI's complaint. Therefore, the Court concludes that NUSSLI has failed to

demonstrate good cause and NUSSLI's request for leave to amend its complaint is denied.

---

[177] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47.

[178] Rec. Docs. 40, 42.

## IV. Conclusion

For the foregoing reasons, the Court concludes that NUSSLI has failed to state a fraud, LUTPA, conversion, or PWA claim against NMHC. Accordingly,

**IT IS HEREBY ORDERED** that NMHC "Motion to Dismiss Under Rule 12(b)(6) For Failure to State a Claim"[179] is **GRANTED**.

**IT IS FURTHER ORDERED** that NUSSLI's request for leave to amend its complaint is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this 29th day of July, 2016.

_Nannette Jolivette Brown_
_____
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[179] Rec. Doc. 67.