**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **NUSSLI US, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2167**<br>**c/w NO. 15-2372** |
| **NOLA MOTORSPORTS HOST COMMITTEE,**<br>**INC., et al.** | **SECTION: "G"(3)** |

**ORDER**

In this litigation, Plaintiff NUSSLI (US), LLC ("NUSSLI") alleged that it is owed money under a contract it entered into with NOLA Motorsports Host Committee, Inc. ("NMHC"), NOLA Motor Club, LLC ("NOLA Motor"), and Motor Realty, L.L.C. ("Motor Realty").[1] NUSSLI also alleged that Defendants NOLA Motor, Motor Realty, Laney C Racing, L.L.C. ("Laney C Racing"), Laney C, L.L.C. ("Laney C"), and Laney Chouest ("Chouest") are liable to it under Louisiana's single business enterprise, alter ego, unjust enrichment, conversion, and fraud doctrines.[2] On July 29, 2016, this Court granted two motions to dismiss filed by Defendant NMHC[3] and Defendants NOLA Motor, Motor Realty, Laney C. Racing, Laney C, and Chouest (collectively "Chouest Defendants").[4]  Pending before the Court is NUSSLI's "Motion to Revise, Reconsider, Alter, or Amend Judgment, or For New Trial," seeking reconsideration of both Orders dismissing

---

[1] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at 1.

[2] *Id.* at 1–2.

[3] Rec. Doc. 136.

[4] Rec. Doc. 135.

NUSSLI's Louisiana Private Works Act against the Chouest Defendants and NMHC.[5] Having reviewed the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will deny the motion.

## I. Background

### A.  *Factual Background*

In its first amended complaint, NUSSLI alleges that it entered into a Lease Agreement on or about November 4, 2014 with NMHC, NOLA Motor, and Motor Realty (collectively "Lessee Parties").[6] NUSSLI alleges that, pursuant to the Lease Agreement, the Lessee Parties agreed to lease grandstands from NUSSLI and NUSSLI agreed to supply, install, and thereafter remove the grandstands that were to be used in connection with the 2015 Indy Grand Prix of Louisiana (the "Racing Event").[7] NUSSLI alleges that the Lessee Parties initially agreed to pay NUSSLI $871,763.97, but later requested that NUSSLI make additions and deductions to its services, bringing the total contract price for 2015 to $652,008.54.[8] NUSSLI also alleges that, pursuant to the Lease Agreement, the Lessee Parties also agreed to pay NUSSLI $884,840.43 for a Racing Event to take place in 2016 and $898,113.04 for a Racing Event to take place in 2017.[9] NUSSLI alleges that, to date, it has only received $293,404.04 for the 2015 Racing Event, which, it asserts,

---

[5] Rec. Doc. 146.

[6] *NUSSLI US, LLC*, No. 15-2372, Rec. Doc. 47 at 24.

[7] *Id.*

[8] *Id.* at 25.

[9] *Id.*

is less than the $374,000 in funds that were designated by the State of Louisiana for the "Grandstand Build."[10]

NUSSLI further alleges that the Chouest Defendants committed fraud by misrepresenting to Andretti Sports Marketing Louisiana, LLC ("Andretti") and, by extension NUSSLI, that the State of Louisiana's $4.5 million appropriation, along with Laney Chouest's investment, would cover expenses incurred by the Indy Grand Prix of Louisiana, including NUSSLI's fees.[11]

**B.      *Procedural Background***

NUSSLI filed a complaint in this matter on June 29, 2015.[12] On January 8, 2016, NUSSLI filed an amended complaint, alleging claims of breach of contract, unfair and deceptive trade practices pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), Louisiana Revised Statute § 51:1401 *et seq.*, fraud, conversion, unjust enrichment, failure to pay an open account, and claims pursuant to the Louisiana Private Works Act ("PWA"), Louisiana Revised Statute § 9:4801 *et seq.*[13] On January 27, 2016, this case was consolidated with *Andretti Sports Marketing Louisiana v. NOLA Motorsports Host Committee* for discovery purposes only.[14] On January 27, 2016, Defendants NOLA Motor Club, LLC, Motor Realty, L.L.C., Laney C. Racing, L.L.C., Laney C, L.L.C., and Laney Chouest filed a "Rule 12(b)(6) Motion to Dismiss, and Alternative Rule 12(e) Motion for More Definite Statement."[15] On January 27, 2016,

---

[10] *Id.*

[11] *Id.* at 26.

[12] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 1.

[13] *Id.*, Rec. Doc. 47.

[14] *Id.*, Rec. Doc. 57.

[15] Rec. Doc. 65.

Defendant NMHC also filed a "Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim."[16] On July 29, 2016, the Court granted both motions.[17]

On August 26, 2016, NUSSLI filed the instant motion requesting that this Court revise, reconsider, alter, or amend the Court's Orders granting the motions dismissing NUSSLI's PWA cause of action.[18] On September 20, 2016, the Chouest Defendants filed an opposition.[19] On September 30, 2016, NUSSLI filed a reply [20] and the Chouest Defendants filed a surreply.[21]

## II. Parties' Arguments

### A.   NUSSLI's Arguments in Support of its Motion for Reconsideration

In its motion, NUSSLI requests that this Court reconsider its prior Orders granting the Chouest Defendants' and NMHC's motions to dismiss NUSSLI's PWA cause of action.[22] NUSSLI argues that reconsideration is proper under Rule 54(b) or Rule 59 of the Federal Rules of Civil Procedure on two grounds: first, that NUSSLI recently received new evidence that further supports its PWA cause of action, and second, that the Court erred in denying NUSSLI leave to amend its complaint.[23] In the alternative, NUSSLI requests that the Court "direct entry of a partial, final and

---

[16] Rec. Doc. 67.

[17] Rec. Docs. 135, 136.

[18] Rec. Doc. 146.

[19] Rec. Doc. 150.

[20] Rec. Doc. 154.

[21] Rec. Doc. 156.

[22] Rec. Doc. 146.

[23] *Id.* at 1–2.

immediately appealable judgment with respect to all of NUSSLI's claims against the Chouest Defendants."[24]

NUSSLI argues that reconsideration is proper under either Rule 54(b), which permits the Court to reconsider any prior interlocutory order at any time,[25] or Rule 59, which permits reconsideration when new evidence comes to light or a manifest injustice is shown.[26] NUSSLI avers that in its complaint and other filings, NUSSLI had asserted that the Grandstand Lease described the grandstand installation as a "Work," and had repeatedly alleged the "erection" of the grandstands on the property in connection to other track improvements and safety upgrades.[27] NUSSLI states that the Court found that NUSSLI had not sufficiently alleged that the grandstands constituted a "physical change of the immovable or its component parts" or that it was part of a broader project of tract improvements and safety upgrades.[28]

NUSSLI argues that it has received new evidence of relevant emails that demonstrate that the grandstands construction was subject to Jefferson Parish's permitting process and building code regulations.[29] NUSSLI asserts that the emails show that the president and representative of NMC and NMHC, Kristen Engeron, had arranged for necessary building permits that were required before the grandstands could be installed, including electrical inspections, building

---

[24] Rec. Doc. 146-1 at 12.

