**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **NUSSLI US, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2167**<br>**c/w NO. 15-2372** |
| **NOLA MOTORSPORTS HOST COMMITTEE,**<br>**INC., et al.** | **SECTION "G"(3)** |

**ORDER**

In this litigation, Plaintiff NUSSLI (US), LLC ("NUSSLI") alleges that it is owed money for services rendered under a contract it entered into with NOLA Motorsports Host Committee, Inc. ("NMHC"), NOLA Motor Club, LLC ("NOLA Motor"), and Andretti Sports Marketing, Louisiana, LLC ("Andretti").[1] Pending before the Court is Andretti's "Rule 12(b)(6) Motion to Dismiss."[2] Having considered the motion, the memoranda in support, the memorandum in opposition, the record, and the applicable law, the Court will grant in part and deny in part the motion to dismiss.

**I. Background**

*A.*     *Factual Background*

In its second amended complaint, NUSSLI alleges that on July 6, 2014, Andretti entered into a Racing Services Agreement with NMHC, whereby Andretti agreed to operate and manage

---

[1] Rec. Doc. 84 at 1.

[2] Rec. Doc. 95.

the Indy Grand Prix of Louisiana ("Event").[3] NUSSLI avers that Andretti approached NUSSLI to supply, install, and remove grandstands to be used as seating during the Event in 2015 as well as in subsequent Events scheduled for 2016 and 2017.[4] NUSSLI states that on November 4, 2014, Andretti, "acting as the authorized agent for the Lessee Parties," entered into a Lease Agreement with NUSSLI.[5] NUSSLI contends that it relied on Andretti's reputation and credibility when it entered into the Lease Agreement for its grandstands.[6] NUSSLI states that the Lessee Parties initially agreed to pay NUSSLI $871,763.97, but later requested that NUSSLI make additions and deductions to its services, bringing the total contract price for the 2015 Event to $652,008.54.[7] NUSSLI also alleges that, pursuant to the Lease Agreement, the Lessee Parties agreed to pay NUSSLI $884,840.43 for an Event to take place in 2016 and $898,113.04 for an Event to take place in 2017.[8]

According to NUSSLI, although the Event took place from April 10–12, 2015, NUSSLI never received the amounts that were due under the Lease Agreement for the services it rendered.[9] Instead, NUSSLI alleges that the funds it was owed were used to pay vendors who performed capital improvements to the NOLA Motorsports Park and racing track.[10] NUSSLI alleges that, to

---

[3] Rec. Doc. 84 at 9, 19.

[4] *Id.* at 20–21.

[5] *Id.* at 20.

[6] *Id.* at 22.

[7] *Id.* at 25.

[8] *Id.* at 27.

[9] *Id.* at 21.

[10] *Id.* at 21–22.

date, it has only received $293,404.04 for the 2015 Event, which is less than the $374,000 in funds that were designated by the State of Louisiana for the "Grandstand Build," and that it is still owed $358,604.50.[11]

### B.   Procedural Background

NUSSLI filed its original complaint on June 29, 2015, in which Andretti was not named as a defendant.[12] On January 8, 2016, NUSSLI filed its first amended complaint.[13] On January 27, 2016, this case was consolidated with *Andretti Sports Marketing Louisiana v. NOLA Motorsports Host Committee* for discovery purposes only.[14] On February 2, 2016, NUSSLI filed a motion for leave to file a second amended complaint in order to add Andretti as a defendant.[15] NUSSLI stated that it had aimed to informally resolve its claims against Andretti, but because Andretti sought to settle its own claims against the other Defendants without including NUSSLI, NUSSLI had "no choice but to now assert these claims" against Andretti as one of the named "Lessee Parties" to NUSSLI's Lease Agreement.[16] On March 4, 2016, the Court granted NUSSLI's motion to file a second amended complaint.[17]

---

[11] *Id.* at 27.

[12] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 1.

[13] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47.

[14] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 57.

[15] Rec. Doc. 74.

[16] *Id.* at 1–2.

[17] Rec. Doc. 83.