[25] Fed. R. Civ. P. 54(b).

[26] Fed. R. Civ. P. 59.

[27] Rec. Doc. 146-1 at 9 (citing *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Docs. 1, 1-2).

[28] *Id.* at 10 (citing Rec. Docs. 135, 136).

[29] *Id.*

inspections, and approval of occupancy of the structures.[30] NUSSLI avers that the applicable codes and provisions referenced in email correspondence between the Jefferson Parish Office of Inspection and Code Enforcement and representatives of NMHC and Andretti include "structural design requirements, load-bearing specifications, and other foundation, roof, and accessibility requirements all as required by the applicable building code."[31] Thus, NUSSLI argues that this email correspondence further demonstrates that installing and erecting grandstands constitutes a "physical change of the immovable or its component parts," and thus qualifies as a "Work" under the Public Works Act.[32]

Second, NUSSLI avers that the Court should reconsider its decision because it denied NUSSLI a reasonable opportunity to amend the allegations in its complaint.[33] NUSSLI represents that the Court found that it had already granted Andretti leave to amend claims that NUSSLI also had alleged, which the Court subsequently dismissed anyway, and thus refused to grant NUSSLI leave to amend.[34] However, NUSSLI asserts that Andretti never plead a claim under the PWA, and thus the Court's reasoning for limiting NUSSLI's right to amend on other claims pleaded by

---

[30] *Id.* at 4, 11.

[31] *Id.* at 10.

[32] *Id.* at 2, 8.

[33] *Id.* at 3.

[34] *Id.* at 3, 12. For example, the Court did not grant NUSSLI leave to amend its Alter Ego, Single Business Enterprise, Open Account, LUTPA, and Fraud claims because the Court already dismissed those issues even after it granted Andretti leave to amend its complaint. *Id.* at 12.

Andretti does not apply here.[35] Thus, NUSSLI requests leave to amend its complaint as to the PWA cause of action.[36]

Finally, in the alternative, NUSSLI requests that the Court find there is no just reason for delay and enter a partial, final and immediately appealable judgment to all of NUSSLI's claims against the Chouest Defendants.[37]

**B.** *The Chouest Defendants' Arguments in Opposition to the Motion for Reconsideration*

In response, the Chouest Defendants assert that NUSSLI's arguments for reconsideration do not present sufficient grounds for the Court to reverse its prior Orders.[38] The Chouest Defendants aver that (1) the evidence involving permits, building codes, and a parish inspection was not "recently discovered" by NUSSLI and (2) such evidence still does not support NUSSLI's PWA claim.[39]

First, the Chouest Defendants assert that NUSSLI has not presented any new evidence that would merit reconsideration under Rule 59(e)(2).[40] The Chouest Defendants contend that the Lease Agreement drafted and signed by NUSSLI contained "very clear language" regarding permits; for example, the Agreement specifically states that the Lessee is responsible for "obtaining all governmental and third party authorizations and permits necessary for the Work" and explicitly

---

[35] *Id.*

[36] *Id.*

[37] *Id.* at 12.

[38] Rec. Doc. 150 at 1.

[39] *Id.* at 2.

[40] *Id.* at 4.

excludes the price of "Permitting" from the total price charged by NUSSLI.[41] The Chouest Defendants further aver that NUSSLI's plans for grandstands "acknowledged Jefferson Parish building codes and permitting" apply and the documents produced in the Initial Disclosures "revealed the omnipresence of the Jefferson Parish permitting and code enforcement process."[42] The Chouest Defendants assert that the documents previously produced to NUSSLI revealed email discussions involving, among other related topics, an expedited permitting process, compliance with building codes, and electrical inspections.[43] The Chouest Defendants also point to "innumerable communications" with NUSSLI that the Chouest Defendants assert shows NUSSLI "was aware of and actively participated in the permitting and code enforcement process in 2014.[44] In fact, the Chouest Defendants contend that NUSSLI's Exhibit B of additional evidence are all "connected to, and even identical copies of," the documents provided in the March 7, 2016 Initial Disclosures.[45]   Thus, the Chouest Defendants argue that NUSSLI's own files show it was aware that a permit, a Parish code, and a Parish inspection were required to set up the grandstands, and that "a few emails produced in discovery on July 26, 2016," do not constitute new evidence."[46]

Second, the Chouest Defendants counter that no "manifest error" or "manifest injustice" would occur if the Court does not reconsider its earlier ruling, because the evidence does not

---

[41] *Id.* at 4–5 (citing Rec. Doc. 150-1).

[42] *Id.* (citing Rec. Docs. 150-1, 150-2).

[43] *Id.* at 8–9 (citing Rec. Docs. 150-8, 150-9, 150-10, 150-11, 150-12).

[44] *Id.* (citing Rec. Docs. 150-3, 150-4, 150-5, 150-6, 150-7, 150-8, 150-9, 150-10).

[45] *Id.* at 12 (citing Rec. Doc. 150-11) (emphasis omitted).

[46] *Id.* at 5, 7.

support NUSSLI's PWA claim.[47] The Chouest Defendants argue that the consideration of permits, building codes, and inspections does not alter the Court's prior analysis.[48] The Chouest Defendants represent that permits are required by Jefferson Parish for many uses, such as garage sales and advertising signs.[49] The Chouest Defendants argue that renting grandstands was not part of any "continuous project for the improvement of the immovable."[50]

The Chouest Defendants assert that the PWA "anticipates construction of a ***building*** on land, and generally also includes placing systems in the building," which does not apply to the "temporary placement of rented grandstands for viewers of a three-day Racing Event."[51] The Chouest Defendants allege that the PWA was intended to protect contractors and subcontractors, which the Chouest Defendants argue the Host Committee and NUSSLI were not. [52]  The Chouest Defendants further allege that the PWA was intended to cover construction projects, which they assert does not apply to the underlying racing event or the temporary renting of movable grandstands.[53] According to the Chouest Defendants, other provisions dealing with movables involve those movables that are sold to an owner of land and incorporated into or consumed at the site of the immovable, or for the rental of construction equipment; the Chouest Defendants aver

---

[47] *Id.* at 13.

[48] *Id.* at 14–15.

[49] *Id.* at 14 (citations omitted).

[50] *Id.* at 15.

[51] *Id.*

[52] *Id.* at 13.

[53] *Id.*

that the PWA does not cover the renting of grandstands that are then removed.[54] Rather, the Chouest Defendants argue that the Host Committee "simply had a lease for the facility" and was not performing any construction or contracting to physically change the land.[55]

Additionally, the Chouest Defendants assert that for rights under §§ 4801 or 4802 to arise, NUSSLI would have had to "deliver a specific notice to the owner and to the contractor not more than ten days after the movables are first placed at the site of the immovable for use in a work."[56] The Chouest Defendants argue that no such notice was provided.[57] Furthermore, because the Host Committee was only a lessor and not the owner of the immovable property, rights under the PWA only extend to the Host Committee's lease rights, and not to the land itself.[58]

Finally, the Chouest Defendants also oppose NUSSLI's alternative argument that it should be granted leave to amend its complaint or that the Court should certify its ruling as appealable.[59] The Chouest Defendants argue that NUSSLI could have cured the deficiencies in its complaint when the Court granted it leave to amend its complaint the first time or could have requested leave to file in the months before this Court's decision.[60] The Chouest Defendants assert that amending the complaint will not cure the fact that NUSSLI cannot assert a PWA claim at all.[61] Moreover,

---

[54] *Id.* at 16 (citing § 4801(3), (4)).