On March 22, 2016, Andretti filed the instant motion to dismiss NUSSLI's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[18] On April 5, 2016, NUSSLI opposed the motion.[19] On April 11, 2016, Andretti filed a motion for leave to file a reply memorandum.[20] On April 12, 2016, the Court granted Andretti leave to file a reply.[21]

## II. Parties' Arguments

### A.   Andretti's Arguments in Support of Dismissal

Andretti moves to dismiss all of NUSSLI's claims under Louisiana's Unfair Trade Practices Act ("LUTPA"), Louisiana's Open Account Statute ("OAS"), Louisiana's Private Works Act ("PWA"), and for breach of contract and conversion against Andretti for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[22]

### 1.   NUSSLI's Breach of Contract Claim

First, Andretti argues that NUSSLI's breach of contract claim should be dismissed because, according to Andretti, it was not a party to NUSSLI's Lease Agreement and thus contractual privity does not exist.[23] Andretti asserts that NUSSLI and NMHC are the sole parties to the Lease Agreement and are the only parties that signed the Lease Agreement and two Change Orders.[24] Andretti points out that the first paragraph of the Lease Agreement explicitly provides that the

---

[18] Rec. Doc. 86.

[19] Rec. Doc. 95.

[20] Rec. Doc. 96.

[21] Rec. Doc. 100.

[22] Rec. Doc. 86; Rec. Doc. 86-1 at 1–2.

[23] Rec. Doc. 86-1 at 4.

[24] *Id.*

agreement is "made by and between" NMHC as the "Lessee" and NUSSLI.[25] According to Andretti, the Lease Agreement further provides that "Lessee desires to lease from [NUSSLI] certain equipment" and that "Lessee will pay [NUSSLI] rent," and that the Lease Agreement does not impose any obligations on any other Defendant.[26] NUSSLI avers that only Kristen Engeron, the President of NMHC, signed the Lease Agreement and the two Change Orders.[27]

Andretti further represents that the only reference to the other Defendants in the Lease Agreement is in an indemnification provision requiring NUSSLI to indemnify NMHC, NOLA Motor Club, Motor Realty, and Andretti for any of NUSSLI's negligent acts or omissions.[28] Andretti argues a provision protecting Andretti from NUSSLI's negligence does not create any obligations or liabilities for Andretti.[29]

Finally, Andretti contends that NUSSLI has not pleaded and cannot plead any facts that demonstrate Andretti was an authorized agent for NMHC or any of the Lessee Parties.[30] Moreover, Andretti argues that the Racing Services Agreement between Andretti and NMHC specifically provides that Andretti and NMHC are "independent contractors" and that "nothing in the [Racing Services Agreement] shall be construed to create a partnership, joint venture or agency relationship between the parties."[31]

---

[25] *Id.* at 5.

[26] *Id.*

[27] *Id.* at 6.

[28] *Id.*

[29] *Id.* at 6–7.

[30] *Id.* at 7.

[31] *Id.* at 7–8.

## 2.        All other claims by NUSSLI

Second, Andretti avers that, to the extent applicable, any of NUSSLI's claims under LUTPA, OAS, PWA, and/or conversion that were intended to be alleged against Andretti should be dismissed as well.[32] For example, Andretti states that NUSSLI has alleged a claim under LUTPA for the other Defendants' alleged acts of deception, misrepresentation, and/or fraud.[33] However, Andretti avers that NUSSLI "goes to great length in the Complaint to make clear" that Andretti was also a target and victim of any deception, rather than a perpetrator liable under LUTPA, and does not allege any acts by Andretti that would state a claim under LUPTA.[34] Likewise, Andretti contends that NUSSLI brought a claim under OAS for the other Defendants' failure to pay the balance due on NUSSLI's open account for amounts owed under the Lease Agreement, and a claim under the PWA against the other Defendants as "owners" or "contractors" for amounts due for the grandstand rentals.[35] However, Andretti argues that it was not a party to the Lease Agreement or acting as an agent for NMHC, and thus cannot be liable under either OAS or the PWA.[36] Finally, Andretti points out that NUSSLI alleged in its complaint that the "Chouest Defendants" committed wrongful acts of conversion "unbeknownst to Andretti," and thus, to the

---

[32] *Id.* at 8.

[33] *Id.* at 8–9.

[34] *Id.* at 9.

[35] *Id.*

[36] *Id.* at 9–10.

extent that NUSSLI now seeks to bring a conversion claim against Andretti, Andretti asserts it should also be dismissed.[37]

**B.      NUSSLI's Arguments in Opposition to Dismissal**

In its opposition memorandum, NUSSLI states that it only asserts claims against Andretti for breach of contract based upon the Lease Agreement as well as its related claims under OAS and the PWA.[38] NUSSLI clarifies that it does not assert a claim against Andretti under LUTPA or for conversion.[39]

**1.      Breach of Contract Claim and Claim under Louisiana's Open Account Statute**

NUSSLI first avers that it has adequately pleaded a claim for breach of contract and a claim under OAS, because Andretti was a party to the Lease Agreement.[40] According to NUSSLI, Andretti and NMHC entered into a Racing Services Agreement whereby Andretti agreed to manage many aspects of three Events scheduled for 2015, 2016, and 2017.[41] NUSSLI asserts that the Racing Services Agreement "employed a great deal of legalese to obfuscate the true nature of the relationship" between NMHC and Andretti.[42] For example, NUSSLI avers that the Racing Services Agreement stated that Andretti and NMHC were not agents of one another, "despite

---

[37] *Id.* at 10.