[55] *Id.* at 16–17.

[56] *Id.* at 17 (citing §4802.G(1)).

[57] *Id.*

[58] *Id.* at 17–18 (citing *Sinclair v. Justice*, 414 So.2d 826, 828 (La. App. 4th Cir. 1982)).

[59] *Id.* at 18–19.

[60] *Id.* at 19.

[61] *Id.*

the Chouest Defendants aver that the Fifth Circuit counsels against piecemeal appeals, and that the Court should deny NUSSLI's request to certify its ruling here.[62]

## C.      NUSSLI's Reply to the Chouest Defendants' Opposition to the Motion

NUSSLI responds that while this Court may consider its motion under the standard set by Federal Rule of Civil Procedure 59, it is not bound to do so, and may reconsider its interlocutory order for any reason this Court deems sufficient.[63] NUSSLI alleges that the correspondence with Jefferson Parish permitting authorities and the "plethora of emails alleging damages to the land" demonstrates that there were physical changes to the immovable.[64] Moreover, NUSSLI's PWA claim against Andretti remains pending; thus, allowing it to amend its complaint to allege physical changes to the land in support of its Private Work Act claim is in the interest of justice.[65]

NUSSLI additionally avers that the documents produced on July 26, 2016, provided new information that the Chouest Defendants knew there was track damage and were planning on demanding the costs of repairs from NUSSLI.[66] Thus, NUSSLI asserts it shows that the Chouest Defendants' argument that NUSSLI's rental of the grandstands does not constitute a physical change to the immovable was erroneous.[67] Moreover, NUSSLI states that, as an international provider of grandstands, it was clearly aware before July 26, 2016, that permits would be required, as the Chouest Defendants pointed out; however, NUSSLI avers that it was not aware of or

---

[62] *Id.* at 19–21 (citing *Walker v. Progressive Cty. Mut. Ins. Co.*, 304 F.R.D. 486 (E.D. La. 2015) (Brown, J.); *Anderson v. Jackson*, 2007 WL 4414479, at *4 (E.D. La. 2007) (Lemelle, J.)).

[63] Rec. Doc. 154 at 2.

[64] *Id.* (citing Rec. Docs. 146-1, 146-2).

[65] *Id.* at 3.

[66] *Id.* at 3–4.

[67] *Id.*

involved in the specific permitting required in this case.[68] NUSSLI states that the documents cited by the Chouest Defendants from the Host Committee's March 7, 2016 Initial Disclosures contained attorney-client privileged materials, and thus the Host Committee "almost immediately" requested they be returned after it was produced to NUSSLI.[69] Moreover, even if NUSSLI had kept those documents, NUSSLI avers that they were received after the submission date for the Chouest Defendants' motion to dismiss filed on January 29, 2016.[70] According to NUSSLI, the Chouest Defendants did not produce any of these documents until July 26, 2016, and those were distinct from the documents temporarily submitted by the Host Committee.[71] NUSSLI also states that the Chouest Defendants' arguments on notice or whether they were owners or contractors were not reached by the Court in its analysis, and accordingly, NUSSLI refers the Court to NUSSLI's previous arguments on these issues.[72]

Furthermore, NUSSLI contends that its motion for reconsideration was not solely based on the new evidence provided.[73] Rather, NUSSLI asserts that reconsideration is warranted because the Court's denial of NUSSLI's request to amend its complaint was "logically inconsistent" with its reasoning that the claims were similar to those plead and dismissed by Andretti.[74] NUSSLI argues that the issues with NUSSLI's PWA claim can be cured by amending the complaint to

---

[68] *Id.* at 4–5.

[69] *Id.* at 5.

[70] *Id.*

[71] *Id.*

[72] *Id.* at 8 (citing Rec. Doc. 68 at 21–27).

[73] *Id.* at 6.

[74] *Id.*

include additional allegations that building permits were necessary and that damages to the land were asserted by the Chouest Defendants.[75]

Finally, NUSSLI states that immediate appeal is warranted because it would be prejudicial to NUSSLI for the claims against the Chouest Defendants to "remain in abeyance pending the resolution of the separate claims against the remaining codefendants in this case."[76] NUSSLI rejects the Chouest Defendants' assertion that the "full and final determination of all claims" is a just reason for delay.[77] Instead, NUSSLI again avers that the Court should certify its Order of dismissal as a final judgment under Rule 54(b) if it denies NUSSLI's motion for reconsideration. Additionally, NUSSLI asserts that certifying the Order for appeal under 28 U.S.C. § 1292(b) would also be appropriate, as the Court's rulings on the Single Business Enterprise claims and the PWA claim both constitute controlling issues of law.[78]

### D.   The Chouest Defendants' Surreply in Opposition to the Motion

In response to NUSSLI's reply memorandum, the Chouest Defendants again assert that NUSSLI knew, since the 2014 lease, that permits would be required to install its grandstands, and thus it could have made these arguments "from the beginning."[79] Regardless, the Chouest Defendants state, the involvement of permits, parish codes, or inspections does not transform the rental of grandstands into a construction project subject to the PWA.[80]

---

[75] *Id.*

[76] *Id.* at 7.

[77] *Id.*

[78] *Id.* at 7–8.

[79] Rec. Doc. 156 at 1, 4.

[80] *Id.* at 4.

13

The Chouest Defendants further argue that the pending PWA claim against Andretti does not present a "risk of inconsistent judgments" as stated by NUSSLI, because, according to the Chouest Defendants, "[n]o amount of amending" can meet all the requirements to assert such a claim against any defendant here.[81] Additionally, the Chouest Defendants aver that the "careless" damage to the land around the race track does not convert its grandstand rental into a construction project subject to the PWA.[82] The Chouest Defendants state this is particularly true here where the damage was caused by the equipment used to move the grandstands on and of the property, and not from any attachment to the property.[83]

### III. Law and Analysis

#### A.   *Legal Standard*

Rule 54(b) of the Federal Rules of Civil Procedure provides that an order adjudicating fewer than all the claims among all the parties "may be revised at any time" before the entry of a final judgment. Pursuant to Rule 54, a district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."[84] The Fifth Circuit has stated that a court may reconsider and reverse an interlocutory order for "any reason it deems sufficient, even in the absence of new evidence or an intervening change or in clarification of the new law."[85]

---

[81] *Id.* at 2.

[82] *Id.*

[83] *Id.* at 2–3.

[84] *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981).

[85] *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 171 (5th Cir. 2010) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir.1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)).