[38] Rec. Doc. 95 at 2.

[39] *Id.*

[40] *Id.* at 6.

[41] *Id.* at 3.

[42] *Id.*

7

authorizing Andretti to act and sign contracts on [NMHC]'s behalf," and that they were not joint venturers, "despite their intention to share in profits from the Indy Race."[43]

However, NUSSLI avers that its Lease Agreement designated Andretti, through its employee, Craig Campbell, to perform certain duties with regard to NUSSLI's grandstand installation, such as requiring Campbell's signature on a Change Order and requiring invoices and notices for "Lessee" to be sent to Campbell instead.[44] NUSSLI also points out Andretti's prominent role in operating and managing the Event, and that NMHC has averred in its own motions that it was only responsible for providing the initial $1 million in funding for the Event.[45]

NUSSLI further argues that its Lease Agreement identified Andretti as one of the "Lessee Parties."[46] NUSSLI avers that the plain language of the Lease Agreement makes each of the Lessee Parties liable for the rent owed to NUSSLI.[47] According to NUSSLI, the Lease Agreement contained a signature block for Andretti and identified Andretti as the "LESSEE" entering into the agreement.[48] Moreover, NUSSLI states that the Lease Agreement only imposes an obligation to pay rent on the generic "Lessee," which corresponds to Andretti's label as a

---

[43] *Id.*

[44] *Id.*

[45] *Id.* at 4.

[46] *Id.* at 4, 6.

[47] *Id.* at 6.

[48] *Id.*

"LESSEE" in its signature block.[49] Accordingly, NUSSLI asserts that there is "ample evidence" to show that Andretti was a party to the Lease.[50]

Next, NUSSLI states that the Louisiana Civil Code defines the principal-agent relationship, or mandatary, as "a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal."[51] NUSSLI asserts that NMHC "undisputedly conferred authority upon Andretti to transact on its behalf."[52] For example, NUSSLI argues that the Racing Services Agreement required Andretti to "seek approval from NMHC before executing any agreement in excess of $5,000 in support of the Event."[53] NUSSLI further avers that the Racing Services Agreement required Andretti: to "manage the cash flow" to ensure that the Event funds "are sufficient to timely pay for all costs necessary to fund the event;" to "act [as] NMHC's contractor" responsible for the Event budget; to "provide oversight and management of all commercial activities" of the Event; and to "execute the [Event] both operationally and commercially."[54] Moreover, NUSSLI points out that Kristen Engeron, the President of NMHC, signed under Andretti's signature block, further raising a factual issue as to the existence and scope of an agency relationship between the two entities.[55]

---

[49] *Id.* at 7.

[50] *Id.*

[51] *Id.* at 8. (citing La. Civ. Code art. 2989).

[52] *Id.*

[53] *Id.*

[54] *Id.* at 8–9.

[55] *Id.* at 9.

2.        **NUSSLI's Private Works Act Claim**

Second, NUSSLI argues that Andretti is liable as a contractor under the PWA.[56] According to NUSSLI, Andretti's "only defense to liability" under the PWA is that it was not a Lessee under NUSSLI's Lease Agreement.[57] NUSSLI contends that it has pleaded sufficient facts to show that Andretti was a lessee party, and thus, NUSSLI avers, this defense should fail.[58] Alternatively, NUSSLI argues that even if the Court finds that Andretti was not a lessee party, Andretti was also a contractor under the terms of the PWA and is thus still liable for the lease of the movables under the PWA.[59] According to NUSSLI, the PWA does not require direct privity of contract, and Andretti is liable as a contractor because it "contract[ed] with an owner to perform all or a part of a work."[60]

NUSSLI, referring the Court to the arguments in its opposition to the other Defendants' motions to dismiss, contends that it meets the other required elements of the PWA because it leased a movable for rent at the site of the immovable to a contractor.[61] NUSSLI contends that there is "little dispute that the various constructions and modifications . . . to the NOLA Park consisted of improvement, modifications, repairs, and other physical changes to the Property."[62] Moreover,

---

[56] *Id.* at 10.