Courts in this district generally evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.[86] Federal Rule of Civil Procedure 59(e) also allows courts to alter or amend its judgments after entry. The Court has "considerable discretion" in deciding whether to grant a motion for reconsideration, but must "strike the proper balance between two competing imperatives: (1) finality and (2) the need to render just decisions on the basis of all the facts."[87] This Court's discretion is further bounded by the Fifth Circuit's instruction that reconsideration is "an extraordinary remedy that should be used sparingly,"[88] with relief being warranted only when the basis for relief is "clearly establish[ed]."[89] Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration under the Rule 59(e) standard:

(1)     the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;

(2)     the movant presents newly discovered or previously unavailable evidence;

(3)     the motion is necessary in order to prevent manifest injustice; or

(4)     the motion is justified by an intervening change in controlling law.[90]

---

[86] *See S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 921 F. Supp. 2d 548, 565 (E.D. La. 2013) (Brown, J.) (citing *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 2010 WL 1424398, at *3 (E.D. La. 2010) (Vance, J.); *Rosemond v. AIG Ins.*, No. 08–1145, 2009 WL 1211020, at *2 (E.D. La. May 4, 2009) (Barbier, J.); *In re Katrina Canal Breaches*, No. 05–4182, 2009 WL 1046016, at *1 (E.D. La. Apr. 16, 2009) (Duval, J.)).

[87] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[88] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[89] *Schiller v. Physicians Res. Grp, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Castrillo v. Am. Home Mortgage Servicing, Inc.*, No. 09-4369 R, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.).

[90] *See, e.g.*, *Castrillo v. Am. Home Mortg. Servicing*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (Vance, J.) (citations omitted).

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments . . . .'"[91] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[92] "It is well settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[93] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[94]

**B.    Analysis**

### 1.    Whether the Installation of the Grandstands was a "Work"

In its motion, NUSSLI asserts that the Court should reconsider its prior Orders dismissing NUSSLI's PWA claim against the Chouset Defendants and NMHC.[95] NUSSLI argues that reconsideration is warranted "because new evidence has come to light, and in order to correct manifest errors of law and fact, and to prevent manifest injustice."[96] In particular, NUSSLI avers that newly discovered emails demonstrate that NUSSLI's grandstands were subject to permitting requirements, building codes, and inspections, and also caused damage to the land, which NUSSLI

---

[91] *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[92] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (citation and internal quotation marks omitted).

[93] *Helena Labs. Corp. v. Alpha Sci. Corp.*, 483 F. Supp. 2d 538, 539 (E.D. Tex. 2007) (citing *Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[94] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F. Supp. 2d 471, 481 (M.D. La. 2002). *See also Mata v. Schoch*, 337 B.R. 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented); *FDIC v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

[95] Rec. Doc. 146.

[96] Rec. Doc. 146-1 at 7.

argues supports its PWA claim.[97] Additionally, NUSSLI contends that it was improperly denied an opportunity to amend its complaint to cure the deficiencies on its PWA claim.[98]

In opposition, the Chouest Defendants argue that the fact that the grandstands were subject to permitting requirements was well known to NUSSLI before the new emails were produced, and thus these arguments should have been asserted in NUSSLI's original opposition to the motion to dismiss.[99] The Chouest Defendants further assert that even if the Court did consider such evidence, NUSSLI's claim would still be without merit because the PWA does not apply to the temporary rental of movable grandstands.[100]

As a preliminary matter, the Chouest Defendants argue that the additional evidence of the permitting process presented by NUSSLI is not "new" evidence, because NUSSLI already knew about such requirements and could have raised its arguments before.[101] NUSSLI concedes that it generally knew that permits would be required, but that it was not aware of the more specific information found in the documents received in July 2016, months after it filed its opposition to the motion to dismiss.[102] Moreover, NUSSLI contends that it could not rely on the documents provided in NMHC's Initial Disclosures that overlap with this new evidence because NMHC requested the return of those documents "ASAP."[103]

---

[97] *Id.* at 10–11.

[98] *Id.* at 3.

[99] Rec. Doc. 150 at 11–13.

[100] *Id.* at 13–18.

[101] Rec. Doc. 150 at 2.

[102] Rec. Doc. 154 at 4.

[103] *Id.* at 5.

As stated *supra*, the Court has considerable discretion when determining if arguments presented in a motion for reconsideration merit reversing the Court's prior decisions.[104] Here, the Court notes that while NUSSLI could have raised general factual allegations regarding permitting requirements in its original arguments opposing the motion to dismiss, NUSSLI could not have presented the Court with the more specific supporting evidence that it did not receive until July 26, 2016. For example, the newly provided emails state that NUSSLI's construction drawings had to be approved by a Louisiana registered architect or civil engineer;[105] that a professional engineer of record needed to submit a letter of certification stating that the grandstands were inspected and were designed and erected in compliance with "all applicable codes, including ICC 300" and the 2012 International Building Code;[106] and that additional building and electrical inspections were required before a permit could be approved.[107] These facts appear to go beyond the information which the Chouest Defendants aver that NUSSLI had access to prior to the filing of the motion to dismiss.[108] Though the Chouest Defendants allege that NUSSLI clearly knew that permits and inspections would be required for its grandstands, this does not show that NUSSLI knew about the specific requirements in Jefferson Parish, especially in light of the fact that NUSSLI was allegedly

---

[104] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993); *Castrillo v. Am. Home Mortg. Servicing*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (Vance, J.).

[105] Rec. Doc. 146-3 at 6.

[106] *Id.* at 3.

[107] *Id.* at 2.

[108] *See, e.g.*, 150 at 4 (asserting that NUSSLI's lease agreement references permits); *id.* at 5–6 (pointing to emails regarding who must obtain permits); *id.* at 7 (arguing that NUSSLI's grandstand plans stated it must comply with "applicable codes and standards").

not involved in the permitting process.[109] Accordingly, the Court will consider such evidence here in NUSSLI's motion for reconsideration.

Louisiana state courts have found that the "fundamental aim" of the Louisiana legislature in enacting the PWA was to "protect materialmen, laborers and subcontractors who engage in construction and repair projects."[110] The PWA "was enacted to facilitate construction of improvements on immovable property and does so by granting to subcontractors, among others," rights to recover the costs of their work.[111] Louisiana state courts have further held that the PWA "must be strictly construed."[112]

Pursuant to Louisiana Revised Statute § 9:4802, "[t]he following persons have a claim against the owner and a claim against the contractor to secure payment of the following obligations arising out of the performance of work under the contract: (1) Subcontractors, for the price of their work . . . (4) Lessors, for the rent of movables used at the site of the immovable and leased to the contractor or a subcontractor by written contract." Likewise, under Louisiana Revised Statute § 9:4801, "[t]he following persons have a privilege on an immovable to secure the following obligations arising out of a work on the immovable: (1) Contractors, for the price of their work . . . (4) Lessors, for the rent of movables used at the site of the immovable and leased to the owner by written contract."

---

[109] *See* Rec. Doc. 154 at 4.