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.* at 11 (citing Rec. Doc. 50 at 20–27).

[62] *Id.*

NUSSLI asserts that the Racing Services Agreement establishes that Andretti contracted with NMHC, "an owner[,] to perform all or a part of a work," and is thus liable under the PWA.[63]

C.    *Andretti's Arguments in Further Support of Dismissal*

1.    **Breach of Contract Claim and Claim under Louisiana's Open Account Statute**

Andretti responds that the unambiguous terms of the Lease Agreement demonstrate that Andretti is not the "Lessee" under the agreement, and that the terms "Lessee" and "Lessee Parties" are separately defined in the Lease Agreement with different meanings.[64] According to Andretti, the Lease Agreement defines the "Lessee" as NMHC, and defines the "Lessee Parties" for indemnification purposes only as "Lessee, NOLA Motor Club, LLC, Motor Realty, LLC, [Andretti] and their directors."[65] Andretti points out that the definition of the "Lessee Parties" includes both Andretti and the "Lessee," further demonstrating that Andretti is not the "Lessee."[66] Andretti argues that the Lease Agreement only imposes the obligation to pay rent to NUSSLI on the "Lessee," not the indemnified "Lessee Parties."[67]

Furthermore, Andretti avers that the Lease Agreement was only signed by Kristen Engeron, the President of NMHC, and the reference to Andretti as "Lessee" above the signature block was erroneously included by NUSSLI, the drafter of the Lease Agreement.[68] Andretti

---

[63] *Id.* at 12.

[64] Rec. Doc. 101 at 2.

[65] *Id.* at 3.

[66] *Id.*

[67] *Id.*

[68] *Id.* at 4.

contends that the unambiguous and express terms of the Lease Agreement clearly show that this was merely a scrivener's error.[69] Andretti also avers that the two Change Orders correctly list NMHC on the signature block and were signed by Kristen Engeron on behalf of NMHC, and not on behalf of Andretti.[70] According to Andretti, any errors in the Lease Agreement must be construed against NUSSLI as the drafter.[71]

Moreover, Andretti argues that it is irrelevant whether or not it was an agent of NMHC, as it did not sign the Lease Agreement for itself or as the agent of NMHC.[72] Andretti also states that NUSSLI did not allege sufficient facts that Andretti transacted any business with NUSSLI as an agent of NMHC.[73] Andretti also points out that NUSSLI admits Andretti was a target of the alleged deception by Defendant Chouest and the Chouest-related Defendants, which Andretti avers proves that Andretti was not the agent of NMHC.[74] Thus, Andretti asserts that, because it was not a party to the Lease Agreement, NUSSLI's breach of contract and Open Account Statute claims must be dismissed with prejudice.[75]

---

[69] *Id.*

[70] *Id.* at 4–5.

[71] *Id.* at 5.

[72] *Id.*

[73] *Id.* at 5–6.

[74] *Id.* at 6.

[75] *Id.* at 7.

### 2.      Private Works Act Claim

Next, Andretti argues that under La. Rev. Stat. § 9:4802.A(4) of the PWA, lessors only have a claim for the lease of movables to a contractor or a subcontractor "by written contract."[76] Thus, because there was no written contract, Andretti asserts, it cannot be subject to any PWA claim by NUSSLI.[77] Andretti also states that NUSSLI's claim under the PWA fails because: (1) the renting of grandstands was part of an event, and not a "work" as required and defined by the PWA; (2) Andretti was not a "contractor" for purposes of the Event or the grandstands rental under the PWA; and (3) Andretti failed to provide proper notice to any owner or contractor as required by the PWA.[78] Andretti states that it incorporates and adopts the arguments set forth by the other Defendants in their motion to dismiss NUSSLI's claims under the PWA.[79]

### III. Law and Analysis

#### A.      *Legal Standard on a Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[80] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[81] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that

---

[76] *Id.* at 8 (quoting La. Rev. Stat. § 9:4802.A(4)).

[77] *Id.*

[78] *Id.*

[79] *Id.* (citing Rec. Doc. 40 at 21–25).

[80] Fed. R. Civ. P. 12(b)(6).

[81] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

is plausible on its face.'"[82] "Factual allegations must be enough to raise a right to relief above the speculative level."[83] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[84]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[85] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[86] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[87] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[88] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[89] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[90] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of

---

[82] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[83] *Twombly*, 550 U.S. at 556.