[110] *Byron Montz, Inc. v. Conco Const., Inc.*, 2002-0195 (La. App. 4 Cir. 7/24/02), 824 So. 2d 498, 502. *See also* La. R.S. 9:4801 *et seq.*; *Hibernia Nat. Bank v. Belleville Historic Dev., L.L.C.*, 01–0657 (La. App. 4 Cir. 3/27/02), 815 So.2d 301, 305–06; *Bernard Lumber Company, Inc. v. Lake Forest Construction Co., Inc.*, 572 So.2d 178 (La. App. 1 Cir. 1990).

[111] *Byron Montz, Inc.*, 824 So. 2d at 502.

[112] *Id.*

In its original opposition to the motion to dismiss, NUSSLI asserted that a lessor seeking payment for the rent of a movable placed on an immovable, *i.e.* the grandstands, may assert a claim under the PWA.[113] NUSSLI contends that the allegations in the complaint were sufficient to raise a factual issue as to whether the installation of the grandstands was "in and of itself, or alternatively, was a part of" a "work" under the PWA.[114] As the Court noted in its previous Order, NUSSLI had sufficiently alleged that the track improvements and safety upgrades to the NOLA Motorsports Park constituted a "work" within the meaning of the PWA.[115] However, in dismissing NUSSLI's PWA claims, the Court further held that NUSSLI failed to allege that the leasing of grandstands "was part of" that work, or "otherwise associated with any physical change to the immovable or its component parts."[116]

Here, the central dispute between the parties on reconsideration remains whether the temporary leasing, installation, and removal of NUSSLI's grandstands were part of a "work on an immovable" as required to assert a claim under the PWA.[117] The PWA defines "work" as a "single continuous project for the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts."[118] NUSSLI avers that the new factual assertions that its grandstands were subject to building codes, various inspections, and permitting requirements, in addition to those arguments previously asserted,[119]

---

[113] Rec. Doc. 69 at 20.

[114] Rec. Doc. 146-1 at 10.

[115] Rec. Doc. 135 at 69.

[116] *Id.* at 70.

[117] *See* 1981 Comments on La. R.S. § 9:4801 ("The obligations secured must arise out of a work . . . .").

[118] La. R.S. § 9:4808.

[119] For example, NUSSLI contends that the Grandstand Lease defined the grandstand installation as a

sufficiently allege that the grandstands were "associated with [a] physical change to the immovable or its component parts."[120] Moreover, NUSSLI points to the allegation that there was damage to the land "caused by [NUSSLI's] crews during construction and dismantle."[121] According to NUSSLI, this evidence supports its argument that the installation of the grandstands on the property constitutes a physical change to the immovable.[122]

NUSSLI's new evidence and arguments, however, still do not suggest that NUSSLI's temporary leasing of grandstands constitutes a "Work" by itself or was a part of a "Work" as required by the PWA. The fact that permits, inspections, and compliance with building codes were required to set up grandstands for the Racing Event does not establish that NUSSLI's performance amounts to a physical change to the immovable. For example, NUSSLI asserts that its grandstands were subject to the "ICC 300" standards and "2012 International Building Code," which include provisions regarding "structural design requirements, load-bearing specifications, and other foundation, roof, and accessibility requirements."[123] Yet, these regulations do not suggest that installing the grandstands "constituted an improvement, erection, modification, or other physical change to the immovable."[124] Rather, the purpose of such standards is to ensure the grandstands'

---

"Work," and that NUSSLI alleged in its complaint the "erection" of grandstands on the property. Rec. Doc. 146-1 at 9. Moreover, NUSSLI avers that the same Cooperative Endeavor Agreement (CEA) with the State appropriated $2.6 million for track improvements and upgrades and $374,000 for the "Grandstand Build;" thus, NUSSLI states it alleged a connection between the installation of the grandstands and the other track improvements and safety upgrades. *Id.*

[120] *Id.* at 8.

[121] *See* Rec. Doc. 146-1 at 5; Rec. Doc. 146-2 at 1; Rec. Doc. 154 at 6.

[122] Rec. Doc. 146-1 at 2.

[123] *Id.* at 10.

[124] *Id.* at 10–11.

"structural strength, means of egress facilities, stability, and safety to life and property" in order to protect the "health, safety and general welfare" of the public who use such seating structures.[125] NUSSLI has not provided the Court with any indication that physical changes to the immovable were performed or required in order to comply with these regulations, or that these regulations are only applicable to construction projects or other works where the PWA applies.

Likewise, the assertion that permits and inspections were required by Jefferson Parish does not alter the Court's analysis that NUSSLI has not sufficiently pled a claim under the PWA. Louisiana courts have stated that the legislature's intent in enacting the PWA was to protect those workers who "engage in construction and repair projects."[126] Accordingly, Louisiana Revised Statute § 9:4808 limits its application to those projects involving physical changes to the land. Moreover, as stated above, Louisiana courts have repeatedly held that the PWA must be "strictly construed."[127] Thus, the fact that grandstands were subject to Jefferson Parish's general permitting process is irrelevant to determining if a claim under the PWA may go forward unless those applicable regulations suggest physical changes to the land were required; here, NUSSLI presents no such argument. Moreover, NUSSLI has not provided the Court with any evidence that these permits, building codes, and inspections are only required if a project involves improvements or changes to an immovable. Extending the reach of the PWA to include the temporary rental of

---

[125] *See* International Code Council, *ICC 300 – 2012 Standard for Bleachers, Folding and Telescopic Seating, and Grandstands* § 101 (2012), http://codes.iccsafe.org/app/book/content/PDF/ICC%20Standards/ICC_300-2012_Bleachers/PDFs/Chapter%201%20-%20Application%20and%20Administration.pdf.

[126] *Byron Montz, Inc. v. Conco Const., Inc.*, 2002-0195 (La. App. 4 Cir. 7/24/02), 824 So. 2d 498, 502. *See also* La. R.S. 9:4801 *et seq.*; *Hibernia Nat. Bank v. Belleville Historic Dev., L.L.C.*, 01–0657 (La. App. 4 Cir. 3/27/02), 815 So.2d 301, 305–06; *Bernard Lumber Company, Inc. v. Lake Forest Construction Co., Inc.*, 572 So.2d 178 (La. App. 1 Cir. 1990).

[127] *Id.*

removable grandstands for an event, merely because the seating was subject to general permitting requirements and standards, would be contrary to the plain language of the PWA.

The other factual allegations previously raised by NUSSLI still do not support its PWA claim in light of this new evidence. For example, NUSSLI contends that the same Cooperative Endeavor Agreement (CEA) with the State appropriated $2.6 million for track improvements and upgrades and $374,000 for the "Grandstand Build;" thus, NUSSLI argues this shows there is a connection between the installation of the grandstands and the other track improvements and safety upgrades.[128] The Court first notes that NUSSLI's evidence that the CEA allocated funds for NUSSLI's grandstands separately from those funds used to improve and upgrade the land undermines, rather than supports, NUSSLI's argument that its grandstands were part of "one continuous project" to physically change an immovable. Moreover, in NUSSLI's First Amended Complaint, it alleges that the Chouest Defendants actually appropriated $3.4 million of the state funding "for capital improvements to" the NOLA Motorsports Park.[129] NUSSLI asserted that this excessive use of funds "deprived Host Committee of needed capital" to pay "vendors and contractors who make their living supporting events such as this Event, including NUS[SLI]."[130] The Court finds that NUSSLI's distinction between those funds used to improve the park and those used to pay "vendors and contractors" like NUSSLI further demonstrates the inapplicability of PWA.