[84] *Id.* at 570.

[85] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[86] *Iqbal*, 556 U.S. at 677–78.

[87] *Id.* at 679.

[88] *Id.* at 678.

[89] *Id.*

[90] *Id.*

the asserted claims.[91] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[92]

It is well-established that, in deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6), a district court may not "go outside the complaint."[93] There is one recognized exception to that rule: a district court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the claim.[94] "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."[95] If, however, a district court considers other information outside the complaint, it must treat the motion to dismiss as a motion for summary judgment.[96]

## B.  *Legal Standard for Applying Louisiana Law*

When a federal court interprets a state law, it must do so according to the principles of interpretation followed by that state's highest court.[97] In Louisiana, "courts must begin every legal

---

[91] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[92] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

[93] *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009); *Carter v. Target Corp.*, 541 F. App'x 413, 416–17 (5th Cir. 2013).

[94] *Id.*; *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[95] *Carter*, 541 F. App'x at 416.

[96] Fed. R. Civ. P. 12(d); *Rodriguez*, 310 F. App'x at 626.

[97] *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010); *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991).

15

analysis by examining primary sources of law: the State's Constitution, codes, and statutes."[98]
These authoritative or primary sources of law are to be "contrasted with persuasive or secondary
sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional
usages, and equity, that may guide the court in reaching a decision in the absence of legislation
and custom."[99] To make a so-called "*Erie* guess" on an issue of Louisiana law, the Court must
"employ the appropriate Louisiana methodology" to decide the issue the way that it believes the
Supreme Court of Louisiana would decide it.[100] Although federal courts should not disregard the
decisions of Louisiana's intermediate courts unless they are "convinced that the Louisiana
Supreme Court would decide otherwise," they are not strictly bound by them.[101]

## C.    *Analysis*

In its motion to dismiss, Andretti alleges that NUSSLI has failed to state a claim pursuant
to Rule 12(b)(6).[102] First, the Court notes that NUSSLI states that it is not asserting a claim for
conversion or a claim under Louisiana's Unfair Trade Practices Act against Andretti.[103]
Accordingly, the Court will grant Andretti's motion to dismiss to the extent that it seeks to dismiss
a claim for conversion and a claim under LUTPA. NUSSLI contends that it is asserting three
claims against Andretti: (1) a breach of contract claim; (2) a claim under the Open Account Statute;

---

[98] *Shaw Constructors v. ICF Kaiser Eng'rs, Inc*., 395 F.3d 533, 547 (5th Cir. 2004).

[99] *Id.* (quoting La. Civ. Code. art. 1 rev. cmt. b).

[100] *Id.* (citation omitted).

[101] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007).

[102] Rec. Doc. 86.

[103] Rec. Doc. 95 at 2.

and (3) a claim under the Private Works Act.[104] The Court will address the arguments regarding each claim in turn.

### 1.    Breach of Contract Claim

Andretti argues that NUSSLI's breach of contract claim must be dismissed because Andretti was never a party to NUSSLI's Lease Agreement.[105] Andretti asserts that the Lease Agreement defined Andretti as one of the indemnified "Lessee Parties," and that only NMHC, as the defined "Lessee," was obligated to pay rent under the contract.[106] Andretti avers that only the President of NMHC signed the contract, and that any reference to Andretti in the signature block as the "Lessee" was a drafting error made by NUSSLI.[107] Andretti also argues that it is irrelevant whether it was an agent of NMHC, as it did not sign the Lease Agreement for itself or as the agent of NMHC.[108]

By contrast, NUSSLI asserts that Andretti was a party to the Lease Agreement, and thus NUSSLI contends it has adequately pleaded a claim for breach of contract.[109] NUSSLI contends that the signature page of the Lease agreement identifies Andretti as "LESSEE," and that while Kristen Engeron signed the contract, "[i]t is unclear whether Engeron signed the Lease on behalf of Andretti, as substitute for Andretti, or as a joint obligor with Andretti."[110] NUSSLI avers that

---

[104] *Id.*

[105] Rec. Doc. 86-1 at 1.

[106] Rec. Doc. 101 at 2–4.

[107] *Id.* at 4–6.

[108] *Id.* at 5.

[109] Rec. Doc. 95 at 6.