---

[128] Rec. Doc. 146-1 at 9.

[129] Rec. Doc. 47 at 14.

[130] *Id.*

More fundamentally, the Court is still not persuaded by NUSSLI's argument that it can base a PWA claim on the assertion that its temporary rental seating would be used in an event that may have first required other entities to perform physical improvements and/or construction on the land. Such an argument runs counter to the plain language of the PWA. Louisiana Revised Statute § 9:4808 specifically states the work in question must be part of a "single continuous project *for* the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts," and not just "involving" some physical changes to the land made by other entities.[131] Here, NUSSLI has not plausibly alleged that installing grandstands was part of any underlying physical change to the land, such as the improvements or upgrade to the race track property done to prepare for the Racing Event; rather, it was performed for the Racing Event alone. Moreover, a review of Fifth Circuit and Louisiana state court case law shows that temporarily setting up and then removing a portable structure, without alleging some specified action done directly to the immovable, is not the type of "work" typically contemplated by the PWA.[132] As the Louisiana Fourth Circuit Court of Appeal has cautioned, § 9:4808 "does not mean that any party who works on immovable property can have a lien."[133]

---

[131] La. R.S. § 9:4808 (emphasis added).

[132] *See, e.g., In re Whitaker Const. Co., Inc.*, 439 F.3d 212, 216 (5th Cir. 2006) (stating that the PWA regulates the "the rights and responsibilities of persons involved in the c*onstruction and improvement of immovables*." (emphasis added)); *KeyBank Nat. Ass'n v. Perkins Rowe Associates, LLC*, 823 F. Supp. 2d 399, 412 (M.D. La. 2011) (reviewing the statutory framework of the PWA for contractors who "erect [a] building or *permanent structure*" (emphasis added)), *aff'd sub nom. KeyBank Nat. Ass'n v. Perkins Rowe Assoc., L.L.C.*, 502 F. App'x 407 (5th Cir. 2012); *Succession of Lard v. Poland*, 42,284 (La. App. 2 Cir. 6/20/07), 960 So. 2d 1254, 1258 (holding that "[u]nder La. R.S. 4801, a contractor has a privilege on an immovable to secure the obligations of the owner arising out of work *on the immovable*."); *Lake Forest, Inc. v. Cirlot Co.*, 466 So. 2d 61, 63 (La. App. 4 Cir. 3/6/85) (finding that the "fundamental policies" of the PWA are to ensure that "persons who contribute to *the improvement of an immovable* are entitled to legal protection" (emphasis added)).

[133] *Lake Forest*, 466 So. 2d at 63.

Relatedly, NUSSLI's argument that it repeatedly alleged the "erection" of the grandstands in its complaint and motion for reconsideration, a term used in Louisiana Revised Statute § 9:4808, fails to consider that the plain language of the PWA demonstrates a work must concern the immovable itself.[134] The PWA definition of "work" must be read as a whole in light of the other words or phrases included by the Legislature;[135] here, the terms "improvement, construction, erection, reconstruction, modification, repair, [and] demolition" are further tailored by the Legislature's inclusion of the phrase "*or other* physical change of an immovable or its component parts."[136] To read the word "erection" in a vacuum would mean expanding the PWA to cover "erecting" any structure, such as temporary, removable grandstands, regardless of if it required physical changes to the immovable to be completed or involved the immovable at all. Here, NUSSLI has failed to allege that setting up its grandstands constitutes "a single continuous project for the . . . erection . . . *or other* physical change *of an immovable* or its component parts" within the meaning of the PWA.[137]

Likewise, NUSSLI's assertion that it allegedly caused damage to the land when the grandstands were installed or removed[138] does not convert it to a "project *for . . .* [a] physical

---

[134] *See* Rec. Doc. 146-1 at 9.

[135] *See State v. Booth*, 347 So. 2d 241, 244 (La. 1977) ("A court may ascertain the meaning of a word or phrase in a statute from the meaning of other words or phrases with which it is associated . . . We assume that the Legislature intended every word in a statute to add meaning." (citations omitted)); *see also Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) ("[W]e rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'" (citations omitted)); *United States v. Williams*, 553 U.S. 285, 294 (2008) ("[A] word is given more precise content by the neighboring words with which it is associated").

[136] La. R.S. § 9:4808.

[137] La. R.S. § 9:4801 (emphasis added).

[138] *See* Rec. Doc. 154 at 2 (citing Rec. Doc. 146-1).

change of an immovable."[139] That is, merely because a plaintiff's conduct inadvertently causes damage to the land during a project that otherwise does not involve physical changes to the immovable does not, by itself, trigger the protections of the PWA. Here, NUSSLI has not alleged the damage done to the land was intentional or required to install the grandstands. Accordingly, even considering NUSSLI's new evidence and arguments, the Court finds that NUSSLI fails to sufficiently allege that the temporary placement of its grandstands to seat viewers at the Racing Event was part of any project "for" a physical change to the land, *i.e.* a "work" covered by the PWA. NUSSLI has not identified any evidence that merits reconsideration, nor any argument that reconsideration is necessary to prevent a manifest injustice or correct a manifest error of fact or law.

Additionally, NUSSLI appears to also request a new trial under Rule 59(a) for the same reasons it bases its motion for reconsideration.[140] The Court first notes that Rule 59 of the Federal Rules of Civil Procedure allows a party to request a *new* trial and is not a proper vehicle for challenging an order granting a motion to dismiss. Typically, courts in the Fifth Circuit consider such pre-trial motions for a new trial as a motion for reconsideration, which the Court denies above.[141] Thus, for the same reasons that the Court found that NUSSLI's arguments in support of

---

[139] La. R.S. § 9:4808 (emphasis added).

[140] Rec. Doc. 146-1 at 7.

[141] *See Calhoun v. F.B.I.*, 546 F. App'x 487, 489 n.1 (5th Cir. 2013) (noting that, because there was no trial in the case, the Fifth Circuit construed the motion for a new trial as a motion for reconsideration of the Court's granting of a motion to dismiss); *Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785, n. 1 (5th Cir. 1996) (holding that a motion for reconsideration styled as a motion for a new trial following a summary judgment was correctly analyzed as a Rule 59(e) motion to reconsider entry of summary judgment); *Flynn v. Terrebonne Par. Sch. Bd.*, 348 F. Supp. 2d 769, 770 (E.D. La. 2004) (Vance, J.) (stating that a motion for new trial following summary judgment was inappropriate, as a trial had not yet occurred, and construing the motion as a Rule 59(e) motion to amend a judgment).

its motion for reconsideration were unpersuasive, the Court holds that NUSSLI's arguments do not merit relief under Rule 59(a) either.