[110] *Id.* at 9.

the Lease Agreement also permitted Andretti's employee, Craig Campbell, to sign any Change Orders modifying the original Lease Agreement and to receive any invoices and notices intended for "Lessee."[111] NUSSLI further argues that its Lease Agreement identified Andretti as one of the "Lessee Parties."[112] NUSSLI also points out Andretti's prominent role in operating and managing the Event, such as Andretti's alleged responsibility for handling the Event budget and ensuring there were sufficient funds to timely pay all costs of the Event.[113]

Under Louisiana law, "[a]n obligor is liable for the damages caused by his failure to perform a conventional obligation."[114] To survive a motion to dismiss on its breach of contract claim against Andretti, NUSSLI must plausibly plead that: (1) Andretti undertook an obligation to perform; (2) Andretti failed to perform the obligation; and (3) the failure to perform resulted in damages to NUSSLI.[115] Here, Andretti argues that NUSSLI failed to plausibly allege the first element of a breach of contract claim, *i.e.* that Andretti was a party to the contract and was obligated to pay rent to NUSSLI for the use of its grandstands.[116] In its Second Amended Complaint, NUSSLI alleges that Andretti approached NUSSLI to lease, supply, install, and remove grandstands, and that Andretti, "acting as the authorized agent for the *Lessee Parties*,

---

[111] *Id.*

[112] *Id.*

[113] *Id.* at 4, 8–9.

[114] La. Civ. Code art. 1994; *see Schafer v. State Farm Fire & Cas. Co.*, 507 F. Supp. 2d 587, 597 (E.D. La. 2007) (Duval, J.).

[115] *See* La. Civ. Code art. 1994; *Denham Homes, L.L.C. v. Teche Fed. Bank*, 2014-1576 (La. App. 1 Cir. 9/18/15), 182 So. 3d 108, 119. *See also Envtl., Safety & Health Consulting Servs. v. Crest Energy Partners, L.P.*, No. 13-5747, 2015 WL 2452458, at *4 (E.D. La. May 21, 2015) (Berrigan, J.).

[116] Rec. Doc. 86-1 at 4.

executed the Lease Agreement with NUSSLI on or about November 4, 2014."[117] NUSSLI also alleged that it relied on Andretti's reputation and credibility when NUSSLI agreed to lease its grandstands for the Event.[118]

Moreover, the Lease Agreement, which was attached to the First Amended Complaint[119] and repeatedly referenced throughout the Second Amended Complaint,[120] provides that the "Lessee" is obligated to pay NUSSLI rent for its services, and identifies Andretti as the "Lessee" on the final page of the contract.[121] It also permits Craig Campbell, who NUSSLI asserts is an employee of Andretti, to validly sign a Change Order deducting or adding new costs and services to the original contract.[122] The Lease Agreement also requires any invoices, payments, and notices that are intended for Lessee to be sent to Andretti.[123] In response, Andretti argues that the Lease Agreement clearly identified NMHC as the "Lessee," and that labelling Andretti as the "Lessee" in the signature block was a scrivener's error.[124] However, the disputed issue of whether naming Andretti as a "Lessee" in the Lease Agreement was a mistake is not one properly decided on a motion to dismiss.[125] Rather, while reviewing this motion to dismiss, the Court cannot look beyond

---

[117] Rec. Doc. 84 at 20 (emphasis in the original).

[118] *Id.* at 22.

[119] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47-2.

[120] Rec. Doc. 84.

[121] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47-2 at 3, 9.

[122] *Id.* at 2.

[123] *Id.*; *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47-2 at 6.

[124] Rec. Doc. 101 at 4.

[125] *See generally Chase Manhattan Bank v. First Marion Bank*, 437 F.2d 1040, 1049 (5th Cir. 1971) (requiring "clear, positive, and convincing evidence of a scrivener's error" to conclude that the written agreement fails to reflect the real agreement between the parties and permitting reformation (internal citations and quotation

the pleadings, and is required to accept all well-pleaded facts as true and view them in the light most favorable to NUSSLI.[126] Here, NUSSLI has alleged that Andretti executed the Lease Agreement, and NUSSLI has pointed to multiple provisions in the Lease Agreement that demonstrate Andretti assumed significant responsibilities while managing the Event. Moreover, NUSSLI has alleged that the Lease Agreement designates Andretti as the "Lessee" responsible for paying rent to NUSSLI. Accordingly, construing the complaint liberally and accepting all well-pleaded facts as true, the Court finds that NUSSLI has alleged sufficient facts to state a claim that Andretti is liable for the alleged contractual breaches. Therefore, Andretti's motion to dismiss NUSSLI's breach of contract claim for failure to state a claim is denied.