### 2.    NUSSLI's Request for Leave to Amend its Complaint

NUSSLI also avers that this Court should reconsider its Order dismissing NUSSLI's PWA cause of action because the Court denied NUSSLI a "reasonable opportunity to amend these allegations."[142] NUSSLI states that the Court found that it dismissed Andretti's claims after the Court allowed Andretti to amend its claims, and because Andretti's claims "overlap with many of the claims at issue in this case," it denied NUSSLI leave to amend.[143] However, NUSSLI states that Andretti never alleged a claim under the PWA, and thus the Court's reasoning to deny NUSSLI leave to amend does not apply to its PWA cause of action.[144] NUSSLI argues that the issues with NUSSLI's PWA claims "can be cured" by establishing that the grandstand installation constituted a physical change to the immovable through additional allegations that building permits were necessary and damages to the land occurred.[145]

In opposition, the Chouest Defendants argue that NUSSLI has already amended its complaint once and failed to cure the alleged deficiencies then.[146] The Chouest Defendants assert that NUSSLI could have requested a second amendment to address the Chouest Defendants' arguments in the months prior to the Court granting the motion to dismiss.[147] Additionally, the

---

[142] Rec. Doc. 146-1 at 11.

[143] *Id.*

[144] *Id.* at 11–12.

[145] Rec. Doc. 154 at 6.

[146] Rec. Doc. 150 at 19.

[147] *Id.*

Chouest Defendants allege that any amendment would be futile because NUSSLI's PWA claims "cannot be cured;" according to the Chouest Defendants, the problem is not that NUSSLI poorly pled its PWA cause of action, but that these facts "simply do not give rise to a PWA claim for NUSSLI."[148]

In the Fifth Circuit, "[t]he decision to grant or deny a motion to amend pleadings is entrusted to the sound discretion of the district court."[149] While Federal Rule of Civil Procedure 15(a)(2) suggests that courts should allow leave to amend pleadings "when justice so requires," the Fifth Circuit has cautioned that "leave to amend is not automatic."[150] Additionally, pursuant to the Court's Scheduling Order, "[a]mendments to pleadings, third-party actions, cross claims, and counterclaims shall be filed no later than January 8, 2016, in accordance with the Federal Rules of Civil Procedure and Local Rule 7.6."[151] Federal district courts have the inherent power to enforce their scheduling orders,[152] and Federal Rule of Civil Procedure 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent."[153]

Here, NUSSLI repeatedly and erroneously asserts that the Court only based its denial of NUSSLI's alternative request for leave to amend on the Court's determination of Andretti's

---

[148] *Id.*

[149] *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citing *Avatar Exploration, Inc. v. Chevron, U.S.A.*, 933 F.2d 314, 320 (5th Cir. 1991)).

[150] *Avatar Exploration, Inc.*, 933 F.2d at 320.

[151] Rec. Doc. 69 at 14.

[152] *See Flaska v. Little River Marine Const. Co.*, 389 F.2d 885, 887 n.3 (5th Cir. 1968) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962)); *see also Finisar v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 899 (E.D. Tex. 2006).

[153] Fed. R. Civ. P. 16(b)(4).

claims.[154] However, the Order clearly states that the request was denied because "NUSSLI fails to explain exactly what amendments could be made to address the deficiencies in the complaint."[155] Furthermore, the Court found that the Scheduling Order deadline to amend NUSSLI's complaint had already passed, and that NUSSLI already amended its complaint once following the motions to dismiss filed by the Chouest Defendants and NMHC.[156] While the Court did note that it had dismissed Andretti's similar claims after allowing Andretti to amend its complaint, it was only to state that NUSSLI was "on notice regarding the Court's likely rulings" on the overlapping claims; the Court did not cite its dismissal of Andretti's claims as the only reason for denying NUSSLI's request for leave to amend its complaint again.[157]

In its motion for reconsideration, NUSSLI now states that the reasons for the Court's dismissal "may be cured by amendment to the complaint."[158] NUSSLI argues that the issues will be cured by the very evidence and arguments it simultaneously presents in its motion to reconsider, *e.g.*, that building permits were necessary and it may have caused damage to the land.[159] However, as stated *supra*, NUSSLI's PWA claims are still not sufficiently alleged even when the Court considers both pieces of new evidence. NUSSLI has not provided the Court with any other ground by which it could amend its complaint in order to survive a motion to dismiss. The Fifth Circuit has previously affirmed a district court's denial of a motion to amend when an "amendment would

---

[154] Rec. Doc. 146-1 at 11; Rec. Doc. 154 at 6.

[155] Rec. Doc. 135 at 70.

[156] *Id.* at 71.

[157] *Id.*

[158] Rec. Doc. 146-1 at 12.

[159] Rec. Doc. 154 at 6.

be futile," such as when an amendment "would provide no benefit . . . under these circumstances."[160] Additionally, NUSSLI still has not identified why there is "good cause" to modify the Court's Scheduling Order as required by Federal Rule of Civil Procedure 16(b) to amend its complaint a second time. As the Fifth Circuit has said, denying requested leave to amend may be appropriate when such motions are untimely filed.[161]  Accordingly, because NUSSLI has failed to articulate why it is entitled to untimely amend its complaint for a second time, and because NUSSLI has not demonstrated how amending its complaint again would allow its PWA claim to survive the motions to dismiss, NUSSLI's request for leave to amend its complaint is denied.

### 3.    NUSSLI's Alternative Request to Certify the Court's Orders to Appeal

Finally, NUSSLI requests that the Court "direct entry of a partial, final and immediately appealable judgment with respect to all of NUSSLI's claims against the Chouest Defendants."[162] NUSSLI states there is no just reason for delay to prevent an appeal of the Court's Order.[163] NUSSLI also asserts it would be prejudicial to its interest if it could not appeal the claims against the Chouest Defendants until the separate claims against the remaining defendants was resolved.[164] In opposition, the Chouest Defendants argues that certifying an interlocutory order for appeal is an "exceptional" remedy that should not be granted "simply to determine the correctness" of a ruling.[165] The Chouest Defendants aver that the Fifth Circuit "cautions against piecemeal

---

[160] *Avatar Exploration, Inc.*, 933 F.2d at 321 (citing *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666–67 (5th Cir. 1981)).

[161] *Id.* (citing *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)).

[162] Rec. Doc. 146-1 at 12.

[163] *Id.*

[164] *Id.* at 13.

[165] Rec. Doc. 150 at 19 (quoting *Gulf Coast Facilities Mgmt., LLC v. BG LNG Servs., LLC*, 730 F. Supp. 2d

appeals,"[166] and judgments should be certified for immediate appeal "only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal."[167]

Under Federal Rule of Civil Procedure 54(b), in an action where there is more than one claim for relief or when multiple parties are involved, a district court may "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." As the Fifth Circuit has stated, before certifying a judgment under Rule 54(b), a district court must expressly consider whether (1) the partial judgment is final and (2) if any just reason for delay exists.[168] The district court should consider if the factors in favor of immediate appeal "outweigh the important concerns that underlie 'the historic federal policy against piecemeal appeals.'"[169] Rule 54(b) "reflects a balancing of two policies: avoiding the danger of hardship or injustice through delay which would be alleviated by immediate appeal and avoid[ing] piecemeal appeals."[170] Rule 54(b) requests "should not be granted routinely."[171]

NUSSLI contends that there is no just reason for delay, and asserts that it would be "prejudicial" if it could not appeal the Court's dismissal of the Chouest Defendants until the claims

---

552, 565 (E.D. La. 2010) (Feldman, J.), *aff'd sub nom. Gulf Coast Facilities Mgmt., L.L.C. v. BG LNG Servs., L.L.C.*, 428 F. App'x 318 (5th Cir. 2011)).