### 2. Claim under Louisiana's Open Account Statute

Andretti also moves to dismiss NUSSLI's claim under OAS on the grounds that Andretti is not a party to the Lease Agreement.[127] However, for the reasons discussed *supra*, the Court finds that NUSSLI has alleged sufficient facts at this stage to support a claim that Andretti was a party to the Lease Agreement. Therefore, the Court denies Andretti's motion to dismiss NUSSLI's open account claim.

---

marks omitted)); *Employers Mut. Cas. Co. v. Normmurray Springs Bottled Water Co.*, No. 1:08CV255, 2011 WL 902032, at *5 (N.D. Miss. Mar. 14, 2011) (stating that a "mistake of a scrivener in drafting a document may be reformed based upon parol evidence, provided the evidence is clear, precise, convincing and of most satisfactory character that the mistake has occurred and that the mistake does not reflect the intent of the parties." (internal quotation marks omitted) (citing 66 Am. Jur. 2d Reformation of Instruments § 19)).

[126] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *S & A Rest. Corp. v. Lane*, No. 306CV1550L, 2007 WL 4403304, at *2 (N.D. Tex. Dec. 18, 2007).

[127] Rec. Doc. 101 at 7.

3.          **Claim under Louisiana's Private Works Act**

Andretti also moves to dismiss NUSSLI's claim under the PWA on several grounds: (1) because there is no written contract, NUSSLI cannot assert a claim under the PWA for the lease of movables to a contractor or a subcontractor; (2) the renting of grandstands was not a "work" as required and defined by the PWA; (3) Andretti was not a "contractor" for purposes of the Event under the PWA; and (4) Andretti failed to provide proper notice to any owner or contractor as required by the PWA.[128] In opposition, NUSSLI contends that: (1) it has pleaded sufficient facts to show that Andretti was a party to the Lease Agreement, and thus could be liable under the PWA; (2) the "various constructions and modifications" done in connection with the Event qualifies as a "work" under the PWA as "improvements, modifications, repairs, and other physical changes to the Property;" (3) Andretti was a contractor for the purposes of the PWA;  and (4) the Racing Services Agreement establishes that Andretti contracted with NMHC, "an owner[,] to perform all or a part of a work," and is thus liable under the PWA.[129]

Louisiana state courts have found that the "fundamental aim" of the Louisiana legislature in enacting the PWA was to "protect materialmen, laborers and subcontractors who engage in construction and repair projects."[130] The PWA "was enacted to facilitate construction of improvements on immovable property and does so by granting to subcontractors, among others,"

---

[128] Rec. Doc. 101 at 8.

[129] Rec. Doc. 95 at 10–11.

[130] *Byron Montz, Inc. v. Conco Const., Inc.*, 2002-0195 (La. App. 4 Cir. 7/24/02), 824 So. 2d 498, 502. *See also* La. R.S. 9:4801 *et seq.*; *Hibernia Nat. Bank v. Belleville Historic Dev., L.L.C.*, 01–0657 (La. App. 4 Cir. 3/27/02), 815 So.2d 301, 305–06; *Bernard Lumber Company, Inc. v. Lake Forest Construction Co., Inc.*, 572 So.2d 178 (La. App. 1 Cir. 1990).

rights to recover the costs of their work.[131] Louisiana state courts have further held that the PWA "must be strictly construed."[132]

Pursuant to La. Rev. Stat. § 9:4802, "[t]he following persons have a claim against the owner and a claim against the contractor to secure payment of the following obligations arising out of the performance of work under the contract: (1) Subcontractors, for the price of their work . . . (4) Lessors, for the rent of movables used at the site of the immovable and leased to the contractor or a subcontractor by written contract." Likewise, under La. Rev. Stat. § 9:4801, "[t]he following persons have a privilege on an immovable to secure the following obligations arising out of a work on the immovable: (1) Contractors, for the price of their work . . . (4) Lessors, for the rent of movables used at the site of the immovable and leased to the owner by written contract." NUSSLI asserts that as a lessor seeking payment for the rent of a movable (the grandstands) placed on an immovable, its claim falls squarely within the terms of the PWA.[133]

The Court will first address the issue of whether the leasing of grandstands was part of the "performance of work" as defined in the PWA.[134] La. Rev. Stat. § 9:4808 defines "work" as "a single continuous project for the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change of an immovable or its component parts." Andretti adopted the arguments set forth by the other Defendants in their motions to

---

[131] *Byron Montz, Inc.*, 824 So. 2d at 502.