[166] *Id.* (citing *Clark-Dietz & Assoc. v. Basic Construction*, 702 F.2d 67, 69 (5th Cir. 1983)).

[167] *Id.* (citing *Walker v. Progressive Cty. Mut. Ins. Co.*, 304 F.R.D. 486, 488 (E.D. La. 2015) (Brown, J.)).

[168] *Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enterprises, Inc.*, 170 F.3d 536, 539 (5th Cir. 1999) (citing *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7–8 (1980)).

[169] *Id.* at 540 (quoting *Curtiss–Wright Corp.*, 446 U.S. at 8 (citations omitted)).

[170] *Walker v. Progressive Cty. Mut. Ins. Co.*, 304 F.R.D. 486, 490 (E.D. La. 2015) (Brown, J.) (*Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000) (internal citations and quotation marks omitted)).

[171] *Id.*

against the remaining defendants are resolved.[172] However, NUSSLI offers no explanation as to how exactly it will be prejudiced if the Court declines to certify its prior Order to allow piecemeal appeals. Rather, NUSSLI's contention appears to be based on the sole reasoning that because the Court has dismissed some defendants entirely from the case, NUSSLI should be permitted to immediately appeal. However, as the Supreme Court has cautioned, "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."[173] In the Fifth Circuit, Rule 54(b) judgments are not favored and should be awarded "only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal; [they] should not be entered routinely as a courtesy to counsel."[174]

Here, NUSSLI's claims against the remaining defendants are interrelated with the claims the Court has dismissed. NUSSLI has not plausibly asserted that, if an immediate appeal of some of NUSSLI's claims is allowed to go forward, "no appellate court would have to decide the same issues more than once."[175] Moreover, NUSSLI has not identified any danger of hardship or injustice that delay may cause, nor has it articulated a "sufficiently important reason for nonetheless granting certification" in light of the danger of repetitive appeals.[176] The fact that NUSSLI will have to wait to appeal the Court's partial final judgment until the entire case is

---

[172] Rec. Doc. 146-1 at 13.

[173] *Curtiss–Wright Corp.*, 446 U.S. at 8.

[174] *Walker*, 304 F.R.D. at 490 (citing *PYCA Indus., Inc. v. Harrison Cnty. Waste Mgmt.*, 81 F.3d 1412, 1421 (5th Cir. 1996); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 445 (2d Cir. 1985)).

[175] *Id.*

[176] *Id.* at 8 n.2.

resolved is not an exceptional circumstance that merits certification for immediate appeal. Accordingly the Court finds that, in "the interest of sound judicial administration,"[177] there are just reasons to delay NUSSLI's appeal of the Court's Order dismissing the Chouest Defendants.

In its reply memorandum, NUSSLI also asserts that certification for appeal is warranted under 28 U.S.C. § 1292(b) as well.[178] Under §1292(b), an interlocutory order may be certified for appeal if the Court finds that (1) there is a controlling issue of law involved, (2) there is a substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of this litigation.[179] NUSSLI argues that the Court's rulings on the Single Business Enterprise and PWA claims involve controlling issues of law.[180] Moreover, NUSSLI avers that there is a "substantial ground for difference of opinion" on each of these issues, "as demonstrated by the arguments" in the motion to dismiss memoranda and the Court's substantive discussion in its Order.[181] In opposition, the Chouest Defendants assert that § 1292(b) requires substantially different views on pure questions of law, and here the Court is only considering questions of fact of whether NUSSLI has sufficiently alleged a PWA claim.[182]

The Fifth Circuit has expressly held that permissive interlocutory appeals under 28 U.S.C. § 1292 should involve pure questions of law and not "application of law to fact."[183] Here, NUSSLI

---

[177] *Curtiss–Wright Corp.*, 446 U.S. at 8.

[178] Rec. Doc. 146-1 at 12.

[179] *Aparicio v. Swan Lake*, 643 F.2d 1109, 1110, n. 2 (5th Cir. 1981); *Castano v. Am. Tobacco Co.*, 162 F.R.D. 112, 115 (E.D. La.), *modified*, 889 F. Supp. 904 (E.D. La. 1995) (Jones, J.).

[180] *Id.* at 7–8.

[181] *Id.* at 8.

[182] Rec. Doc. 150 at 21 (citing *Anderson v. Jackson*, No. 06-3298, 2007 WL 4414479, at *4 (E.D. La. Dec. 14, 2007) (Lemelle, J.).

[183] *Anderson*, 2007 WL 4414479, at *4 (citing *Louisiana Patients' Compensation Fund Overnight Bd. v. St.*

has not identified any such pure questions of law that do not turn on the application of law to fact; as the Seventh Circuit has noted, a proper question of law under §1292(b) is one a Court of Appeals may decide "quickly and cleanly without having to study the record."[184] Moreover, NUSSLI has not plausibly argued that there are substantially differing views at issue or that appealing the dismissal of the Chouest Defendants now would advance the ultimate termination of the litigation with respect to the other defendants. Rather, it appears that NUSSLI seeks to improperly use §1292(b) as "a vehicle to question the correctness of a district court's ruling or to obtain a second, more favorable opinion."[185] Thus, the Court finds that immediate appeal of the Court's dismissal of the Chouest Defendants is not warranted under 28 U.S.C. § 1292.

## IV. Conclusion

For the forgoing reasons,

**IT IS HEREBY ORDERED** that NUSSLI's "Plaintiff's Motion to Revise, Reconsider, Alter, or Amend Judgment, or For New Trial"[186] is **DENIED** because, even considering NUSSLI's newly presented evidence and arguments, NUSSLI has failed to sufficiently allege that the temporary placement of its grandstands to seat viewers at the Racing Event constitutes a "work" by itself or was part of a "work" as required by the PWA.

---

*Paul Fire & Marine Ins. Co.*, 411 F.3d 585, 588 (5th Cir. 2005)).

[184] *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000).

[185] *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006) (citing *McFarlin v. Conseco Serv., LLC*, 381 F.3d 1251, 1256 (11th Cir. 2004) (quoting S. Rep. No. 85–2434 (1958), reprinted in U.S.C.C.A.N. at 5260–61)).

[186] Rec. Doc. 146.

**IT IS FURTHER ORDERED** that NUSSLI's request for an interlocutory appeal is **DENIED** because there are just reasons for delay under Federal Rule of Civil Procedure 54(b) and because NUSSLI has not met any of the requirements of 28 U.S.C. § 1292.

**NEW ORLEANS, LOUISIANA**, this 3rd  day of November, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**