[132] *Id.*

[133] Rec. Doc. 95 at 10–12.

[134] La. Rev. Stat. § 9:4802.

dismiss,[135] who asserted that there is no "work" at issue in this case as the grandstand rental was part of a finite, three-day event.[136] In opposition, NUSSLI contends that there is "little dispute that the various constructions and modifications" required with respect to the NOLA Motorsports Park "consisted of improvement, modifications, repairs, and other physical changes to the Property."[137] In NUSSLI's complaint, it alleges that NMHC agreed in the Cooperative Endeavor Agreement with the State of Louisiana to "use appropriated funds to support planning, operations, and production of the Indy Prix of Louisiana and to build the required track improvements and safety upgrades to the NOLA Motorsports Park required by IndyCar in order to host the Event."[138] NUSSLI has therefore alleged that there were track improvements and safety upgrades constituting "work" within the meaning of the PWA.

However, what remains to be determined is whether NUSSLI has alleged that its provision of the grandstands was part of the performance of that work. In the Lease Agreement, under "NUS'S OBLIGATIONS," NUSSLI agreed to the following activities: "(a) lease, supply, install and thereafter remove the Equipment at the Event, in accordance with the time frames specified on Schedule A hereto, (b) install the Equipment during or before the Installation Period, and (c) remove the Equipment before or during the Removal Period."[139] NUSSLI alleges that the

---

[135] Rec. Doc. 101 at 8.

[136] *See* Rec. Doc. 65-1 at 22; *see also* Rec. Doc. 101 at 8 (Andretti arguing that "the renting of the grandstands to NMHC was part of an event, not a "work" as that term is defined in the PWA").

[137] Rec. Doc. 95 at 11.

[138] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at 27.

[139] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47-2 at 1.

Equipment discussed in the Lease Agreement were grandstands.[140] NUSSLI does not allege anywhere in its complaint that the lease of the grandstands was part of the track improvements or safety upgrades, or otherwise involving any physical change to the immovable or its component parts. As this Court previously discussed when denying NUSSLI's motion for reconsideration of the Court's dismissal of the same PWA claim alleged against other Defendants,[141] NUSSLI has not demonstrated that the temporary renting of seating to be used during a racing event constitutes a "single continuous project *for* the improvement, construction, erection, reconstruction, modification, repair, demolition, or other physical change *of an immovable or its component parts*."[142]   Here, NUSSLI has not plausibly alleged that installing grandstands was part of any underlying physical change to the land, such as the improvements or upgrade to the race track property done to prepare for the Event. Rather, NUSSLI has only alleged that installing the grandstands was performed for the Event alone, and has not alleged that its services included any physical changes to the land that might qualify the temporary rental of event seating as a "work" under the PWA.[143] Thus, the Court finds that NUSSLI has failed to allege sufficient facts to state a claim against Andretti under the PWA. Accordingly, the Court grants Andretti's motion to dismiss NUSSLI's claims under the PWA.[144]

---

[140] *NUSSLI US, LLC v. NOLA Motorsports Host Committee, Inc.*, No. 15-2372, Rec. Doc. 47 at 19.

[141] *See generally* Rec. Doc. 162 (explaining in depth why NUSSLI failed to state the same PWA claim against other Defendants and denying NUSSLI's motion for reconsideration).

[142] La. R.S. § 9:4808 (emphasis added).

[143] *See* Rec. Doc. 162 at 24.

[144] Andretti asserts several other arguments in support of its motion to dismiss the PWA claims. In light of the Court's ruling that NUSSLI does not have a claim or privilege because it did not perform any "work" as defined in the PWA, the Court need not address these additional arguments.

## IV. Conclusion

For the foregoing reasons, the Court concludes that NUSSLI has pleaded sufficient facts to state a breach of contract claim and a claim under Louisiana's Open Account Statute. The Court concludes that NUSSLI has failed to state a claim against Andretti for conversion or a claim under LUTPA or the Private Works Act. Accordingly,

**IT IS HEREBY ORDERED** that the Andretti's "Rule 12(b)(6) Motion to Dismiss"[145] is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted to the extent that Andretti moves to dismiss NUSSLI's conversion claim and NUSSLI's claims under Louisiana's Unfair Trade Practices Act and the Private Works Act. The motion is denied with regard to NUSSLI's breach of contract claim and claim under Louisiana's Open Account Statute.

**NEW ORLEANS, LOUISIANA,** this 27th day of December, 2016.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[145] Rec. Doc. 86.